**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X

ROD WHEELER,                         :

                                   :

                Plaintiff,        :     Civil Action No.: 17-05807

                                 :

        v.                           :

                                 :

TWENTY-FIRST CENTURY FOX, INC., FOX :

NEWS NETWORK LLC, MALIA          :

ZIMMERMAN, in her individual and professional :

capacities and ED BUTOWSKY, in his individual :

and professional capacities,           :

                                 :

                Defendants.    :

------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ED BUTOWSKY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) and 12(b)(2)

---

# **TABLE OF CONTENTS**

INTRODUCTION………………………………………………….……………………..1

PRELIMINARY STATEMENT…………………………………………..……………1

FACTUAL BACKGROUND……………………………………………….…………….2

    A.    The Complaint Alleges That Wheeler Was Hired to Investigate the Murder and Shortly Thereafter Began Working With Zimmerman……………………………2

    B.    Wheeler Continued His Investigation and Began Reporting to Zimmerman……………………………………………………………………..2

    C.    Zimmerman Sent Wheeler Versions of the Story for His Approval Prior to Publication, Including Several Versions With the Misattributed Quotes…………..3

    D.    Wheeler Disclosed the Substance of the Quotes to Fox 5 DC Before Fox News and Zimmerman Published the Story……………………………………………..……5

    E.    Wheeler Reported His Disapproval of the Attribution After Publication…………..8

    F.    The Complaint Alleges Butowsky Further Defamed Wheeler Via Twitter……….8

STANDARD OF REVIEW……………………………………………………………..9

ARGUMENT…………………………………………………………………….....…10

    I.    The Court Lacks Personal Jurisdiction Over All of Plaintiff's Claims Against Mr. Butowsky………………………………………………...………………10

    II.    Plaintiff Fails to Plead a Defamation Claim as to Butowsky……………….…13

        A.    Maryland Law Governs All The Claims In This Action…………………13

        B.    Defamation Under Maryland Law…………………………………..……14

        C.    Plaintiff Fails to Allege that Butowsky Made the Allegedly Misattributed Quotes …………………………………………………………...……15

        D.    Plaintiff Consented to the Publication of the Alleged Defamatory Quotations and Consent is an Absolute Defense to Defamation Under Maryland Law………………………………………………………16

E.    Plaintiff Does Not Plausibly Allege Defamation as the Quotations at Issue are not False…………………………………………………....................19

1.    Wheeler Doesn't Allege That Zimmerman's Quotes Are Materially False………..……………………………………………………19

2.    Wheeler's Two Twitter Messages Aren't False Because They Are Expressions of Critical Opinion…………………………...………..21

F.    Plaintiff is a Public Figure and has not Plausibly Alleged Actual Malice...22

1.    Wheeler is a Limited Purpose Public Figure………………..……22

2.    Plaintiff has Failed to Plausibly Plead Actual Malice……………23

G.    Plaintiff Does Not Plausibly Allege Defamation Per Se …………..……24

CONCLUSION……………………………………………………………………..26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*,
    903 F.2d 1000 (4th Cir. 1990)……………………………………………………………19

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)…………………………………………………………………9, 23

*Best Van Line, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)……………………..………………………………………12, 13

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)……………………………………..……22, 23

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)………………………………………………………………22

*Broadspring, Inc. v. Congoo, LLC*,
    No. 13-1866, 2014 U.S. Dist. LEXIS 116070 (S.D.N.Y. Aug. 20, 2014)………………..14

*Brodeur v. City of New York*,
    No. 04-1859, 2005 U.S. Dist. LEXIS 10865 (E.D.N.Y. May 13, 2005)…………………..10

*Faulkner v. Beer*,
    463 F.3d 130, 134 (2d Cir. 2006)…………………………………………………………10

*Fort Knox Music, Inc. v. Baptiste*,
    203 F.3d 193, 196 (2d Cir. 2000)………………………………………………………..9

*Graphic Scanning Corp. v. Time Inc.*,
    No. 82-4760, 1982 U.S. Dist. LEXIS 16076 (S.D.N.Y. Nov. 10, 1982)…………………20

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)…………………………………………………………………9

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003)………………………………………………………………11

*Indep. Newspapers, Inc. v. Brodie*,
    407 Md. 415 (2007)………………………………………………………………………14

*Jacobus v. Trump*,
   51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017)……………………………………………...…22

*James v. Gannett Co.*,
   353 N.E.2d 834 (N.Y. 1976)………………………………………………………...…22

*Kim v. Dvorak*,
   230 A.D.2d 286 (3d Dep't 1997)……………………………………………………13

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999)…………………………………………………………...13

*Lerman v. Flynt Distrib. Co., Inc.*,
   745 F.2d 123 (2d Cir. 1984)………………………………………………………....22

*Mandelblatt v. Perelman*,
   683 F. Supp. 379 (S.D.N.Y. 1988)…………………………………………………16

*McAndrew v. Scranton Republican Pub. Co.*,
   364 Pa. 504 (1950)…………………………………………………………………..20

*MCI Communs. Servs. v. Am. Infrastructure-MD, Inc.*,
   2013 U.S. Dist. LEXIS 113061 (D. Md. 2013)……………………………….……17

*M & S Furniture Sales. Co. v. Edward J. DeBartola Corp.*,
   249 Md. 540, 241 A.2d 126 (1968)…………………………………………………14

*Masson v. New Yorker Magazine*,
   501 U.S. 496 (1991)……………………………………………………...…….23

*Mayfield v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012)………………………………………………………..23

*Metro. Life Ins. Co. v. Roberston-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)…………………………………………………………10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino*,
   No. 06-868, 2007 U.S. Dist. LEXIS 23126 (S.D.N.Y. Mar. 23, 2007)……………..……13

*Mortimer Off Shore Servs. v. Fed. Republic of Germany*,
   615 F.3d 97 (2d Cir. 2010)…………………………………………………………9

*Offen v. Brenner*,
 402 Md. 191 (2007)……………………………………………………………………14

*Pontarelli v. Shapero*,
 231 A.D.2d 407 (1st Dep't 1996)…………………………………………………..…13

*Reich v. Lopez*,
 858 F.3d 55 (2d Cir. 2017)………………………………………………………………..12

*Rothman v. Gregor*,
 220 F.3d 81 (2d Cir. 2000)………………………………………………………………10

*Rosario v. Anson*, No. 12-CV-1506 (GLS/CFH),
 2013 U.S. Dist. LEXIS 133797 (N.D.N.Y. Aug. 26, 2013)………………………………10

*Russell v. Railey*,
 2012 U.S. Dist. LEXIS 49370 (D. Md. April 9, 2012)………………………….………14

*S. Volkswagen, Inc. v. Centrix Fin., LLC*,
 357 F. Supp. 2d 837 (D. Md. 2005)……………………………………………………14

*Southwell v. Southern Poverty Law Ctr.*,
 949 F. Supp. 1303 (W.D. Mich. 1996)…………………………………………………20

*Stratte-Mcclure v. Stanley*,
 776 F.3d 94 (2d Cir. 2015)………………………………………………………………..10

*Thomas v. Ashcroft*,
 470 F.3d 491 (2d Cir. 2006)……………………………………………………………….9

*Treppel v. Biovail Corp.*,
 No. 03-3002, 2005 U.S. Dist. LEXIS 18511 (S.D.N.Y. Aug. 30, 2005)…………………15

*Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
 560 F. App'x 52 (2d Cir. 2014)…………………………………………………………….9

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014)……………………………………………………………...……11

*Wells v. Liddy*,
 186 F.3d 505 (4th Cir. 1999)……………………………………………………………...23

*Weiss v. Inc. Vill. of Sag Harbor*,
    762 F. Supp. 2d 560 (E.D.N.Y. 2011)……………………………………………10

*Wineholt v. Westinghouse Electric Corp.*,
    59 Md. App. 443 (1984)……………………………...………………………14, 24

*Williams v. Hicks*,
    2015 Md. App. LEXIS 1143 (App. July 20, 2015)………………………………16

*Ziemkiewicz v. R+L Carriers, Inc.*,
    996 F. Supp. 2d 378 (D. Md. 2014)……………………………………………17

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6)………………………………………………………………1

Fed. R. Civ. P. 12(b)(2)………………………………………………………………1

**Statutes**

N.Y.C.P.L.R. § 302………………………………………………………...…………12

# INTRODUCTION

Defendant Ed Butowsky submits this memorandum of law in support of his motion to dismiss Plaintiff Rod Wheeler's Complaint (the "Complaint") against him pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2) for his failure to state a viable claim against him.

# PRELIMINARY STATEMENT

Plaintiff Rod Wheeler has brought a lawsuit against Ed Butowsky as well as Defendants Twenty-First Century Fox, Inc., Fox News Corp., and Malia Zimmerman, (collectively "Defendants") alleging a single claim of defamation *per se*.  Plaintiff's Complaint is overloaded with sensationalistic allegations that have nothing whatsoever to do with this cause of action. The scant core defamation facts alleged by Plaintiff, however, plainly fail to state claim or a jurisdictional basis for asserting a claim against Mr. Butowsky, a Texas resident, in this Court.

For the purpose of this motion to dismiss, the irrelevant allegations about an attempted cover-up relating to Russian involvement in the Democratic National Committee ("DNC") email hacking scandal, the firing of FBI director James Comey, and Rupert Murdoch's bid for European media conglomerate Sky plc, should be ignored.  Without these allegations, the Complaint contains only a handful of paragraphs material to Wheeler's defamation claim against Butowsky.  And—despite all of its attention-grabbing details—the Complaint fails to plausibly allege even the most basic elements of defamation.  For while the Complaint itself is alarmingly vague as to what precisely is allegedly false or defamatory about the statements at issue, what is abundantly clear is that Plaintiff fails to allege: (1) any jurisdictional facts that would support suing Mr. Butowsky in this Court; (2) that Butowsky played a role in the drafting or making of the defamatory statements; (3) that Plaintiff objected to the defamatory statements, known by him, prior to their publication; (4) that Butowsky published the statements with the requisite

actual malice; or, (5) that the statements rise to defamation *per se* (or per quod for that matter).

While Plaintiff may regret his decision to become involved in the investigation and media debate surrounding the murder of DNC staffer Seth Rich due to the resulting negative media attention, his case is one in search of a viable legal theory. The action against Butowsky should be dismissed in its entirety.

## FACTUAL BACKGROUND

### A. The Complaint Alleges That Wheeler Was Hired to Investigate the Murder and Shortly Thereafter Began Working with Zimmerman

According to the Complaint, Plaintiff Rod Wheeler is a long-time Fox News contributor, who also works as a private investigator. (Compl. ¶ 49.) On or about February 23, 2017, Defendant Ed Butowsky, a financial advisor, contacted Mr. Wheeler about assisting the Rich family in the investigation of the murder of their son, DNC staffer Seth Rich. (*Id*. at ¶¶ 37-38; ¶ 51.) Wheeler eagerly accepted the assignment and Butowsky introduced Wheeler to the Rich family on February 28, 2017. (*Id*. at ¶ 51; ¶ 60.) Over the course of the following weeks, Mr. Wheeler had multiple conversations with the Rich family. (*Id*. at ¶ 61.) On March 14, 2017, the Rich family formally retained Mr. Wheeler to investigate Seth Rich's murder. (*Id*. at ¶ 62.) On February 28, 2017, Wheeler had lunch with Mr. Butowsky and Fox News investigative journalist, Malia Zimmerman, at which time Mr. Butowsky allegedly informed Wheeler that Ms. Zimmerman was writing a story on the death of Seth Rich for Fox News. (*Id*. at ¶ 59.)

### B. Wheeler Continued His Investigation and Began Reporting to Zimmerman

The Complaint does not allege any facts relevant the Fox News publication between March 14, 2017 and April 24, 2017. On April 24, 2017, Plaintiff allegedly secured an interview with Detective Della-Camera of the Washington D.C. Metro Police Department. (Compl. ¶¶ 62-

68.)[1]  On April 25, 2017, Wheeler interviewed Washington D.C. Metro Police Department Detective Della-Camera.  (*Id.* at ¶ 69.)  According to the Complaint, Della-Camera told Wheeler that he "still believes Seth [Rich's] death was the result of a robbery gone bad," that he had "nothing to say or to show that the shooting was related to emails….", and that he had no knowledge of FBI involvement.  (*Id.* at ¶ 69.)

The Complaint, however, omits Wheeler's conclusions from his April 25, 2017 meeting with Detective Della-Camera.  In a report provided to Zimmerman on the meeting, Wheeler concluded that the meeting with Detective Della-Camera was fruitful because the Detective could not rule out that someone from the DNC was not responsible for Rich's death, could not definitively say that Seth Rich had not received payments from Wikileaks prior to his murder, and would not disclose details about email correspondence found on Rich's computer. (Ex. 1)[2] After the Della-Camera interview, the Complaint does not allege any facts concerning Rod Wheeler's investigation or his interactions with Zimmerman until Zimmerman began sending Wheeler drafts of her article for his approval.

## C.   Zimmerman Sent Wheeler Versions of the Story for His Approval Prior to Publication, Including Several Versions With the Misattributed Quotes

On May 11, 2017, Zimmerman sent Wheeler a draft of the story regarding the Seth Rich murder.  (Compl. ¶ 71.)  At the time, the story, still taking shape, did not include the allegedly defamatory quotes.  (*Id.)*  Between May 11 and May 15, the Complaint alleges that Butowsky on two occasions pressured Wheeler to complete his investigation.  (*Id.* at ¶ 75.)  The Complaint does not allege that he played any role in drafting the story, or that he had anything whatsoever to do with the preparation of its quotes.

---

[1] The Complaint is missing paragraphs 63-65.
[2] All Exhibit references those attached to the Declaration of David B. Harrison.

The Complaint then describes an interaction on May 15, 2017 between Wheeler and Zimmerman, during which she informed Wheeler that she would be publishing her story. (Compl. ¶ 75.) The Complaint omits the details of this interaction, and other related interactions that day, which demonstrate Zimmerman's insistence that Wheeler read the latest draft of the story and give his approval prior to its publication.  Thus, on May 15, 2017, Zimmerman sent Wheeler the article on at least three separate occasions which all included the alleged defamatory quotes.  (Exs. 2, 3, 5.)  The second email to Wheeler, at 3:59 PM PST, was followed up by a text message from Zimmerman to Wheeler which read:

> **Zimmerman**: "Can you read the story now?"
> **Wheeler**: "Reading it now. Malia you can add that I do strongly believe that the answers to who murdered Seth sits on his computer on a shelf at the D.C. Police or FBI headquarters!" (Ex. 4.)

Following that exchange, Zimmerman emailed Wheeler a copy of the article which was turned in for publication.  (Ex. 5.) The emailed article contained the two alleged false quotes and Wheeler's addition to one of the quotes from the text message *verbatim*.  (*Id.*)  The Complaint does not allege that Wheeler objected to the quotes, despite having them in his possession and acknowledging such possession, prior to publication.

The Complaint further alleges that on May 15, 2017, Zimmerman asked Wheeler to provide a quote on information Wheeler had given her about the intervention of DNC officials Debbie Wasserman-Schultz and Donna Brazile, and states that he provided the quote. (Compl. ¶ 76.)  The Complaint, however, omits the full details of this referenced interaction.  During this text exchange on March 15, 2017, after Wheeler had received the emails with the draft article containing the defamatory quotes, Wheeler wrote: "just read the email." (Ex. 6.)  Wheeler then explained that he could not provide a quote, but a blurb on the topic, apparently authorizing Zimmerman to craft a quote, writing: "when I called the police department right after that Donna

4

Brazil [former DNC Chairperson] called him and was asking him why was I snooping around

[the Rich investigation]…As a po1ice investigator that automatically makes me think that Donna

Brazil is in a category of persons of interest as [sic] it relates to the death of Seth rich." (*Id.*)

When asked by Zimmerman "Can I use as quotes too?", Wheeler responded:

> "Yes. Here is another quote you may want to consider . . . It's time that the FBI immediately conduct a full and thorough investigation to not only the death and who caused the death of Seth rich but those that he was involved with and others regarding the Democratic national committee." (*Id.*)

Despite these interactions, the Complaint claims that "[a]t no point in time did Mr.

Wheeler say that his investigation revealed that Seth Rich sent any emails to Wikileaks, nor did

he say that the DNC, Democratic Party or Clintons were engaged in a cover-up." (Compl. ¶77.)

### D.     Wheeler Disclosed the Substance of the Quotes to Fox 5 DC Before Fox News and Zimmerman Published the Story

On May 15, 2017, Wheeler spoke on camera with local Fox 5 DC regarding the Rich

investigation. (Compl. ¶ 77; Ex. 7.) Plaintiff alleges that Wheeler "made sure not to confirm as

fact the proposition that Seth Rich sent emails to Wikileaks." (Compl. ¶ 77.) Plaintiff again fails

to provide the full context of his interaction. When he spoke with the Fox 5 DC reporter, Marina

Marraco, Wheeler made several statements that previewed and confirmed his approval of the

substance of the Fox News quotes at the center of this dispute.[3] (Ex. 7.) Indeed, Wheeler described

political impediments to the Seth Rich murder investigation:

> The police department nor the FBI have been forthcoming. They haven't been cooperating at all. I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or either at the FBI. I have been told both. (Ex. 7.)

He also confirmed that he had an independent source linking Seth Rich to Wikileaks:

---

[3] Available at http://www.fox5dc.com/news/local-news/254852337-story (last visited August 28, 2017).

**Marraco:** "You have *sources at the FBI* saying that there is information…"
**Wheeler:** "For sure."
**Marraco:** "…that *could link Seth Rich to Wikileaks*?"
**Wheeler:** "Absolutely.  *That's confirmed*."

Wheeler then implicated the DNC as interfering with the Seth Rich murder investigation, and said that information would come out in the Fox News story:

> Actually, I have a source inside the police department that has looked at me straight in the eye and said, 'Rod, we were told to stand down on this case and I can't share any information with you.' Now, that is highly unusual for a murder investigation, especially from a police department . . . . I do believe there is a correlation between the mayor's office and the DNC and that is the information that will come out tomorrow. (Ex. 7.)

Following his disclosure to Fox 5 DC, Wheeler backtracked on his comments and said it was a "miscommunication".  (Ex. 7.) Fox 5 DC then posted both the verbatim exchange and a video on its website revealing Wheeler's comments. (Ex. 7.)

As alleged in the Complaint, Zimmerman and Fox News published the article, sent to Wheeler the day before, on May 16. (Compl. ¶79.).  The Complaint alleges that the article misattributed the following quotes to Wheeler:

> "My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks."

> "My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward. That is unfortunate. Seth Rich's murder is unsolved as a result of that."

After the article was published, on May 16, Wheeler appeared on Fox News with Sean Hannity. (*Id.* at ¶ 87.)  Despite referencing this appearance, the Complaint fails to provide any facts related to Wheeler's comments on the show.  On Hannity, Wheeler confirmed his belief that there was connection between Rich and Wikileaks and the DNC's involvement in the criminal investigation:

> "Now, where did this information come from in terms of knowing or believing I

should say that Seth Rich could have been in communications with Wikileaks? There was a federal investigator that was involved on the inside of the case, a person that's very credible...this person, we checked him out, very credible, he said he laid eyes on the computer and he laid eyes on the case file …When you look at that with the totality of everything else I have found in this case, it's very consistent for a person with my experience to begin to think well perhaps there were some email communications between Seth and Wikileaks....Guess what I learned yesterday from the family of Seth Rich, the police department did not call me back because someone, a high-ranking official at the DNC . . . got that information and called the Rich family, wanting to know why was I snooping around.[4]

On May 17, 2017, *The New York Times* published an article titled, "How the Murder of a D.N.C. Staff Member Fueled Conspiracy Theories." (Compl. ¶ 104.) The Complaint cites the article as evidence of the fact that "[f]ollowing the publication of Zimmerman's article and *precisely because of the defamatory statements therein*" (emphasis added) Wheeler's reputation was harmed. (*Id.*) The *Times* piece, however, does not reference Ms. Zimmerman's article or the allegedly defamatory quotes at issue; rather, the *Times* cites the materially similar exchange Wheeler had with the Fox 5 DC reporter published on the local affiliate's website the day before. (Ex. 8.) Similarly, the Complaint cites to an MSNBC story and a GQ article, both of which refer to Wheeler's initial interaction with the local affiliate, not Zimmerman's article for Fox News. The Washington Post article, cited by the Complaint refers to both the local affiliate and Fox News stories as sources of Wheeler's claims. (Compl. ¶ 104.)

On May 22, 2017, Wheeler issued a statement, saying that he still believes in a connection between Seth Rich's murder and his employment with the DNC, and that the Fox News story, at the center of this case, "*was essentially correct*." (Ex. 9.) On May 23, 2017, Wheeler appeared on Fetch Your News, a conservative radio show, on which he confirmed, "I thought it was so important for the people that are watching this know exactly what's going on." He then continued:

---

[4] Available at http://video.foxnews.com/v/5437207289001/?#sp=show-clips (last visited August 28, 2017)

"I can't go into details because the cease and desist letter (from the Rich family) but let me just say this, *I do believe that his death, his murder, is related in some kind of way to his job (with the DNC)*, or to the relationships at his job (with the DNC) . . . And I also feel that I was getting very close to identifying a motive in this case, and as soon as I got very close, that's when I got stopped."[5]   A few days later, on or about May 29, 2017, on radio show Crowdsource the Truth Interview, Wheeler insisted, "I haven't walked back anything.  As a matter of fact . . . I said then in my statement in writing that *I do believe that there was some communication between Seth and Wikileaks.* And I believe that based on *common sense first of all*…and from information we're getting from various sources."[6]

### E.     Wheeler Reported His Disapproval of the Attribution After Publication

Following publication of the story, and certain television appearances about his investigation, including a CNN appearance not included in the Complaint during which Wheeler is questioned about the credibility of his claims, Wheeler notified Zimmerman and Butowsky about his disapproval of the quotes. (Compl. ¶ 84.)  The Complaint alleges that Zimmerman told Wheeler that she would remove the quotes from the article.  (*Id*. ¶ 85.)  The Complaint also claims, in an incomplete and misleading description of an interaction with Zimmerman, that Zimmerman acknowledged that the information about "the connection to Wikileaks" did not come from Wheeler. (*Id*. ¶ 90.) The Complaint does not assert that Zimmerman acknowledged that Wheeler never made the statement, however.  (*Id*.)  The Complaint also alleges that Butowsky responded to Wheeler's claims by stating, sarcastically, "[O]ne day you're going to win an award for having said those things you didn't say." (*Id.*)

### F.     The Complaint Alleges Butowsky Further Defamed Wheeler Via Twitter

---

[5] Available at https://www.youtube.com/watch?v=qcwTF-ObV_g (last visited August 28, 2017).
[6] Available at https://www.youtube.com/watch?v=yDI0AFOHuNI (last visited August 28, 2017).

Plaintiff further alleges that he was defamed by Plaintiff in two posts on twitter by Butowsky. (Compl. ¶ 107) On June 26, 2017, the Complaint alleges that Butowsky tweeted "Fox News story was pulled b/c Rod Wheeler said [he] didn't say a quote . . . How much did DNC pay him?" (*Id.*) Then, on the same day, Butowsky allegedly posted: "This shows Rod Wheeler has a major battle with the truth. Everyone needs to hear this. He says the precise words he swears he didn't say ???" (*id.* at ¶108.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must meet a plausibility standard." *Mortimer Off Shore Servs. v. Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010). Although courts accept as true the complaint's allegations, "[t]hreadbare recitals of the elements of a cause action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "This analysis is a context-specific task that requires [courts] to draw on [their] judicial experience and common sense." *Mortimer*, 615 F.3d at 114 (quoting *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)).

Plaintiff bears the burden of establishing that this Court has jurisdiction. *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 54 (2d Cir. 2014). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). Such a showing entails making "legally sufficient allegations of jurisdiction," including "an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *In re Magnetic Audiotape*, 334 F.3d at 206 (internal quotation marks omitted). Federal courts apply the personal jurisdiction rules of the forum state, *see Fort Knox Music, Inc.*

*v. Baptiste*, 203 F.3d 193, 196 (2d. Cir. 2000), provided that those rules are consistent with the requirements of Due Process, *see Metro. Life Ins. Co. v. Roberston-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

On a motion to dismiss, the Court is entitled to look outside the pleadings in appropriate circumstances. *Faulkner v.* Beer, 463 F.3d 130, 134 (2d Cir. 2006). The Court may consider any documents "plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Stratte-Mcclure v. Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). "[T]he court may [also] consider documents outside those previously referenced, including when the documents are only 'partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . .'" *Rosario v. Anson*, No. 12-CV-1506 (GLS/CFH), 2013 U.S. Dist. LEXIS 133797, at *10-11 (N.D.N.Y. Aug. 26, 2013) (quoting *Faulkner*, 463 F.3d at 134). Indeed, the court is entitled to consider "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . and facts of which judicial notice may be properly taken under [Federal Rule of Evidence 201]." *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011). The court also may consider documents within the public domain on a Rule 12(b)(6) motion. *Brodeur v. City of New York*, No. 04-1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005).

## ARGUMENT

## I.  THE COURT LACKS PERSONAL JURISDICTION OVER ALL OF PLAINTIFF'S CLAIMS AGAINST MR. BUTOWSKY

Defendant Butowsky is a Texas resident. (Compl. ¶ 36) ("Ed Butowsky is a Dallas-based financial advisor"); *see also* Declaration of Ed Butowsky. He has no alleged residence or

business presence in New York.  There is not a single allegation in Wheeler's Complaint supporting (or even attempting to support) general or specific personal jurisdiction over Defendant Butowsky in this District Court.

Wheeler's defamation claim arises out of an article written by Malia Zimmerman, a California-based news reporter, who allegedly misattributed two quotes to Wheeler.  Wheeler's complaint provides no specific allegations that Butowsky was involved in sourcing, fact checking, drafting or publishing the two allegedly misattributed quotations, but, in any event, Wheeler fails to connect Butowsky's alleged tortious activities to the State of New York.  The Complaint, as to Mr. Butowsky, must be dismissed with prejudice for lack of personal jurisdiction on that basis.[7]

Plaintiff bears the burden of demonstrating personal jurisdiction over Butowsky.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  In order for New York to exercise specific jurisdiction, Plaintiff must establish that Butowsky's suit-related conduct "create[s] a substantial connection with the forum state."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  This "necessary relationship" must arise out of contacts that the "defendant himself" creates with New York.  *Id.*  The mere occurrence of plaintiff's alleged injury in New York is not enough.  *Id.*

New York's long-arm statute provides that a court may exercise personal jurisdiction over a non-domiciliary whose suit-related conduct falls within one of the following sections:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

> 2. commits a tortious act within the state, except as to a cause of

---

[7] Butowsky's counsel was properly notified of these obvious jurisdictional deficiencies both before and after the filing of the Complaint.  For this reason, Wheeler's complaint should be dismissed with prejudice and the fees and costs of this motion should be assessed against Wheeler and his counsel.

action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y.C.P.L.R. § 302(a).

None of these sections plausibly apply to Wheeler's defamation claims.  New York allows for long-arm jurisdiction over defendants who "commit[] a tortious act within the state, *except as to a cause of action for defamation*."  N.Y.C.P.L.R. 302(a)(2) (emphasis added).  New York courts have explained that the reasons for the exception are "to avoid unnecessary inhibitions on freedom of speech or the press" as "[t]hese important civil liberties are entitled to special protections." *Best Van Line, Inc. v. Walker*, 490 F.3d 239, 245 (2d Cir. 2007).

Nevertheless, New York courts have held that, in certain, limited circumstances, Section 302(a)(1) can provide a basis for personal jurisdiction over defamation claims "where purposeful business transactions have taken place in New York giving rise to the cause of action," and there exists a "substantial relationship" between the claim asserted and the actions that occurred in New York.  *Best Van Lines*, 490 F.3d at 249. Those circumstances are not alleged here. Moreover, the Second Circuit recently warned that plaintiffs "cannot use Section 302(a)(1) to do an end-run around the defamation exception of Section 302(a)(2)."  *Reich v. Lopez*, 858 F.3d 55 (2d Cir. 2017).

The mere allegation that Wheeler (a Maryland resident) suffered some plausible harm in New York is not sufficient to bring Butowksy, a Dallas, Texas resident, under this Court's jurisdiction.  *See Best Van Lines*, 490 F.3d at 248.  ("New York courts do not interpret "transact[ing] business" to include mere defamatory utterances sent into the state.")  Indeed, "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation."  *Id.*  "[T]he single act of uttering a defamation, no matter how loudly, is not a 'transact[ion of business] that may provide the foundation for personal jurisdiction."  *Id.*; *See also Kim v. Dvorak*, 230 A.D.2d 286 (3d Dep't 1997) (holding that the sending allegedly defamatory letters to New York did not constitute a transaction of business in New York); *Pontarelli v. Shapero*, 231 A.D.2d 407 (1st Dep't 1996) (holding that sending two allegedly defamatory letters and one fax to New York did not constitute transaction of business in New York).

Accordingly, Wheeler's Complaint as to Butowsky, which alleges no conduct directed toward New York, must be dismissed for failure of jurisdiction.

## II.   PLAINTIFF FAILS TO PLEAD A DEFAMATION CLAIM AS TO BUTOWSKY
### A.   <u>Maryland Law Governs All The Claims In This Action</u>

In diversity cases, this Court must look to the conflict-of-law rules in the forum state, which is New York, "and under New York law, the law of the jurisdiction having the greatest interest in the litigation applies."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino*, No. 06-868, 2007 U.S. Dist. LEXIS 23126, at *20 (S.D.N.Y. Mar. 23, 2007).  In defamation actions, "New York assumes that the state of the plaintiff's domicile will usually have the most significant interest in the case and that its law therefore should govern."  *Id.* at *20-21 (quoting *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999)).  The *presumptive* rule in cases where statements are published over the Internet, is that "the law of plaintiff's domicile applies."

*Broadspring, Inc. v. Congoo, LLC*, No. 13-1866, 2014 U.S. Dist. LEXIS 116070, at \*17 (S.D.N.Y. Aug. 20, 2014) ("In such cases, there is a presumptive rule that the law of the plaintiff's domicile applies.").  Accordingly, the law of Maryland, the state where Plaintiff is domiciled (Compl. ¶ 36.), governs this case.

### B.        Defamation Under Maryland Law

A defamatory statement is one which "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2007) (citing *Offen v. Brenner*, 402 Md. 191, 198-99 (2007)).  To state a claim for defamation under Maryland law, a plaintiff must plead: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff suffered harm." *Russell v. Railey,* No. 08-2468, 2012 U.S. Dist. LEXIS 49370, at \*9 (D. Md. April 9, 2012).

A plaintiff may allege that a statement is defamatory *per se* or *per quod,* meaning by insinuation.  *M & S Furniture Sales. Co. v. Edward J. DeBartola Corp.,* 249 Md. 540, 241 A.2d 126,127-28 (1968). In order to establish defamation *per se*, the alleged defamatory words must "impute the defamatory character per se, no innuendo—no allegation or proof of extrinsic facts—is necessary." *Indep Newspapers*, 407 Md. at 441.  Further, "[a] defamation actionable by itself (*i.e.*, per se) needs no explanation.  Its injurious character is a fact of common knowledge." *Wineholt v. Westinghouse Electric Corp.,* 59 Md. App. 443, 446 (1984) (internal quotations omitted).  In other words, the character of the defamatory statements must be intrinsically harmful—claims inherently injurious to reputation.  *See, e.g.*, *S. Volkswagen, Inc. v. Centrix Fin., LLC,* 357 F. Supp. 2d 837, 842 (D. Md. 2005) (finding defamation *per se* where

defendant told a third party that plaintiff was a fraud).

Plaintiff alleges that two quotes attributed to him in an article written by Zimmerman and published by Fox were not "said by him" and therefore, constitute defamation *per se* as to Butowsky based on his knowledge and support of Zimmerman. (Compl. ¶¶ 3, 115-116.) Plaintiff also alleges defamation *per se* with regard to two Twitter messages posted by Butowsky. The first message, a question, asks how much the DNC paid "him" to claim he did not make the statements attributed to him in the Fox News story. The second message asserted that Wheeler has a "major battle with the truth" in the context of Wheeler backtracking from statements he claimed were not made by him in the Fox News story.

Plaintiff plainly fails to satisfy the elements for pleading defamation *per se* against Butowsky as to the two allegedly misattributed quotes and the two twitter statements.

C.   **Plaintiff Fails to Allege that Butowsky Made the Allegedly Misattributed Quotes**

The first element for a defamation claim requires proof that Butowsky made the alleged defamatory statement. Plaintiff's defamation claim is based, primarily, on the misattribution of two quotes "fabricated" by Zimmerman and published by Fox News. Wheeler does not allege, anywhere in his Complaint, that Butowsky had any specific role in sourcing, drafting, fact checking or publishing the quotes in question. Plaintiff's failure to state that Butowsky was specifically involved in fabricating the allegedly misattributed quotes is fatal to his claim. *See Treppel v. Biovail Corp.*, No. 03-3002, 2005 U.S. Dist. LEXIS 18511, at *11 (S.D.N.Y. Aug. 30, 2005). ("[A] defamation claim cannot survive without an allegation that defendants participated in the creation or the publication of the statements at issue.").

The Complaint alleges generally that Butowsky was involved in Wheeler's investigation and encouraged Zimmerman's publication of the Fox News story, but those allegations are not

15

sufficient to support a claim for defamation concerning the misattribution of Wheeler's quotes. Indeed, the sole basis for Wheeler's defamation claim against Butowsky is the allegation in Paragraph 3 of his Complaint that "Zimmerman, with the knowledge and support of Butowsky, fabricated two quotations and attributed them to Mr. Wheeler." (Compl. ¶ 3.) That single, bare allegation of Butowsky's knowledge and support of Zimmerman's alleged defamation is clearly an insufficient basis for asserting that Butowsky "made a defamatory statement." *See Williams v. Hicks*, No. 0694, 2015 Md. App. LEXIS 1143 at *5-8 (App. July 20, 2015) (holding that an individual cannot be held liable for defamation where that individual inspired or encouraged others to publish a defamatory account). Accordingly, Wheeler's Complaint does not plausibly allege defamation claims against Butowsky for the allegedly misattributed quotes that were published by Fox News.

### D. Plaintiff Consented To The Publication Of The Alleged Defamatory Quotations And Consent is an Absolute Defense to Defamation under Maryland Law

Plaintiff's defamation claim must be dismissed because Plaintiff, on multiple occasions, consented to the publication of the substance of the two alleged defamatory quotations. Indeed, Wheeler's Complaint and supporting references expressly -- albeit partially -- cite (1) email communications with Zimmerman, which in their full context, show that Wheeler approved the draft article and quotes, and (2) on camera statements to a local Fox 5 DC affiliate, in which Wheeler, ahead of Zimmerman's publication, made and published the same statements he alleges were misattributed to him by Zimmerman. Those communications establish Wheeler's consent to publication as a matter of law and, thus, post an absolute bar to his claims against Butowsky.

Under Maryland law, consent is an absolute defense to a defamation claim.[8]  *See*

---

[8] New York law also recognizes consent as a complete defense for a defamation claim. *See Mandelblatt v. Perelman*, 683 F. Supp. 379, 383 (S.D.N.Y. 1988)

*Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 398 (D. Md. 2014); *see also MCI Communs. Servs. v. Am. Infrastructure-MD, Inc.*, No. 11-3767, 2013 U.S. Dist. LEXIS 113061 at *45 (D. Md. 2013) ("Consent is the willingness in fact for conduct to occur, which can be manifested by action or inaction and need not be communicated to the actor.") (internal quotations and citations omitted).  One who invites publication of allegedly defamatory statement cannot complain of the resulting injury.  *See Ziemkiewicz*, 996 F. Supp. 2d. at 389.

The Complaint alleges that "on May 15, 2017, Zimmerman informed Mr. Wheeler that she would be publishing her story imminently," and the "story was published the following morning with the false quotations from Mr. Wheeler that were clearly fabricated."  (Compl. ¶ 20.)  Wheeler's Complaint also details how, on the evening of May 15, 2017, he provided Zimmerman with quotes in writing.  (Compl. ¶¶ 75-77.)  Wheeler also makes representations about what he did and did not say in his communications with Zimmerman on May 15.  (*Id.*).

Wheeler's Complaint does not provide the actual text of his communications with Zimmerman, but, as noted *supra*, the text of those communications reveals that, on at least three separate occasions, Zimmerman sent Wheeler emails containing drafts of the article, with the precise quotations she published the following day.  Wheeler confirms in text messages to Zimmerman, during these interactions, that he was "reading [the story] now" and "just read your email," after being emailed the story. In one of those text messages, he actually added language to one of the quotes in the story that Zimmerman included *verbatim*.  Thus, Plaintiff not only knew about and consented to the two alleged defamatory quotes, but the communications he partially described in his Complaint show that he was an active participant in their publication.

Wheeler's Complaint also refers to, describes, and characterizes the contents of an on camera interview with a Fox 5 DC affiliate, on the evening of May 15, 2017, prior to

17

Zimmerman's publication, to support his claim that the substance of that interview was materially different than the substance of the allegedly misattributed quotes. (Compl. ¶ 77.). It's not different. In his interview with the local affiliate, Wheeler said *he* had sources at the FBI saying that there is information that could link Seth Rich to WikiLeaks. His allegedly misattributed quote similarly says, "My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks." Thus, his prior publication (on camera) of a substantially identical quote to Zimmerman's published quote confirmed his consent to Zimmerman's publication the following day.

Indeed, in Wheeler's Complaint, Section XIV, entitled "MR. WHEELER'S REPUTATION IS DESTROYED BY DEFENDANTS' DECISION TO DEFAME HIM," Mr. Wheeler cites articles and comments that, he asserts, demonstrate that Zimmerman's article destroyed his reputation. However, contrary to Wheeler's representations, each of the cited articles references his earlier published comments to the Fox 5 DC affiliate. (Compl. ¶ 104). The *Times* article described Mr. Wheeler's "shifting and contradictory accounts" in reference only to his interview with *the Fox 5 DC affiliate*, not the Zimmerman article. Similarly, the GQ article, the Washington Post article, and the MSNBC article each refer to the Fox 5 DC piece in describing Wheeler's conclusions about his investigation into the murder of Seth Rich.

Wheeler's Complaint also alleges that Defendants damaged his reputation because people accused him of backtracking (Compl. ¶ 105); however, people accused Wheeler of backtracking, first and foremost, from the statements he made to the Fox 5 DC affiliate: "What he told FOX 5 DC on camera Monday regarding Seth Rich's murder investigation is in clear contrast to what he has said over the last 48 hours. Rod Wheeler has since backtracked." [9]

---

[9] Available at: http://www.fox5dc.com/news/local-news/private-investigator-there-is-evidence-seth-rich-contacted-wikileaks-prior-to-death (last visited August 28, 2017).

Thus, Wheeler's own on-camera statements to the Fox 5 DC affiliate, published prior to Zimmerman's article, showed that he adopted and approved the substance of Zimmerman's quotes and, indeed, the reputational damage he cites in his complaint stems from his own statements.  Accordingly, Wheeler's Complaint is absolutely barred under Maryland law.

E.      **Plaintiff Does Not Plausibly Allege Defamation As The Quotations At Issue Are Not False**

1.      Wheeler Doesn't Allege That Zimmerman's Quotes Are Materially False

It is black-letter law that non-substantive inaccuracies in quotations do not constitute defamation.  *See AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc*., 903 F.2d 1000, 1004 (4th Cir. 1990) (holding that [i]f the gist or 'sting' of a statement is substantially true, "minor inaccuracies will not give rise to a defamation claim.") (internal citations omitted)).

Critically, Wheeler's Complaint does not allege what, specifically, is false about the two allegedly misattributed quotations.  The Complaint merely states that Wheeler did not "provide" or "make" the statements.  A close review of what *is* articulated by Mr. Wheeler, however, shows that the quotes are essentially correct.  He now takes exception to the quote, "My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks," based on the phrase "[m]y investigation up to this point shows."  Apparently, Wheeler's claim is that the statements he made and conclusions he reached regarding Seth Rich, Wikileaks, the D.C. government, the DNC and the Clinton team, were not based on evidence he had reviewed personally, but on information he had learned from other sources; thus, the inclusion of the phrase "[m]y investigation shows" constitutes defamation.

Notably, Wheeler made essentially the same statement for a Fox 5 DC affiliate television camera, *prior to* the publication of Zimmerman's story.  The Complaint cites that exchange without revealing his actual statements, in which he claimed that *he* had sources at the FBI

19

linking Seth Rich to WikiLeaks.  That is materially the same statement he gave Fox News.  Any claimed inconsequential difference between Wheeler's Fox 5 DC statement and Zimmerman's quotes cannot serve as the basis for a defamation claim.  *See Southwell v. Southern Poverty Law Ctr.*, 949 F. Supp. 1303 (W.D. Mich. 1996) (holding that there could be no defamation claim without "significant legal difference between the statement plaintiff is recorded as having said and the inaccurate quotation in defendant's article."); *Graphic Scanning Corp. v. Time Inc.*, No. 82-4760, 1982 U.S. Dist. LEXIS 16076, at *8 (S.D.N.Y. Nov. 10, 1982) ("Misquotation alone does not give rise to a cause of action for defamation."); *McAndrew v. Scranton Republican Pub. Co.*, 364 Pa. 504, 510 (1950) ("Many men in public and in private life have been greatly annoyed by being misquoted.  But annoyance does not constitute defamation.").

Paragraph 104 of Wheeler's Complaint also demonstrates the inconsequential difference between Zimmerman's quotes and Wheeler's own television statements for the Fox 5 DC affiliate.  Every article cited in Wheeler's complaint as demonstrating harm to his reputation from the misattribution of quotes in the Zimmerman article, actually references Wheeler backtracking from his on-camera Fox 5 DC affiliate appearance.  (Compl. ¶ 104.)

Wheeler also repeatedly confirmed the substance of the quotes he claims were falsely attributed to him in media appearances following Zimmerman's publication.  On May 16, 2017, he appeared on Fox News with Sean Hannity and confirmed his belief in a connection between Seth Rich and Wikileaks and the DNC's involvement in the criminal investigation.[10]  On May 22, 2017, Wheeler issued a statement, saying that he still believed in a connection between Seth Rich's murder and his employment with the DNC, and that the Fox News story at issue in this Complaint, *was essentially correct*." (emphasis added)

---

[10] Also available at http://video.foxnews.com/v/5437207289001/?#sp=show-clips (last visited August 28, 2017)

Given the public statements by Wheeler, well after the Zimmerman article, standing by the substance of his conclusions that there was a link between Seth Rich and WikiLeaks and the D.N.C. or the D.C. Government or the Clinton campaign and a cover up of Rich's murder, Plaintiff's claims are not actionable as defamation - the Complaint, on its face, does not come close to alleging any sort of falsity.

> 2.    Wheeler's Two Twitter Messages Aren't False Because They Are Expressions of Critical Opinion

Plaintiff also alleges defamation *per se* regarding two Twitter messages from Butowsky, which are, at most, expressions of critical analysis and opinion.  Plaintiff fails to provide the context surrounding those two tweets.  That context shows, however, that Butowsky retweeted another Twitter user, a SiriusXM Patriot channel host, who posted audio of Rod Wheeler discussing his investigation (in June 2016, well after publication of the Fox News article):

> [I]t kind of makes sense in a way because with everybody pushing back on this email thing, in the family, and they're so protective of the email . . . it leads me to think that perhaps there were some communications between Seth Rich and WikiLeaks.

Butowsky posted two Twitter messages in response.  His first message says, "This shows Rod Wheeler has a major battle with the truth.  Everyone needs to hear this.  He says the precise words he swears he didn't say ???"  Butowsky's message provided his opinion and criticism of Rod Wheeler, not a factual statement, and, moreover, pointed listeners to the source of his conclusions, so that "Everyone" could listen for themselves.  His second message, "Fox News story was pulled b/c Rod Wheeler said [he] didn't say a quote . . . How much did DNC pay him?"  The first part of the quote is true and admitted by Wheeler.  The second part is a sarcastic question, aimed at critiquing Wheeler for retracting his quote and then making essentially the same statement about the existence of emails between Seth Rich and Wikileaks one month later.

These types of Twitter opinions are not false statements that are actionable in defamation.  *See Jacobus v. Trump*, 51 N.Y.S.3d 330, 336 (N.Y. Sup. Ct. 2017) (holding that "[l]oose, figurative or hyperbolic statements, are not actionable" with respect to allegedly defamatory statements made on Twitter).

### F.      Plaintiff Is A Public Figure And Has Not Plausibly Alleged Actual Malice

Plaintiff fails to sufficiently plead actual malice, as is required for a limited purpose public figure such as Wheeler to survive a motion to dismiss a defamation claim.

#### 1.      Wheeler is a Limited Purpose Public Figure

A four-prong test establishes whether Wheeler is a limited purpose public figure:

(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation;

(2) voluntarily injected himself into a public controversy related to the subject of the litigation;

(3) assumed a position of prominence in the public controversy; and

(4) maintained regular and continuing access to the media.

*Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2015 (2016) ("*Biro I*") (citing *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d Cir. 1984)).

All four prongs are met here, requiring Plaintiff to plead actual malice.  Plaintiff "invited public attention to his views" on the subject of the litigation by "voluntarily inject[ing]" himself into the public controversy over the murder of Seth Rich and his possible connection to WikiLeaks.  Indeed, Plaintiff took "affirmative steps" to attract public attention.  *See James v. Gannett Co.*, 353 N.E.2d 834, 840 (N.Y. 1976) ("The essential element underlying the category of public figures is that the publicized person has taken an affirmative step to attract public

attention.")  He "assumed a position of prominence" in the controversy by making various media appearances, and in his Complaint he describes himself as a "current private investigation consultant, crime analyst and Fox News contributor."  (Compl. ¶ 49.)  As such, he also "maintained regular and continuing access to the media."  *Biro I*, 963 F. Supp. 2d at 270; *see also Wells v. Liddy*, 186 F.3d 505, 534 (4th Cir. 1999).

          2.       <u>Plaintiff has Failed to Plausibly Plead Actual Malice</u>

Plaintiff has not come close to plausibly alleging actual malice with specificity.  As the Supreme Court recognized in *Masson v. New Yorker Magazine*, 501 U.S. 496 (1991), a strict scienter standard is required for defamation cases in connection with misquotations, which requires "*deliberate or reckless*" falsification.  *Id.* at 499 (emphasis added).  The *Masson* court expressly held that "*deliberate alteration* of the words uttered by plaintiff does not equate with knowledge of falsity . . . ."  *Id.* at 517 (emphasis added).  In *Biro I*, the Second Circuit held that allegations of actual malice must be plead plausibly in accord with *Twombly* and *Iqbal*.  *Biro I*, 963 F. Supp. 2d at 278.  Indeed, the plausibility paradigm has a "particular value" in the defamation context as prevents defamation defendants from incurring unnecessary costs that "can chill the exercise of constitutionally protected freedoms." *Id.* at 279 (internal quotation marks and citation omitted); *see Mayfield v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. 2012) (holding that the allegation that the defendants' statements "were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient.").

Wheeler's Complaint makes no attempt to plausibly allege scienter.   Plaintiff's allegations that Zimmerman and Fox News published statements with Butowsky's "knowledge and support" is conclusory and meaningless.  (Compl. ¶ 3.)  Moreover, the emails and messages

cited in Wheeler's complaint demonstrate that Zimmerman repeatedly sought Wheeler's approval of drafts that contained the allegedly misattributed quotes prior to publication.   Indeed, Zimmerman pleaded with Wheeler to "please read [the story] carefully" and "can you read the story now."   In both instances, as well as others, she had sent him the story with the quotes. Wheeler himself added to one of the quotes, and provided additional information for the story related to the involvement of certain DNC officials.  It is implausible that Butowsky's "knowledge and support" of Zimmerman's extensive and diligent efforts to obtain Wheeler's approval could be indicative of reckless disregard for the truth.

Moreover, Butowsky's Twitter messages, which provide critical commentary about audio of Wheeler, and simultaneously direct people to judge for themselves, cannot plausibly be alleged to be made with reckless disregard for the truth.  If anything, it shows Butowsky's intent to bring the truth about Wheeler to light.   Put simply, Wheeler has not and, indeed, cannot allege actual malice as to Butowsky.

### G.  Plaintiff Does Not Plausibly Allege Defamation Per Se

Plaintiff's defamation *per se* claims should be dismissed because the two allegedly misattributed quotes and Twitter message are not so obviously injurious as to relieve Wheeler of his burden of pleading or proving actual damages.  To establish defamation *per se*, the alleged defamatory words must "impute the defamatory character per se, no innuendo—no allegation or proof of extrinsic facts—is necessary." *Indep Newspapers*, 407 Md. at 441.  Further, "[a] defamation actionable by itself (*i.e.*, per se) needs no explanation.  Its injurious character is a fact of common knowledge." *Wineholt*, 59 Md. App. at 446 (internal quotations omitted).

Here, the alleged misattribution of two quotes is not inherently injurious to the Plaintiff The quotes do not inherently impute anything about Plaintiff's business reputation or state

anything about Plaintiff's criminality or moral turpitude.  In fact, the two statements are entirely neutral—they express that Plaintiff merely had an opinion on a matter of public concern. Because the two alleged misattributed quotes are not injurious on their face, Plaintiff's claim for defamation *per se* must be dismissed.  *See Indep. Newspapers, Inc*., 407 Md. at 441 ("Where extrinsic facts must be shown in order to establish the defamatory character of the words sued upon, the omission to plead them makes the complaint demurrable for failure to state a cause of action.") (internal quotations and citations omitted).

Plaintiff also alleges defamation *per se* with regard to two Twitter messages from Butowsky, which, do not, on their face, impute criminality or moral turpitude to Wheeler. Moreover, Wheeler's Complaint does not provide the context of the surrounding twitter chain, which shows that Butowsky was merely retweeting and commenting on another twitter user's message about audio of Rod Wheeler from June 2016.  Butowsky's responses were expressions of critical opinion that simultaneously encouraged "Everyone" to review the audio tape for themselves.  Anyone who accepted Butowsky's invitation could have reached their own opinion about the audiotape. They could have compared his audiotape to the retracted statements to make their own assessment about whether Wheeler's reputation as a private investigator is credible. That type of message from Butowsky is not so inherently injurious to Wheeler that it removes his burden of proving actual damages.

Given that Wheeler only pleads claims of defamation *per se*, and makes no allegations to support actual damages for defamation per quod, Wheeler's defamation claims as to Butowsky must be dismissed.

## <u>CONCLUSION</u>

Plaintiff fails to state a viable legal theory or a jurisdictional basis for his claims against Butowsky.  For the foregoing reasons, the Complaint as against Defendant Butowsky should be dismissed in its entirety.

Respectfully submitted,

*s/ David B. Harrison*
David B. Harrison
Jason C. Spiro
Carolyn B. Rendell

**SPIRO HARRISON**

830 Morris Turnpike 2nd Floor
Short Hills, NJ 07078
Tel: 973-232-0881
dharrison@spiroharrison.com
jspiro@spiroharrison.com
crendell@spiroharrison.com

Dated: September 18, 2017

26