**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROD WHEELER,

Plaintiff,

v.

TWENTY-FIRST CENTURY FOX, INC., FOX NEWS NETWORK, LLC, MALIA ZIMMERMAN, AND ED BUTOWSKY,

Defendants.

Civil Action No. 1:17-cv-05807 (GBD)

# MEMORANDUM IN SUPPORT OF THE MOTION OF TWENTY-FIRST CENTURY FOX, INC., FOX NEWS NETWORK, LLC, AND MALIA ZIMMERMAN TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM

HUGHES, HUBBARD, & REED LLP
David H. Stern (*pro hac vice*)
Daniel H. Weiner
Carolin Sahimi (*pro hac vice*)
350 South Grand Avenue
Los Angeles, CA 90071
(213) 613-2800

One Battery Park Plaza
New York, NY 10004

*Attorneys for Malia Zimmerman*

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

1330 Avenue of the Americas
Suite 23A
New York, NY 10019

*Attorneys for Twenty-First Century Fox, Inc., and Fox News Network, LLC*

September 18, 2017

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 6

I.    THIS ACTION MUST BE STAYED FOR RESOLUTION BY AN ARBITRATOR .......... 6

   A.   The Threshold Question of Arbitrability Must Be Decided By an Arbitrator. .................. 7

   B.   Wheeler's Claims Fall Within the Scope of His Broad Arbitration Agreement ............... 8

     1.   The parties agreed to arbitrate any claim arising out of or relating to Wheeler's appearances. .................................................................................................................. 9

     2.   Wheeler's federal statutory discrimination claim is arbitrable. .................................... 11

   C.   The Claims Against Twenty-First Century Fox, Zimmerman and Butowsky Should Also Be Sent to Arbitration. .......................................................................................................... 12

   D.   The Case Should Be Stayed Even If the Court Finds that Some Claims Are Non-Arbitrable. ................................................................................................................................ 14

II.   IN THE ALTERNATIVE, THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM. ................................................................................................................ 15

   A.   The Complaint Fails To State a Claim for Defamation. ..................................................... 15

     1.   The Alleged Misquotes Are Not Defamatory *Per Se*, and Wheeler Has Failed To Plead Special Damages. ......................................................................................................... 16

     2.   Wheeler's Numerous Public Statements Endorsing the Quotations He Now Challenges Foreclose His Defamation Claim. ........................................................................................ 20

     3.   Zimmerman's Email to Rich's Family Is Not Actionable. ........................................... 23

   B.   The Complaint Fails To State a Claim for Employment Discrimination. ......................... 24

   C.   The Complaint Fails To State a Claim against Twenty-First Century Fox. ...................... 25

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arrigo v. Blue Fish Commodities, Inc.,* 704 F. Supp. 2d 299 (S.D.N.Y. 2010) ...........................13

*Arshad v. Trans. Sys., Inc.*, 183 F. Supp. 3d 442 (S.D.N.Y. 2016) .................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................16

*Bordoni v. N.Y. Times. Co.*, 400 F. Supp. 1223 (S.D.N.Y. 1975)...........................19, 20

*Brener v. Becker Paribas, Inc.,* 628 F. Supp. 442 (S.D.N.Y. 1985)...........................13

*Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63 (2d Cir. 2015) ..................24

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000)...........................17

*Collins & Aikman Prod. Co. v. Bldg. Sys.,* 58 F.3d 16 (2d Cir. 1995) ...........................9

*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005) ...........................7, 8

*Crawl v. Experian Info. Sols., Inc.*, No. CV PJM 15-97, 2016 WL 8716597 (D. Md. Jan. 29, 2016) ...........................10

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd.,* 923 F.2d 245 (2d Cir. 1991) ...........................8, 9

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)...........................6, 7

*Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58 (2d Cir. 2005)...........................12, 13

*Doctor's Assocs. v. Agrawal,* No. 05-cv-250, 2006 WL 1028908 (D. Conn. Apr. 13, 2006) ...........................12

*Emilio v. Sprint Spectrum LP*, 508 F. App'x 3 (2d Cir. 2013) ...........................7

*Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 08-cv-623, 2009 WL 1813205 (N.D.N.Y. June 25, 2009)...........................15

*Feinberg v. Oppenheimer & Co., Inc.*, 658 F.Supp. 892 (S.D.N.Y. 1987) ..................11

*Finn v. Barney*, 471 F. App'x 30 (2d Cir. 2012) ...........................4

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)...........................7

*Fleck v. E.F. Hutton Grp., Inc.,* 891 F.2d 1047 (2d Cir. 1989) ...........................10

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987) ...............................10

*Great Lengths Universal Hair Extensions S.r.L. v. Gold*, No. 16-cv-193, 2017 WL
    1731184 (S.D.N.Y. Mar. 29, 2017) ...................................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ........................................8

*Greenberg v. Ameriprise Fin. Servs., Inc.,* No. 15-cv-3589, 2016 WL 3526025
    (E.D.N.Y. Mar. 31, 2016) ..............................................................................10

*Harajli v. Bank of Am., N.A.*, No. 14-CV-12173, 2014 WL 4965912 (E.D. Mich.
    Oct. 2, 2014) ...............................................................................................10

*In re A2P SMS Antitrust Litig.,* 972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...............8, 12, 13, 14

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F. 3d 163 (2d Cir. 2004) ...................8, 9, 11, 14

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Institute of Tech., Inc.*, 742
    F.3d 42 (2d Cir. 2014)...................................................................................4

*Kouromihelakis v. Hartford Fire Ins. Co.*, 48 F. Supp. 3d 175 (D. Conn. 2014) ...............10

*Levy v. Southbrook Int'l Investments, Ltd.*, 263 F.3d 10 (2d Cir. 2001)...........................4

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ...............................16, 20, 23

*Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236, 1992
    WL 249914 (S.D.N.Y. Sept. 22, 1992)...........................................................15

*Mosca v. Doctors Assocs.,* 852 F.Supp. 152 (E.D.N.Y. 1993) ......................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)...................6, 8

*Nardi v. Povich*, 824 N.Y.S.2d 764 (NY Sup. Ct. 2006) .............................................10

*Nasdaq OMX Group v. UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014) ...................7

*Nunez v. A-T Financial Info. Inc.*, 957 F. Supp. 438 (S.D.N.Y. 1997).............................20

*Nunez v. Citibank, N.A.,* No. 08-cv-5398, 2009 WL 256107 (S.D.N.Y. Feb. 3,
    2009) ........................................................................................................12

*Offshore Exploration and Prod. LLC v. Morgan Stanley Private Bank, N.A.*, 986
    F. Supp. 2d 308 (S.D.N.Y. 2013) ....................................................................8

*Palin v. N.Y. Times Co.*, No. 17-cv-4853, — F. Supp. 3d —, 2017 WL 3712177
    (S.D.N.Y. Aug. 29, 2017) ..............................................................................16

*Perry v. CBS, Inc.*, 499 F.2d 797 (7th Cir. 1974) ......................................................23

*Pippenger v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:09-CV-167, 2009 WL 2244613 (E.D. Tenn. July 29, 2009) ...........................................................................10

*Powell v. Sparrow Hosp.*, No. 10-CV-206, 2010 WL 2901875 (W.D. Mich. July 23, 2010) ..........................................................................................................................10

*Provident Bank v. Kabas*, 141 F. Supp. 2d 310 (E.D.N.Y. 2001) ...................................15

*Republic Tobacco Co. v. N. Atlantic Trading Co.*, 381 F.3d 717 (7th Cir. 2004) ..........24

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) .................................................13

*Scher v. Bear Stearns & Co.*, 723 F. Supp. 211 (S.D.N.Y. 1989) ..................................13

*Sharma v. Oriol*, No. 05 CIV. 2727, 2005 WL 1844710, at *1 (S.D.N.Y. Aug. 3, 2005) ..........................................................................................................................10

*Shaw Group Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir. 2003)....................7, 8

*Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406 (2d. Cir. 2008) .....................4

*Susko v. Cox Enters., Inc.*, No. 07-cv-144, 2008 WL 4279673 (N.D. W. Va. Sept. 16, 2008) ......................................................................................................................25

*Thompson v. Bosswick*, 855 F. Supp. 2d 67 (S.D.N.Y. 2012) ........................................15

*Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198 (S.D.N.Y. 2017) ...............24

*United States v. Bestfoods*, 524 U.S. 51 (1998) ..............................................................25

*Van Buskirk v. CNN, Inc.*, 284 F.3d 977 (9th Cir. 2002)................................................22

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015).........................24

*Williby v. Hearst Corp.*, No. 15-cv-02538, 2017 WL 1210036 (N.D. Cal. Mar. 31, 2017) ......................................................................................................................25

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997) ..................................14, 15

## STATE CASES

*Bowes v. Magna Concepts, Inc.*, 166 A.D.2d 347 (N.Y. App. Div. 1990)......................17

*Franklin v. Daily Holdings, Inc.*, 135 A.D. 3d 87 (N.Y. App. Div. 2015)........17, 18, 19, 20

*Golub v. Enquirer/Star Group, Inc.*, 681 N.E.2d 1282 (N.Y. 1997) ..............................19

*November v. Time, Inc.*, 194 N.E.2d 126 (N.Y. 1963) ...............................................17, 20

*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299 (N.Y. 1977).......................16, 17, 18

**STATUTES AND RULES**

9 U.S.C. § 1–16 ............................................................................................... *passim*

42 U.S.C. § 1981.................................................................................................2, 12, 24

Fed. R. Civ. P. 9.......................................................................................................20

Fed. R. Evid. 201 ......................................................................................................4

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 614.........................................................................17

## INTRODUCTION

Rod Wheeler, a Fox News Contributor, has filed a Complaint for defamation and employment discrimination against Fox News Network, LLC, Twenty-First Century Fox, Inc. and Fox News reporter Malia Zimmerman (together the "Fox Defendants"). Wheeler's allegations are without merit and legally insufficient to state a claim. He has also brought them in the wrong forum.

Wheeler alleges that he was defamed by being misquoted in a Fox News online report. In truth, he was neither misquoted nor defamed. He made substantially the same statements *on the air* in several on-camera interviews, before and after the Fox News report, and even stated publicly that the article he now challenges as false "*was essentially correct and worthy of further investigation.*" Ex. 3 (emphasis added). In short, his defamation claim is itself founded on a falsehood. More to the point on this Motion, it fails to allege a sufficient basis for such a cause of action. The same is true of his claim of employment discrimination, which alleges in only vague and conclusory terms that Fox News did not give him the same employment opportunities as other contributors. Wheeler fails to plead the facts necessary to support such a charge, because there are no such facts.

The Court, however, need not reach the substantive deficiencies in Wheeler's claims, because he is contractually obligated to pursue them in arbitration—not in court. Wheeler's Contributor Agreement with Fox News requires that he submit to arbitration any claims "arising out of or related to" his agreement. Indeed, the arbitration provision and governing law require that even the threshold question of arbitrability must be submitted to the arbitrator.

For these reasons, the Fox Defendants have moved to compel arbitration and to stay these proceedings pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, or, in the alternative, to dismiss the Complaint for failure to state a claim.

1

# BACKGROUND

## A.  Wheeler's Contributor Agreement with Fox News

Wheeler is a former Washington, D.C., homicide detective and a "current private investigation consultant, crime analyst and Fox News contributor."  Compl. ¶ 49.  As a Fox News contributor, Wheeler signed a Contributor Agreement that granted Fox News Network, LLC and its parent company "the irrevocable and exclusive right . . . to record, exhibit and otherwise use [his] name, likeness, photograph and voice on television" in connection with news commentary and related subjects.  Ex. 1, ¶ 1.  The Agreement contains an arbitration clause, which states as follows:

> Any controversy, claim, or dispute arising out of or relating to this Agreement shall be brought before a mutually selected arbitrator/mediator and held in New York City in accordance with the rules of JAMS. Such arbitration/mediation, all filings, written evidence, and testimony connected with the arbitration/mediation and all relevant allegations and events leading up to the arbitration/mediation, shall be held in strict confidence. The arbitrator/mediator shall issue a written opinion setting forth the reasons for his or her decision, and the decision shall be final and binding.

*Id.* ¶ 13.

## B.  Wheeler's Complaint

Wheeler's Complaint alleges that Fox News Network and Twenty-First Century Fox engaged in discrimination "on the basis of his race, color, ethnicity and/or national origin" in violation of 42 U.S.C. § 1981, by refusing to hire him to a full-time position and giving him less air time, and therefore less pay, than similarly situated white colleagues.  Compl. ¶¶ 110, 122. He also alleges that the Fox Defendants defamed him by misquoting him in a May 16, 2017, online article published on the Fox News website and authored by defendant Zimmerman ("the Article").  As alleged in the Complaint, the Article "reported that a murdered Democratic

2

National Committee ('DNC') staffer, Seth Rich, was the source of the now infamous DNC emails leaked by WikiLeaks during the 2016 Presidential primaries."  *Id*. ¶ 2; Ex. 8.

The Article was published after a nearly five-month investigation by Zimmerman, during which she conferred on a number of occasions with Wheeler, who had been retained by the Rich family to investigate the murder of Seth Rich.  Compl. ¶¶ 7, 59, 62, 70, 71, 75, 76.  Zimmerman sent Wheeler a draft of her article on May 11 that did not contain the quotes at issue, *id*. ¶ 71, but then sent him drafts on May 15, the day before the Article was published, that contained those quotes, *see id*. ¶¶ 75-76.  Wheeler alleges that he did not read the drafts containing those quotes, but he admits that after receiving those drafts he provided Zimmerman with "additional quotes to add to her story."  *Id*. ¶ 76.  The evidence would show that Wheeler not only made the statements at issue, but that he confirmed in writing that he was reviewing a draft containing those quotes before he provided additional quotes for the Article.  For purposes of this Motion, however, we assume the truth of Wheeler's allegations—they make no difference.

Wheeler objects to two quotes in the Article.  *First*, the Article quoted him as saying: "My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks.  I do believe that the answers to who murdered Seth Rich sits [sic] on his computer on a shelf at the DC police or FBI headquarters."  Ex. 8.  Wheeler alleges that he "did not provide" the first sentence of that quote, Compl. ¶ 80, but he makes no such claim about the second sentence, *id*. ¶¶ 3, 115.  He also does not assert that Zimmerman got anything wrong when she wrote that Wheeler's findings were "consistent" with those of a federal investigator who said he had "seen and read the emails between Seth Rich and Wikileaks."  *See* Ex. 8.

*Second*, Wheeler alleges that he "did not provide" the following quote, which Fox News used after explaining that the D.C. police department had "no suspect and no substantial leads" in the murder investigation:

> My investigation shows someone within the D.C. government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward.  That is unfortunate.  Seth Rich's murder is unsolved as a result of that.

Ex. 8; Compl. ¶¶ 81, 115.

Both of these quotes mirror statements Wheeler made in other, televised interviews at the time.  On May 15, the day before the Article was published, Wheeler granted an interview to Fox 5, a Fox-affiliated broadcast station in Washington, D.C.  Compl. ¶ 77.  Fox 5 broadcast his remarks on television and also included them in an online report: [1]

> "The police department nor the FBI have been forthcoming," said Wheeler.  "They haven't been cooperating at all.  I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or either at the FBI.  I have been told both."

> When we asked Wheeler if his sources have told him there is information that links Rich to Wikileaks, he said, "Absolutely. Yeah.  That's confirmed."

---

[1] Wheeler's public statements on Fox 5 and elsewhere are properly considered on a motion to dismiss.  *First*, in ruling on such a motion, a court may consider not only the complaint itself, but also documents or statements "referred to in the complaint," *Levy v. Southbrook Int'l Investments, Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001), as well as "matters of which judicial notice may be taken," *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014).  The Complaint refers specifically to the interviews that Wheeler gave to both Fox 5 and the Sean Hannity Show.  Compl. ¶¶ 77, 87.  *Second*, even if they are not referred to in the Complaint, all of Wheeler's public statements are a proper subject of judicial notice, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  These statements were broadcast on television or radio and remain publicly available online.  *See, e.g., Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts may take judicial notice of the fact that certain statements were published in the press); *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (finding no abuse of discretion where district court took judicial notice of media reports and other publicly available materials in ruling on motion to dismiss).

> Wheeler also told us, "I have a source inside the police department that has looked at me straight in the eye and said, 'Rod, we were told to stand down on this case and I can't share any information with you.'  Now, that is highly unusual for a murder investigation, especially from a police department.  Again, I don't think it comes from the chief's office, but I do believe there is a correlation between the mayor's office and the DNC and that is the information that will come out [Tuesday]."

Ex. 2 (online Fox 5 report); Ex. 9 (transcript of Fox 5 broadcast); www.fox5dc.com/news/local-news/private-investigator-there-is-evidence-seth-rich-contacted-wikileaks-prior-to-death (video of Fox 5 report).

On May 16, 2017, the day the Article was published, Wheeler again discussed his investigation on two Fox News programs, the Sean Hannity Show and Lou Dobbs Tonight. Compl. ¶ 87.  Wheeler announced on Hannity:

> There was a federal investigator that was involved on the inside of the case, a person that's very credible. . . . I can't say the person's name because that person would be thrown under the bus and I can't do that.  But this person, we checked him out, very credible. . . . When you look at that with the totality of everything else that I've found in this case, it's very consistent for a person with my experience to begin to think, "Well, perhaps there were some email communications between Seth and WikiLeaks."
>
> . . . Here's one other thing that's going to be startling. . . . I reached out to the police department way back in March. . . . Guess what I learned yesterday from the family of Seth Rich, the police department did not call me back because someone, a high-ranking official at the DNC . . . called the Rich family wanting to know why I was snooping around.

Ex. 11 at 4; *see also* https://www.youtube.com/watch?v=cDdXkxgjdRI (Hannity video).  Wheeler made a similar statement that evening on Lou Dobbs Tonight,[2] and several days later, on May 22, 2017, he issued a public statement affirming the substance of the Fox News Article: "I am of the

---

[2]  Ex. 10.

personal opinion that the information/article reported by FoxNews Channel last Tuesday was essentially correct and worthy of further investigation." *See* Ex. 3 (Fetch Your News). Wheeler gave other interviews to other non-Fox media outlets saying essentially the same thing.[3]

On May 23, 2017, Fox News retracted the Article, explaining: "The May 16 story was not initially subjected to the high degree of editorial scrutiny we require for all our reporting. Upon appropriate review, the article was found not to meet those standards and has since been removed." Compl. ¶ 93.

In addition to suing the Fox Defendants for allegedly misquoting him, Wheeler has sued Ed Butowsky for suggesting on Twitter that Wheeler was not telling the truth when he denied making the statements attributed to him by Fox News. Compl. ¶¶ 118-119.

## ARGUMENT

## I.   THIS ACTION MUST BE STAYED FOR RESOLUTION BY AN ARBITRATOR.

The Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Where the plaintiff's claims are covered by an arbitration agreement, the FAA requires the district courts to stay the action and compel the parties to arbitrate. *See* 9 U.S.C. §§ 3, 4. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which

---

[3] *See* http://www.wmal.com/2017/05/16/listen-rod-wheeler-reveals-the-latest-developments-of-the-slain-dnc-staffer-wikileaks-investigation/ (WMAL Radio, Mornings on the Mall); http://www.wmal.com/2017/05/16/today-private-investigator-rod-wheeler-discusses-the-latest-details-surrounding-the-death-of-democratic-national-committee-staffer-seth-rich/ (WMAL Radio, The Larry O'Connor Show); https://www.youtube.com/watch?v=er8PhSOk85s&t=2789s (The Progressive Soapbox); https://www.youtube.com/watch?v=yDI0AFOHuNI) (Crowdsource the Truth).

an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  That is the case here.

### A.     The Threshold Question of Arbitrability Must Be Decided By an Arbitrator.

Although the threshold question whether a dispute is subject to arbitration presumptively belongs to the court, *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), that presumption is overcome where, as here, the arbitration agreement reflects a "clear and unmistakable" expression of intent to submit this question to the arbitrator.  *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).  Such "clear and unmistakable" evidence of intent exists where the arbitration agreement (1) "expressly commits all disputes to arbitration" and (2) incorporates rules empowering the arbitrator to decide the question of arbitrability.  *See Nasdaq OMX Grp. v. UBS Sec., LLC*, 770 F.3d 1010, 1031-32 (2d Cir. 2014); *Contec*, 398 F.3d at 208; *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124-25 (2d Cir. 2003); *Arshad v. Trans. Sys., Inc.*, 183 F. Supp. 3d 442, 447 (S.D.N.Y. 2016).

Wheeler's arbitration provision plainly satisfies both of these conditions.  First, it broadly commits "*[a]ny* controversy, claim, or dispute arising out of or relating to" the Agreement to arbitration.  Ex. 1, ¶ 13 (emphasis added).  Second, it provides that any such disputes be decided "in accordance with the rules of JAMS," *id.*, an organization whose rules require that "arbitrability disputes . . . *shall* be submitted to and ruled on by the arbitrator," Ex. 4, JAMS Rule 11(b) (emphasis added).  The Second Circuit has "relied specifically on this JAMS rule to conclude that the parties had clearly committed gateway questions of arbitrability to the arbitrator."  *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013).  And it has routinely held that nearly identical arbitration provisions manifest a clear intent for the arbitrator to decide this threshold question.  *Compare* Ex. 1, ¶ 13 *with Contec*, 398 F.3d at 208 ("any controversy arising with respect to this Agreement . . . shall be determined by arbitration . . . in

accordance with the Commercial Arbitration Rules of the American Arbitration Association"), *and Shaw Grp.*, 322 F.3d at 120 ("All disputes . . . concerning or arising out of this Agreement shall be referred to arbitration . . . in accordance with the rules and procedures of International Arbitration.").

There can be little doubt that the parties, having signed their agreement long after the Second Circuit's decisions in these cases, intended for their own arbitration clause to be interpreted accordingly. *See Offshore Exploration and Prod. LLC v. Morgan Stanley Private Bank, N.A.*, 986 F. Supp. 2d 308, 316 (S.D.N.Y. 2013). Indeed, if anything, the arbitration agreement here is broader than those in *Contec* and *Shaw Group*, as it encompasses not just disputes "arising out of" the agreement, but also those "relating to" it. Ex. 1, ¶ 13. This Court should, therefore, stay this proceeding pending a determination by an arbitrator as to arbitrability.

### B.   Wheeler's Claims Fall Within the Scope of His Broad Arbitration Agreement.

Regardless of who decides the question of arbitrability, it is clear how that question must be answered. The FAA creates "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *JLM Indus.*, 387 F.3d at 171. And "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 473 (S.D.N.Y. 2013) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). As a result, arbitration is mandatory "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute." *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) (emphasis added).

If this Court, rather than the arbitrator, is to consider whether Wheeler's claims are subject to arbitration, it must undertake the following inquiries:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc.*, 387 F.3d at 169 (alteration omitted). As explained below, the answer to these inquiries is that all of the claims in this case are subject to arbitration and all should be stayed.

### 1. The parties agreed to arbitrate any claim arising out of or relating to Wheeler's appearances.

Paragraph 13 of the Contributor Agreement provides that "[a]ny controversy, claim, or dispute arising out of or relating to this Agreement shall be brought before a mutually selected arbitrator/mediator . . . in accordance with the rules of JAMS." Ex. 1. "To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court has to first classify the particular clause as either broad or narrow." *Great Lengths Universal Hair Extensions S.r.L. v. Gold*, No. 16 Civ. 193, 2017 WL 1731184, at *5 (S.D.N.Y. Mar. 29, 2017). Here, the arbitration clause covers "[a]ny controversy, claim, or dispute arising out of or relating to this Agreement." Ex. 1, ¶ 13. That wording represents "the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 20 (2d Cir. 1995). "[I]f the arbitration clause is broad, there arises a presumption of arbitrability." *Id.* at 23.

Not only does this broad clause provide a presumption of arbitrability, but the factual allegations in the complaint touch matters that are clearly covered by the Contributor Agreement.

"[W]hether a particular claim falls within the scope of the parties' arbitration agreement depends on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987).  As long as the "allegations underlying the claims *'touch matters' covered by the parties' . . . agreements*, then those claims must be arbitrated, whatever the legal labels attached to them."  *Id.* (emphasis added and citation omitted).

The Complaint here is replete with factual allegations tied to Wheeler's status as a Fox News contributor.  The entire thrust of the employment discrimination claim is that the payments under the Contributor Agreement, and the frequency of his appearances thereunder, denied him "equal terms and conditions of employment available to similarly-situated White employees."  Compl. ¶ 122.  There is no question that this claim is subject to arbitration.

Wheeler's defamation claim against Fox also "touch[es] matters covered" by the Contributor Agreement.  *Genesco*, 815 F.2d at 846.[4]  It is based on Wheeler's contribution to the Article, which he also discussed the same day during television appearances for which he was paid pursuant to his Contributor Agreement.  *See* Compl. ¶ 87.  The Agreement grants "the

_____

[4] Defamation and tort claims of all kinds are frequently held to be within the scope of mandatory arbitration agreements.  See, *e.g., Fleck v. E.F. Hutton Grp., Inc.*, 891 F.2d 1047, 1052 (2d Cir. 1989) (tort claims regarding statements made after termination); *Sharma v. Oriol*, No. 05 CIV. 2727, 2005 WL 1844710, at *1 (S.D.N.Y. Aug. 3, 2005) (slander); *Greenberg v. Ameriprise Fin. Servs., Inc.*, No. 15-CV-3589, 2016 WL 3526025, at *1 (E.D.N.Y. Mar. 31, 2016) (defamation, tortious interference with contract, and tortious interference with prospective economic relations); *Kouromihelakis v. Hartford Fire Ins. Co.,* 48 F. Supp. 3d 175, 185 (D. Conn. 2014) (defamation); *Nardi v. Povich*, 824 N.Y.S.2d 764 (NY Sup. Ct. 2006) (defamation); *Crawl v. Experian Info. Sols., Inc.*, No. CV PJM 15-97, 2016 WL 8716597, at *1 (D. Md. Jan. 29, 2016) (defamation); *Harajli v. Bank of Am., N.A.*, No. 14-CV-12173, 2014 WL 4965912, at *3 (E.D. Mich. Oct. 2, 2014) (defamation); *Powell v. Sparrow Hosp.*, No. 10-CV-206, 2010 WL 2901875, at *1 (W.D. Mich. July 23, 2010) (defamation and intentional interference with prospective economic advantage); *Pippenger v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 1:09-CV-167, 2009 WL 2244613, at *4 (E.D. Tenn. July 29, 2009) (negligent misrepresentation, defamation, interference with business relations).

irrevocable and exclusive right . . . to record, exhibit and otherwise use [his] name, likeness, photograph and voice on television . . . in connection with opinions/analyses/commentary concerning issues, news events and related subject matters."  Ex. 1, ¶ 1.  When Wheeler spoke to Fox News's reporter Malia Zimmerman about the Seth Rich murder investigation, he was offering "opinions/analyses/commentary" concerning events that were very much in the news. And the Article in which he was quoted identified Wheeler as a "Fox News contributor."  Ex. 8. To be sure, Wheeler's remarks in the Fox News online Article were not "on television," Ex. 1, at ¶ 1, but the Contributor Agreement specifically provides that "[t]he definition of an 'Appearance' hereunder shall include Contributor's off-air assistance, as requested by Fox."  Ex. 1, at ¶ 6 n.1.

In any event, Wheeler repeated the substance of his opinions the same day the Fox News Article was published, in the course of the two Fox News television appearances (Hannity and Dobbs) for which he was paid pursuant to his Agreement.[5]  Exs. 10, 11.  As demonstrated below, at pages 20-23, those television appearances are central to the resolution of Wheeler's defamation case.  Under these circumstances, there is no question that his defamation claim "touch[es] matters covered" by his Contributor Agreement.  *See Feinberg v. Oppenheimer & Co.*, 658 F. Supp. 892, 893 (S.D.N.Y. 1987) (holding defamatory statements "were integrally linked in plaintiff's employment" and "therefore arbitrable.").

### 2.  Wheeler's federal statutory discrimination claim is arbitrable.

Where "federal statutory claims are asserted, [the Court] must consider whether Congress intended those claims to be nonarbitrable."  *JLM Indus., Inc.*, 387 F.3d at 169.  Wheeler asserts a

---

[5] Wheeler also discussed the Rich murder in an appearance on Fox and Friends in August 2016, months before the Article.  *See* http://video.foxnews.com/v/5079544790001/ ?playlist_id=921258258001#sp=show-clips.

claim for racial discrimination under 42 U.S.C. § 1981.  Such claims have been held to be

arbitrable.  *See Nunez v. Citibank, N.A.*, No. 08-cv-5398, 2009 WL 256107, at *2, *4 (S.D.N.Y.

Feb. 3, 2009); *Doctor's Assocs. v. Agrawal*, No. 05-cv-250, 2006 WL 1028908 (D. Conn. Apr.

13, 2006).

## C.   The Claims Against Twenty-First Century Fox, Zimmerman and Butowsky Should Also Be Sent to Arbitration.

Under principles of estoppel,

> signatories to an arbitration agreement can be compelled to arbitrate
> their claims with a non-signatory where a careful review of the
> relationship among the parties, the contracts they signed . . . , and
> the issues that had arisen among them discloses that *the issues* the
> nonsignatory is seeking to resolve in arbitration *are intertwined* with
> the agreement that the estopped party has signed.

*In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 476 (quoting *Denney v. BDO Seidman, L.L.P.*,

412 F.3d 58, 70 (2d Cir. 2005) (emphasis added).  That is the case here.

As a "parent" of Fox News, *see* Corporate Disclosure Statement (ECF No. 17), Twenty-

First Century Fox is an express beneficiary of the Contributor Agreement that contains the

arbitration provision.  And its claimed liability is based solely on its status as the corporate

parent, not on any acts of its own.  *See infra*, Part II.C.  Likewise, Zimmerman's claimed liability

is based solely on her actions as an agent of Fox News Network.  There is no conceivable basis

upon which these two Defendants could be liable if Fox News Network is not liable.  The claims

against these Defendants are "intertwined" with those against Fox News Network, *see Denney*,

412 F.3d at 70; *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 476, and it makes no sense to

arbitrate one set of claims and litigate the others.

Where, as here, "(1) the signatory's claims [against non-signatory parties] arise under the

'subject matter' of the underlying agreement, and (2) . . . there is a 'close relationship' between

the signatory and the non-signatory party," the claims must be arbitrated.  *In re A2P SMS*

*Antitrust Litig.*, 972 F. Supp. 2d at 476.  The claims against these parties are precisely the same as the claims against Fox News.  They involve the "subject matter" of the Contributor Agreement, just as the claims against Fox News do.  And Fox News clearly has a "close relationship" with its employee and corporate parent.  "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993).  As a result, "the acts of employees of a party to an arbitration agreement are arbitrable as long as the challenged acts fall within the scope of the [contract]." *Mosca v. Doctors Assocs.*, 852 F. Supp. 152, 155 (E.D.N.Y. 1993); *see also Arrigo v. Blue Fish Commodities, Inc.,* 704 F. Supp. 2d 299, 303 (S.D.N.Y. 2010), *aff'd*, 408 F. App'x 480 (2d Cir. 2011) (former employee's claims against employer's CEO for overtime were subject to employment agreement's arbitration provision, although the CEO was not party to the employment agreement); *Scher v. Bear Stearns & Co.*, 723 F. Supp. 211, 216 (S.D.N.Y. 1989) ("Acts by employees of one of the parties to a[n] . . . agreement are equally arbitral as acts of the principals as long as the challenged acts fall within the scope of the . . . agreement."); *Brener v. Becker Paribas, Inc.,* 628 F. Supp. 442, 451 (S.D.N.Y. 1985) (holding that a Becker employee, who was not a party to the arbitration agreement, should benefit from the arbitration provision as "[a]ll of the plaintiffs' allegations against [the employee] arise out of his actions as Becker's employee").

The claim against Defendant Butowsky is also subject to arbitration because it is inextricably "intertwined" with the defamation claim against Fox News.  *Denney*, 412 F.3d at 70; *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 476.  Butowsky is being sued for asserting that Wheeler lied when he denied making the two statements that Fox News attributed to him.

13

Compl. ¶¶ 107, 108.  If Fox News did not misquote Wheeler, then Wheeler has no more of a claim against Butowsky than he has against the Fox parties.  Here too, the factual issues overlap, and it makes no sense to litigate one set of claims and arbitrate the others.

The defamation claim against Butowsky obviously involves the same subject matter as the defamation claim against Fox News, and the Complaint itself alleges a "close relationship" between Butowsky and Fox News.  According to the Complaint, "Butowsky is a frequent contributor for Fox News" who was "working with [Fox News reporter] Zimmerman" on the story that is the subject of the Complaint.  Compl. ¶¶ 5, 7.  The Complaint alleges that Butowsky and Zimmerman spoke to Wheeler together, *id.* ¶ 17, and that Zimmerman fabricated the two quotes that are the subject of the Complaint "with the knowledge and support of Butowsky," *id.* ¶ 3.  In short, there is no question that the Complaint alleges a "close relationship" between Butowsky and Fox News; that the "subject matter" of the defamation claim against Butowsky is the same as that against Fox News; and that the factual issues are completely "intertwined" with one another.  *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 476.  The claim against Butowsky, therefore, should also be sent to arbitration along with the claims against the Fox Defendants.

### D.    The Case Should Be Stayed Even If the Court Finds that Some Claims Are Non-Arbitrable.

"[I]f the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *JLM Indus.*, 387 F.3d at 169.  Under this Court's inherent power to control its docket, it may stay proceedings as to any non-arbitral claims or defendants.  *See WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997).

The claim against Defendant Butowsky should be stayed even if the Court concludes it is not arbitrable, because that claim involves the same facts as the claim against the Fox Defendants. "[W]here arbitrable and non-arbitrable claims arise out of the same set of facts, the arbitration may decide the same facts at issue in the litigation making a stay appropriate." *Provident Bank v. Kabas*, 141 F. Supp. 2d 310, 318-19 (E.D.N.Y. 2001). In fact, "a stay is strongly preferred when litigation parallel to arbitration 'would involve significant expense and inconvenience and might adversely affect the outcome of' the arbitration." *Empire State Ethanol & Energy, LLC v. BBI Int'l*, No. 08-cv-623, 2009 WL 1813205, at *2 (N.D.N.Y. June 25, 2009) (quoting *WorldCrisa Corp.*, 129 F.3d at 76). This is such a case. The Complaint alleges a convoluted set of facts, and litigation of the defamation claim against Butowsky would be expensive and time consuming. Should the litigation conclude before an arbitral result, the outcome of the arbitration might be affected. And whichever outcome is first, there would be a substantial risk of inconsistent judgments. Courts in this district "have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources." *See also Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg*, No. 92 Civ. 2236, 1992 WL 249914, at *2 (S.D.N.Y. Sept. 22, 1992).

## II.   IN THE ALTERNATIVE, THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A.   The Complaint Fails To State a Claim for Defamation.

If the Court declines to send this dispute to arbitration, it should dismiss the defamation action for failure to state a claim. In New York, the elements of a defamation claim are (1) publication to a third party (2) of a false statement of fact (3) with the applicable level of fault (4) that was either defamatory per se or caused the plaintiff special harm, (5) and was not protected by a privilege. *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012) (New

York law).  To survive a motion to dismiss, the plaintiff must plead facts sufficient to establish every element of the claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the facts alleged by the plaintiff, taken as true, would not "state a claim for relief that is plausible on its face," the action must be dismissed.  *Iqbal*, 556 U.S. at 678.  Early culling of meritless claims is especially warranted in the defamation context because the mere pendency of these claims imposes a cost on the exercise of free speech rights.  *See, e.g.*, *Palin v. N.Y. Times Co.*, No. 17-cv-4853, — F. Supp. 3d —, 2017 WL 3712177, at *4 (S.D.N.Y. Aug. 29, 2017).

Wheeler asserts that Defendants defamed him by attributing two statements to him that he claims he never made.  Compl. ¶¶ 115-116.  But there was nothing defamatory on the face of those quotations.  And even if there were, Wheeler made substantially the same statements *on the air* to other news organizations both before and after Fox News published the quotations he challenges here.  In light of those other public statements, the quotes attributed to him by Fox News cannot have injured his reputation.  And even assuming that Wheeler did not utter the exact words attributed to him, he cannot satisfy the falsity requirement because Defendants accurately captured "the substance, the gist, the sting" of the views he publicly expressed at the time.  *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

### 1. The Alleged Misquotes Are Not Defamatory *Per Se*, and Wheeler Has Failed To Plead Special Damages.

Wheeler alleges that the quotations "completely destroyed" his "reputation as an objective, credible, and intelligent investigator," and are therefore not only defamatory, but defamatory *per se*—that is, actionable without an allegation of special damages.  Compl. ¶¶ 104, 120.  In New York, a publication is libelous *per se* "if it tends to expose the plaintiff to public

16

contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 366 N.E.2d 1299, 1305 (N.Y. 1977).  A publication may be libelous *per se* if it "tend[s] to disparage a person in his or her office, profession or trade," *Bowes v. Magna Concepts, Inc.*, 166 A.D.2d 347, 348-49 (N.Y. App. Div. 1990), but such a publication *cannot* be defamatory *per se*—and special damages must therefore be pleaded—(1) where its defamatory import is ascertainable *only by reference to extrinsic facts* not set forth in the publication itself, *see, e.g.*, *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (N.Y. App. Div. 2015), or (2) where the publication questions the plaintiff's professional judgment or competence *on only a single occasion*, *see, e.g.*, *November v. Time Inc.*, 194 N.E.2d 126, 128 (N.Y. 1963).  It is for the court to decide as a matter of law whether a statement is reasonably susceptible of a defamatory meaning and whether it is defamatory *per se*. *See Franklin*, 135 A.3d at 92; Restatement (Second) of Torts § 614(1).

1. The two quotations at issue are not defamatory *per se* because they do not disparage Wheeler on their face, without reference to extrinsic facts.  When the Article quoted Wheeler saying "[m]y investigation . . . shows there was some degree of email exchange between Seth Rich and Wikileaks," it presented him as corroborating a federal law enforcement official who had seen a forensic examination of Rich's computer and claimed it showed he had passed DNC emails to Wikileaks.  Ex. 8.  The Article stated that the federal investigator gave Fox News a detailed account of the purported leak, noting that Rich had made contact with Wikileaks through one of its directors, Gavin MacFadyen, and passed more than 44,000 DNC communications.  *Id.*  Viewed not in isolation, but in the context of this highly detailed and specific account, *see Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177-78 (2d Cir. 2000), Wheeler's quotation confirming some degree of email contact hardly exposes him to

17

"contempt, ridicule, aversion, or disgrace," *Rinaldi*, 366 N.E.2d at 1305, or shows him to lack credibility, intelligence or objectivity, as his Complaint alleges.

There is likewise nothing defamatory on the face of the second quote attributed to Wheeler—that his investigation showed that government or political figures were "blocking the murder investigation from going forward." Ex. 8; Compl. ¶ 115.  Fox News reported that the police investigation into Rich's murder had all but stalled, with "no suspects and no substantial leads" as to the murderer's identity.  Ex. 8.  And it further explained that police had been less than transparent with the public, refusing to release security footage from the area near Rich's death or to say whether Rich, before he passed away, gave any information to police that might help identify his attackers.  *Id.*  As part and parcel of a story that documented the lack of progress and transparency in a high-profile case, Wheeler's quotation once again does not expose him to "contempt, ridicule, aversion, or disgrace," *Rinaldi*, 366 N.E.2d at 1305, or show him to lack credibility, intelligence or objectivity.

As evidence of his alleged injury to reputation, Wheeler points to subsequent, unflattering news commentary about his involvement in Rich's murder investigation.  *See* Compl. ¶ 104.  But those news articles are themselves extrinsic to the challenged publication and cannot, therefore, render the publication defamatory *per se*.  *See Franklin*, 135 A.D.3d at 92.  Moreover, those subsequent news articles are completely irrelevant, because they did not criticize Wheeler specifically for the quotations that he challenges.  The *New York Times* article, which referred to Wheeler's "shifting and contradictory accounts" and quoted Rich's brother saying that Wheeler had "discredited himself as an objective investigator," did not refer to the Fox News article at all—only to the interviews Wheeler gave to Fox 5 and Sean Hannity, neither of which is challenged here.  *See* Ex. 7.  Similarly, when *GQ* magazine called Wheeler "a verifiable dipshit,"

it was commenting *not* on his claims about Seth Rich, but on his "previous . . . warning … about the gangs of pink gun-toting lesbians raping young girls all over America." Ex. 5. Accordingly, these articles provide no support for Wheeler's position that the quotations attributed to him by Defendants are capable of a defamatory meaning, much less that they are defamatory without regard to extrinsic facts.

Wheeler also alleges that Fox News subsequently retracted the Article.[6] But that too is an extrinsic fact that cannot render the Article defamatory *per se*. This case is similar to *Franklin*, 135 A.D.3d 87, in which a disc jockey claimed that an online newspaper attributed fabricated quotes to him in a story about a celebrity fistfight at a club. Because the quotations were not defamatory except by reference to an extrinsic fact—trendy clubs expect their DJs not to disclose information about celebrity guests—the New York appellate court held that the plaintiff could not state a claim for libel *per se*. And because the plaintiff had failed to plead special damages, the court ordered dismissal of his complaint. *Id.* at 93.

2.      Even if Wheeler's defamation claim did not depend on extrinsic facts—*i.e.* even if the Fox News Article *on its face* could be understood as reflecting poorly on his assessment of the Rich matter—he could not state a claim for defamation *per se*, because the Article did not impugn his professional talents or abilities *generally*. *See Golub v. Enquirer/Star Group, Inc.*, 681 N.E.2d 1282, 1283 (N.Y. 1997). Under New York's "single-instance rule," "language charging a professional man with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded." *Bordoni v. N.Y. Times. Co.*, 400 F.

---

[6] Even then, the retraction itself did not place blame for the editorial failures on Wheeler, but simply noted that the article failed to meet Fox's standards. *See* Compl. ¶ 93.

Supp. 1223, 1229 (S.D.N.Y. 1975) (quoting *November,* 194 N.E.2d at 128).  Here, even

assuming the quotations are defamatory at all, they at most reflect poor judgment by Wheeler

with regard to a single investigation—not "general ignorance or lack of skill."  *Id.*  Accordingly,

Wheeler cannot state a claim for defamation absent allegations of special damages.

3.      Wheeler has made no attempt to plead special damages.  "Special damages

consist of the loss of something having economic or pecuniary value, which must flow directly

from the injury to reputation caused by the defamation."  *Franklin*, 135 A.D.3d at 93.  To plead

special damages, "a plaintiff must set forth an itemized account of her losses; round figures or a

general allegation of a dollar amount as special damages will not suffice."  *Nunez v. A-T Fin.*

*Info.*, *Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997); *see also* Fed. R. Civ. P. 9(g) (special

damages must be "specifically stated").  The Complaint contains no such allegations.

## 2.      Wheeler's Numerous Public Statements Endorsing the Quotations He Now Challenges Foreclose His Defamation Claim.

Even if Wheeler could otherwise state a claim for defamation, he cannot claim that the

alleged misquotations falsely defamed him when he made essentially the same statements, both

before and after the publication of the story at issue, on a number of television and radio

programs.  The Supreme Court has recognized that a misattributed quote can injure reputation if

it falsely imputes to the speaker "an attitude [he] does not hold."  *Masson*, 501 U.S. at 511.  If, as

in this case, however, the quote attributes an attitude that the speaker not only holds, but has

expressed elsewhere, the alleged misquotation is neither false nor defamatory.

Even in cases of alleged misquotation, the plaintiff cannot show falsity where "the

substance, the gist, the sting" of the quotation is accurate.  *Id.* at 516-17.  And "[i]f an author

alters a speaker's words but effects no material change in meaning, . . . the speaker suffers no

injury to reputation that is compensable as a defamation."  *Id.* at 516.

Here, Wheeler claims he was defamed when Fox News quoted him saying "[m]y investigation . . . shows there was some degree of email exchange between Seth Rich and Wikileaks."  Compl. ¶ 80.  But Wheeler cannot claim that this quote misrepresented his views when he said the same thing *on the air* to a local Fox affiliate the day before:

| | |
|---|---|
| Fox 5: | But you have sources at the FBI saying that there is information— |
| Wheeler: | For sure. |
| Fox 5: | That could link Seth Rich to Wikileaks? |
| Wheeler: | Absolutely, yeah, and that's confirmed. |

Wheeler attempts to put distance between these statements to Fox 5 and the quotations at issue, but that attempt falls flat.  Compl. ¶ 77.  He argues that he was careful to tell Fox 5 only that "a source" had information linking Rich to Wikileaks, not that he could personally "confirm" their relationship "as fact."  *Id.*  But that is entirely consistent with the quote in the Fox News Article at issue—that "[m]y investigation . . . showed some degree of email exchange between Seth Rich and Wikileaks."  Investigations rely on sources, and Defendants never suggested that Wheeler had personally viewed any emails between Rich and Wikileaks.  To the contrary, the Article at issue quoted him as saying only that he "*believe[s]* that the answers to who murdered Seth Rich sits [sic] on his computer on a shelf at the DC police or FBI headquarters"—a comment he does not challenge here.  Ex. 8 (emphasis added).

Nor can Wheeler advance his defamation claim by alleging that the source for the Rich-Wikileaks connection was *Fox News's* source, not his.  As indicated above, Fox 5, which broadcast its report before the Fox News Article was published, asked him whether "*you* have sources at the FBI saying that there is information . . . that could link Seth Rich to Wikileaks," and he answered, "For sure. . . . Absolutely, yeah, and that's confirmed."  Likewise, mere hours after the Fox News Article was published, Wheeler told television news personality Sean

Hannity that "[t]here was a federal investigator" that "*we checked . . . out*," and "he came across very credible." Ex. 11 at 5 (emphasis added); *see* Compl. ¶ 87. Wheeler also said: "When you look at that with the totality of *everything else that I've found in this case*, it's very consistent *for a person with my experience* to begin to think, well, perhaps there were some email communications between Seth and Wikileaks." *Id.* In an interview he gave on Lou Dobbs Tonight the same evening, Wheeler again confirmed that the information from this source was "pretty consistent with everything else that *I've been learning*." Ex. 10 (emphasis added).[7]

In short, both before and after the Article was published, Wheeler repeatedly claimed that *his investigation* showed communication between Rich and Wikileaks. Even assuming that Wheeler did not speak the precise words to Fox News that it quoted—"[m]y investigation . . . shows there was some degree of email exchange between Seth Rich and Wikileaks"—it was neither false nor defamatory to quote him to that effect when he publicly said the same thing on other occasions. *See Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (affirming dismissal "where [the] report was entirely consistent with the plaintiff's version of events").

For the same reasons, Wheeler cannot claim falsity or injury to reputation based on the second challenged quote: "My investigation shows someone within the D.C. government, Democratic National Committee, or Clinton team is blocking the murder investigation from going forward." Compl. ¶¶ 81, 115. The day before the Fox News Article ran with that quote, Wheeler told Fox 5: "I have a source inside the police department that has looked at me straight in the eye and said, 'Rod, we were told to stand down on this case.' . . . I don't think it comes

---

[7] Wheeler also told *Crowdsource the Truth* on August 5, 2017: "I do believe that there was some communication between Seth and Wikileaks and I believe that based on common sense first of all . . . and you know from *information that we're getting from various sources*." https://www.youtube.com/watch?v=yDI0AFOHuNI (emphasis added).

from the chief's office but I do believe there is a correlation between the Mayor's office and the

DNC." Ex. 9.  In his appearance on the Sean Hannity Show, *see* Compl. ¶ 87, he confirmed that

"a high ranking official at the DNC . . . called the Rich family wanting to know why I was

snooping around" the police department.  Ex. 11 at 7.  And in his appearance on Lou Dobbs

Tonight, he said:

> I actually heard myself from a detective who said, "Rod we were told to not to investigate fully."  Now, see, that's interesting because that's consistent with what this federal investigator said.  The federal investigator never knew, Lou, that I had heard from a detective in the police department to stand down.  Well, if this guy says the same thing, you have to start saying to yourself, Well, maybe there's some truth behind this.[8]

Ex. 10 at 6.

In sum, the quotations that Wheeler challenges in this case are no different from

statements he made *on the air* on other occasions.  Attributing those quotations to him did not

"have a different effect on the mind of the reader from that which" Wheeler's actual words on

those other occasions would have produced.  *See Masson*, 501 U.S. at 517.  For that reason, the

alleged misquotations were neither false nor defamatory.  *See Perry v. CBS, Inc.*, 499 F.2d 797,

799-800 (7th Cir. 1974) (holding that, because plaintiff "fostered the story and allowed it to

circulate publicly," he was "estopped now to point out its falsity").

### 3.     Zimmerman's Email to Rich's Family Is Not Actionable.

Wheeler also claims that he was defamed by an email Zimmerman sent to Seth Rich's

father.  That claim is equally meritless.  Zimmerman wrote to Joel Rich (and no one else):  "As

you know, much of our information came from a private investigator, Rod Wheeler, who we

---

[8] Wheeler said the same thing—"the detective . . . said 'Come on Rod, *we were told to stand down*'"—on WMAL radio on May 16.  *See* http://www.wmal.com/2017/05/16/today-private-investigator-rod-wheeler-discusses-the-latest-details-surrounding-the-death-of-democratic-national-committee-staffer-seth-rich/; *see also* Ex. 6.

understand was working on behalf of you."  Compl. ¶ 117.  But Wheeler cannot possibly allege

this statement was false, because his *own allegations* establish that he provided information to

Zimmerman.  *See* Compl. ¶ 76.  Furthermore, Zimmerman's email cannot have harmed

Wheeler's reputation because it told Rich's family only what they "already kn[ew], " Compl.

¶ 117—that Wheeler was a source for Fox News.  *See Republic Tobacco Co. v. N. Atl. Trading

Co.*, 381 F.3d 717, 727-28 (7th Cir. 2004) (alleged "falsehoods which do no incremental damage

to the plaintiff's reputation do not injure the only interest the law of defamation protects").  This

claim too should be dismissed.

### B.    The Complaint Fails To State a Claim for Employment Discrimination.

To state a section 1981 claim, a plaintiff must allege facts sufficient to establish that (1)

he is a member of a protected class; (2) he is qualified for the position he seeks; (3) he has

suffered an adverse employment action; and (4) there are circumstances that give rise to an

inference of discriminatory intent.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72,

83 (2d Cir. 2015).  Here, Wheeler alleges generally that Fox discriminated against him on the

basis of his race and/or national origin by giving white colleagues more air time and hiring them

into full-time positions.  Compl. ¶¶ 110, 122.  But he fails to allege any facts to support those

vague allegations.  Most notably, he fails to make any effort to compare his qualifications or his

appearances to those of the colleagues whom he alleges received more favorable treatment.  In

the absence of "meaningful specifics" showing Wheeler was similarly situated to those

colleagues, he has failed to plausibly allege discriminatory intent.  *See Burgis v. N.Y.C. Dep't of

Sanitation*, 798 F.3d 63, 68-69 (2d Cir. 2015); *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp.

3d 198, 215 (S.D.N.Y. 2017).

C.      **The Complaint Fails To State a Claim against Twenty-First Century Fox.**

The defamation claim against Twenty-First Century Fox—Fox News's ultimate parent company—must be dismissed for the additional reason that the Complaint does not allege that it engaged in any tortious conduct.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Thus, courts routinely dismiss claims against parent corporations where there is no allegation that the parent was directly involved in the alleged conduct.  *See, e.g.*, *Williby v. Hearst Corp.*, No. 15-cv-02538, 2017 WL 1210036, at *4 (N.D. Cal. Mar. 31, 2017); *Susko v. Cox Enters., Inc.*, No. 07-cv-144, 2008 WL 4279673, at *8 (N.D. W. Va. Sept. 16, 2008).  The Complaint alleges the involvement of only three Fox-related individuals in connection with the challenged Article or Wheeler's employment, and it specifically identifies all three (accurately) as Fox News employees.  Compl. ¶¶ 2 ("Fox News's Malia Zimmerman"), 22 ("Dianne Brandi, Fox News's Executive Vice President, Legal and Business Affairs, and Jay Wallace, Fox News's Executive Vice President of News and Editorial").  Because Wheeler does not allege that any Twenty-First Century Fox employee said or did anything to harm him, the claim against it must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, this action should be stayed and submitted to arbitration or, in the alternative, should be dismissed for failure to state a claim.

Respectfully submitted,

*S/   Kevin T. Baine*

Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)

WILLIAMS & CONNOLLY LLP

25

725 Twelfth Street, N.W.
Washington, D.C. 20005

1330 Avenue of the Americas
Suite 23A
New York, NY 10019
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
dbutswinkas@wc.com
jterry@wc.com

*Attorneys for Twenty-First Century Fox,
Inc., Fox News Network LLC*

*With Consent*,

HUGHES, HUBBARD, & REED LLP
David H. Stern (*pro hac vice*)
Daniel H. Weiner
Carolin Sahimi (*pro hac vice*)

350 South Grand Avenue
Los Angeles, California 90071

One Battery Park Plaza
New York, NY  10004
Tel: (213) 613-2800
Fax: (213) 613-2950
david.stern@hugheshubbard.com
daniel.weiner@hugheshubbard.com
carolin.sahimi@hugheshubbard.com

*Attorneys for Malia Zimmerman*

DATED: September 18, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2017, I electronically filed the foregoing Notice of

Appearance with the Clerk of the Court using the CM/ECF system which will send notification

of such filing to all counsel of record in this matter who are on the CM/ECF system.

<div align="right">

*/s/ Kevin T. Baine*
Kevin T. Baine

</div>

27