**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X

ROD WHEELER, :
:
                    Plaintiff, :     Civil Action No.: 17-05807
:
        v. :
:
TWENTY-FIRST CENTURY FOX, INC., FOX :
NEWS NETWORK LLC, MALIA :
ZIMMERMAN, in her individual and professional :
capacities and ED BUTOWSKY, in his individual :
and professional capacities, :
:
                  Defendants. :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ED BUTOWSKY'S MOTION
FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………...…………………...1

FACTUAL AND PROCEDURAL BACKGROUND…..………………………………..………4

I.    Mr. Wigdor's Improper Strategy of Collecting and Filing Explosive Lawsuits Against Fox in Order to Achieve a Global Settlement of all Plaintiffs' Claims......…….……………………………………….……………......…….4

II.    Mr. Wigdor's Plaintiff, Private Investigator Rod Wheeler, Has a Long History of Telling Fantastic Stories about His Investigations to the Media ……………………..……….…6

    A.  Wheeler's Modus Operandi of Making Sensationalistic Claims about His Investigations to the Media……………………………………….……………6

    B.  Consistent With His Modus Operandi, Wheeler Made Explosive Claims About His Investigation Subject, Seth Rich, to Gain Media Attention..………………………7

III.    Mr. Wheeler's Meritless Defamation Complaint Withholds Essential Facts that Make It Clear that His Claims Are Baseless…..………………………………………….…………9

IV.    Wheeler Made the Same "Misattributed" Statements in Other Media Appearances.........11

    A.  Wheeler Made the Same Statements in a May 15, 2017 Fox DC Appearance……11

    B.  Wheeler Corroborated the Substance of his Quotes in Interviews with Other Media Outlets Following the Fox News Publication……………….……………...……12

STANDARD ON A MOTION FOR SANCTIONS……………………………….……….…...13

ARGUMENT……………………………………………………………………………...……14

    A.  Plaintiff Has Not Alleged Nor Does He have Any Basis for Personal Jurisdiction Over Butowsky…………………………………………………......…….14

    B.  Plaintiff's Baseless Defamation Claims Have No Chance of Success Given the Evidence Plaintiff Withheld from this Court……………………………………15

        1.  The Complaint Cannot Meet the Elements of Defamation Per Se..………16

        2.  Wheeler Consented to the Defamatory Statements Which is a Complete Defense Under Maryland Law……………………………………………17

        3.  Plaintiff Cannot Prove Defamation Given that Wheeler is a Public Figure …………………………………………………………………….…18

4.    Wheeler's Own Public Statements Disprove Material Falsity…………19

5.    Butowsky's Tweets Do Not Come Close to Defamation……………….21

C.   Plaintiff's Baseless Claims were Filed for an Improper Purpose ………………22

CONCLUSION…………………………………………...………………………………...25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abdelhamid v. Altria Group, Inc.*,
    515 F. Supp. 2d 384 (S.D.N.Y. 2007)……………………………………….……...13

*AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*,
    903 F.2d 1000 (4th Cir. 1990)……………………………………………….…………21, 22

*Amityville Mobile Home Civic Ass'n v. Town of Babylon*,
    2015 U.S. Dist. LEXIS 39016 (E.D.N.Y. 2015)………………………….…………...……24

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)……………………………………………………19

*Brown v. Ferguson Enters.*,
    No. No. 12-1817, 2012 U.S. Dist. LEXIS 174991 (D. Md. Dec. 11, 2012)………..………20

*Charles v. Levitt*,
    2016 U.S. Dist. LEXIS 95725 (S.D.N.Y. 2016)……………………….………...…………23

*Collins v. Travers Fine Jewels Inc.*,
    No. 16-CV-03780 (SN), 2017 U.S. Dist. LEXIS 46866 (S.D.N.Y. Mar. 28, 2017)…..…16

*Galonsky v. Williams*,
    1997 U.S. Dist. LEXIS 19570 (S.D.N.Y. 1997)………………………………………….23

*Gold v. The Last Experience*,
    97 CIV. 1459 (JGK), 1999 WL 156005 (S.D.N.Y. Mar. 22, 1999)………………………14

*Greene v. Donovan*,
    No. 07 Civ. 1928, 2007 WL 2005558 (S.D.N.Y. July 2010, 2007)………………….....14

*Hall v. Tressic*,
    381 F. Supp. 2d 101 (N.D.N.Y 2005)…………………………………………………….25

*Harte-Hanks Communications v. Connaughton*,
    491 U.S. 657 (1989)……………………………………………….……………………...19

*Haskins v. Baylis*,
    440 F. Supp. 2d 455 (D.M.D. 2006)…………..……………………………..……………16

*Hoatson v. N.Y. Archdiocese*,
    2007 U.S. Dist. LEXIS 9406 (S.D.N.Y. 2007)………………………………….………..22

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003)…………………………………………….……….15

*In re Zion*,
    727 F. Supp. 2d 388 (W.D. Pa. 2010)………………………………...………24

*Indep. Newspapers, Inc. v. Brodie*,
    407 Md. 415 (2009)…………………………………………………………16

*Jacobus v. Trump*,
    51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017)………………………………………22

*Levine v. FDIC*,
    2 F.3d 476 (2d. Cir. 1993)…………..………………………………………24

*Mandelblatt v. Perelman*,
    683 F. Supp. 379 (S.D.N.Y. 1988)…………………………………………...17

*Masson v. New Yorker Magazine*,
    501 U.S. 496 (1991)………………………………..………………………21

*MCI Communs. Servs. v. Am. Infrastructure-MD, Inc.*,
    No. 11-3767, 2013 U.S. Dist. LEXIS 113061 (D. Md. 2013)……………………18

*Russell v. Railey*,
    2012 U.S. Dist. LEXIS 49370 (D. Md. April 9, 2012)…………….……………...15

*Steele v. Polymer Research Corp.*,
    1987 U.S. Dist. LEXIS 5270 (S.D.N.Y 1987)…………………………………....14

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)…………………………………………..……15

*Ziemkiewicz v. R+L Carriers, Inc.*,
    996 F. Supp. 2d 378 (D. Md. 2014)……………………………………17, 18

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 11………………………………………………………………passim

Defendant Ed Butowsky submits this memorandum of law in support of his motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") against Plaintiff Rod Wheeler and his counsel, Douglas Wigdor and Wigdor Law LLP, for filing of a frivolous complaint against Butowsky that has no basis in fact or in law, for an improper purpose.

## **INTRODUCTION**

On July 31, 2017, Plaintiff Rod Wheeler, through his counsel, Douglas Wigdor, provided David Folkenflik, reporter for National Public Radio ("NPR"), with the Complaint in this action to drive morning media coverage of the lawsuit they filed the following day.  Wheeler, a veteran media contributor, and Wigdor, a lawyer whose cases frequently garner extensive media coverage, understood that the deceptive and incomplete allegations they were about to make against Defendants Twenty-First Century Fox, Inc., Fox News Corp., (collectively as "Fox" or "Fox News"), Malia Zimmerman, and Ed Butowsky, would inflame the public's persistent demand for sensationalistic stories and would dominate the news.  They were right.

On August 1, 2017, Wheeler filed the Complaint with this Court alleging, in dramatic fashion, that the Defendants colluded with President Trump and his Administration to debunk the assertion that the Russian government orchestrated the hacking of the Democratic National Committee ("DNC") by spinning a fake news story about the murder of former DNC staffer Seth Rich.  The media coverage of the lawsuit was sweeping, and overwhelmingly negative toward the Defendants.  Not surprisingly, the coverage centered almost exclusively on the alleged conspiracy between the media conglomerate and the Administration to generate a fake news story in order to avoid a scandal, just as intended by Wheeler and Wigdor.

At its core, however, Wheeler's defamation claim has nothing to do with this spectacular conspiracy.  He is suing Butowsky for defamation *per se* based on the purported misattribution of

two quotes by Wheeler in a Fox News online publication by Defendant Malia Zimmerman without specifically linking Butowsky to the defamatory statement, revealing the texts and emails surrounding those quotes, or alleging any viable jurisdictional basis for bringing suit against Butowsky, a Texas resident, in New York. After peeling away the many layers of extraneous allegations, and understanding the context within which Wheeler brought this case, it's clear this action as to Butowsky is frivolous.

The full set of facts tell a very different story than what is laid out in Wheeler's Complaint. Specifically, Zimmerman sent Wheeler the story with the quotes multiple times before publication, pleading with him to "read it now" and to "please read it carefully." Wheeler never objected to the accuracy of the story, and even added language to one of the quotes, which was included by Zimmerman verbatim.

Moreover, Wheeler made numerous statements before and after the publication that belie his allegations of misattribution. For example, the day before publication, Wheeler spoke with a local Fox 5 DC reporter confirming that he had independent "sources at the FBI that there is information that could link Seth Rich to Wikileaks." He also confirmed that he believed "there is a correlation between the mayor's office and the DNC," concerning the murder and the subsequent investigation. The day after the publication of Zimmerman's article, Wheeler reported to another media outlet that *he* had a "very credible" source confirming email communications between Seth Rich and Wikileaks which led him to conclude that there may be "some email communications between Seth and Wikileaks." He also claimed that certain DNC officials should be "persons of interest" in Rich's murder.

Wheeler and his counsel were, of course, keenly aware of these material facts long before the filing of the Complaint. Indeed, counsel for Butowsky repeatedly highlighted the exculpatory

facts prior to Wheeler filing the case and, again, 21 days prior to filing this Rule 11 motion.  Indeed, attempting to dispel the fabricated conspiracy theory, Butowsky's counsel confirmed that Butowsky had never met or done anything for the President, either directly or indirectly.   In violation of Rule 11, however, Wheeler and his counsel improperly omitted these details from the Complaint to propel a deceptive narrative into the media because they recognized that the disclosure of the full facts would be immediately fatal to Wheeler's claims.

As to the sufficiency of Wheeler's pleadings, Wheeler glaringly fails to allege personal jurisdiction over Butowsky or that Butowsky had anything to do with the sourcing, fact checking, drafting, or publishing the misattributed quotes.  Equally critical, Wheeler is, at the very least, a limited purpose public figure and Wheeler does not allege, nor can he prove that Butowsky, or anyone else, had knowledge of the alleged misattribution.  Indeed, Zimmerman pleaded with Wheeler to review the draft story prior to publication, and sent it to him several times *with the alleged misattributed quotes*, which entirely undermines Wheeler's claim that Zimmerman intentionally misled him.  The complete facts show that Wheeler consented to the publication of the quotes, and that Wheeler made many pre- and post-publication statements that bear no material difference to the statements he claims are false.  There is simply no viable defamation claim here.

Despite these woeful deficiencies, Wheeler, through his counsel, Douglas Wigdor, dangled the Complaint before the Defendants for weeks, threatening to sue Butowsky, and others, unless Fox News resolved the matter.  Wigdor has filed multiple lawsuits that piggyback off recent high-profile settlements by Fox News, aggressively pursuing a very public campaign against Fox that has included press conferences with over a dozen former Fox employees.  He now represents over twenty plaintiffs who have alleged sexual harassment and discrimination by Fox, plus Wheeler's claim for defamation and racial discrimination.

As noted by the *New York Times*, Wigdor apparently employed an unconventional strategy of attempting to settle all of the Fox News lawsuits by demanding a lump sum payment from Fox. Wigdor contends that he can, without conflict, apportion any settlement amount to his clients, but, in reality, he is using the media attention to Wheeler's salacious and irrelevant claims about Butowsky to pressure Fox into a settlement. Recently, Wigdor himself generated media attention by injecting himself into the public approval process of a potential merger between Fox News and the UK's Sky TV, contending that regulators should reject the merger because his lawsuits demonstrate Fox's weak internal controls.

Plaintiff's suit against Butowsky is a transparent ploy and a waste of the Court's and the parties' time and resources. By failing to make a reasonable inquiry into the facts of the case and intentionally ignoring details that eviscerate their claims, Wheeler and Wigdor have caused untold damage to Butowsky's reputation and substantial legal fees, which will continue to mount if this case is allowed to proceed. The lawsuit has no basis in fact or in law, and is clearly being advanced for an improper purpose—to harass, intimidate, and extort the Defendants. This conduct is sanctionable, and by this motion, Defendant Ed Butowsky seeks costs and attorneys' fees associated with defending these frivolous claims under Rule 11.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.   Mr. Wigdor's Improper Strategy of Collecting and Filing Explosive Lawsuits Against Fox in Order to Achieve a Global Settlement of all Plaintiffs' Claims**

Starting in or about March 2017, Wheeler's counsel Wigdor Law filed a series of lawsuits against Fox News, including a race, gender and pregnancy discrimination, and hostile work environment suit, a class action racial discrimination suit, and an additional gender discrimination suit, on behalf of more than 20 current and former employees of Fox.[1] Intensifying his campaign

---

[1] *See* "Wigdor LLP Now Represents 23 Employees and Former Employees With Claims Against Fox," available at

4

against Fox, in May 2017, Douglas Wigdor sent a letter to the British authority Ofcom challenging 21st Century Fox's $15 billion bid for Sky TV, a European satellite giant, based, in large part, on the allegations in his lawsuits.[2]

In late June, Wigdor further escalated his campaign against Fox, by presenting Defendants with a yet-to-be-filed complaint in the name of Rod Wheeler, a private investigator and Fox News guest correspondent, which made "explosive" allegations about a conspiracy, involving Fox, President Trump and Mr. Butowsky, to deflect attention from the Russian hacking scandal. Wigdor thus ensnared Mr. Butowsky in a campaign to harass Fox into agreeing to a global settlement of all of Wigdor's disparate lawsuits.

Upon learning about the threatened action, counsel for Butowsky warned Wheeler and Wigdor of the Complaint's egregious deficiencies. By letter dated June 27, 2017, Butowsky's counsel sent Wigdor a response demonstrating the frivolous nature of Wheeler's allegations against Butowsky and exposing the irrelevant and inflammatory conspiracy theories. [Ex. 1.]

In late July, Wigdor Law proceeded with its strategy of attempting to globally settle the Fox cases, along with Wheeler's yet-to-be-filed defamation action, under the threat of publicizing that Complaint. As reported in the *New York Times*, "Mr. Wigdor's proposal to settle the disparate cases altogether is considered unusual," as "cases typically vary greatly in their merit, making them difficult to value as a group." [Ex. 2.] According to the *Times*, at a confidential mediation proceeding in July, Wigdor asked for more than $60 million to settle his Fox disputes. Wigdor

---

https://www.wigdorlaw.com/wigdor-llp-now-represents-23-employees-former-employees-claims-fox/ (last visited Sept. 18, 2017)

[2] *See* "Partner Douglas Wigdor Will Meet With OFCOM To Outline Claims of Race and Gender Discrimination By 21 Current and Former Fox Employees," available at https://www.wigdorlaw.com/wigdor-meeting-ofcom-discrimination-fox-news/ (last visited Sept. 19, 2017)

proposed that the settlement be paid in a lump sum, giving him discretion to distribute the payments to his group of plaintiffs. [Ex. 2.]

After mediation failed, Wigdor delivered on his promise and went public with his explosive defamation case. On July 31, 2017, Wigdor approached David Folkenflik of NPR to give him the scoop on this lawsuit. The next day NPR published a story about the fantastic Trump conspiracy theory, sparking an enormous Wigdor-generated publicity campaign to coincide with Wigdor filing Wheeler's complaint. Wigdor and Wheeler have since pursued a very public campaign against Fox, Zimmerman, and Butowsky, participating in several press interviews and sending multiple letters to Ofcom that include repeated references to Wigdor's many lawsuits against Fox, including this one.[3] Wigdor and his colleagues from Wigdor Law have also appeared with Wheeler on several cable news and radio shows to promote the allegations.[4] As Wigdor certainly expected, the entirety of the coverage centered on the provocative statements of Wheeler and his counsel about the conspiracy involving the White House.[5]

## II.   Mr. Wigdor's Plaintiff, Private Investigator Rod Wheeler, Has a Long History of Telling Fantastic Stories about His Investigations to the Media

### A.   Wheeler's Modus Operandi of Making Sensationalistic Claims about His Investigations to the Media

Rod Wheeler is an unlicensed private investigator, and semi-regular Fox News contributor, with a modus operandi of making sensationalistic claims about his investigation subjects. Over

---

[3] See *e.g.* "Fox News must let Ofcom meet harassment victims, lawyer says" available at http://www.wigdorlaw.com/wp-content/uploads/2017/05/5.11.17-The-Guardian.pdf; "Lawyer Suing Fox News Slams Gag Order in U.K. Regulator Meeting" available at http://www.wigdorlaw.com/wp-content/uploads/2017/05/5.11.17-Bloomberg.pdf;

[4] See *e.g.* MSNBC's "The Beat with Ari Melber" on Aug. 1, 2017, available at http://www.msnbc.com/the-beat-with-ari-melber/watch/detective-says-fox-news-lured-him-into-plot-to-help-trump-white-house-1015014467654; CNN's "Tonight with Don Lemon" on Aug. 3, 2017, available at http://www.cnn.com/videos/justice/2017/08/04/rod-wheeler-fox-news-seth-rich-dnc-staffer-story-ed-butowsky-full-intv-ctn.cnn

[5] The White House conspiracy theory is based on text messages and a voicemail that have long been repudiated by Butowsky as hyperbole, directed at Wheeler simply to encourage him, as the Complaint concedes, to complete his investigation and confirm his conclusions in the Rich investigation to Ms. Zimmerman. *See* Ex. 1.

the course of his many years as a Fox contributor, Wheeler has made several notorious appearances, making dubious claims about investigation subjects without supporting facts or credible sources.  In 2007, Wheeler appeared on the Fox program Hannity & Colmes, discussing the controversial topic of racial profiling.  During the interview, Wheeler pulled his eyes back with his hands to show viewers what a "Chinese male" looked like.  [Ex. 3.]

That same year, on Fox's Bill O'Reilly, Wheeler reported, without citing a single source, that a "national underground network" of "pistol toting lesbian gangs" (over 150 in the D.C. area alone) were terrorizing the country and sexually assaulting young children.  [Ex. 4.]  This salacious, headline grabbing story was untrue.  In fact, Mr. Wheeler issued a retraction, replacing his personal webpage with a "clarification and apology" asserting that viewers had misunderstood his comments.  He hadn't meant to implicate the Pink Pistols in violent gang activity, he said, and when he mentioned "over 150 of these gangs" in the Washington metropolitan area, he actually meant that there are 150 gangs of all types in the region. He also conceded that his reference to a "national epidemic" of lesbian gangs was overstated.  [Ex. 4.]

Wheeler also claimed in a story by the *National Enquirer* "there is a good possibility that the D.C. Madam's list contains the name of (missing intern) Chandra (Levy)'s killer!" [Ex. 5.] This claim related to the murder of a young D.C. government intern in 2001, and seemed to suggest a connection between Levy and the D.C. Madam which resulted in her murder.  In August 2016, Wheeler again reported without any evidence that Levy's murderer may have been a man recently convicted for the abduction and sexual assault of two Virginia college students.  Needless to say, Wheeler's fantastic theories have not bore any fruit. Levy's murder remains unsolved today.

**B.  Consistent With His Modus Operandi, Wheeler Made Explosive Claims About His Investigation Subject, Seth Rich, to Gain Media Attention**

In or about February 2017, Mr. Butowsky introduced Mr. Wheeler to the Rich family to assist with the investigation of the unsolved murder of their son. [Compl. ¶ 60.]  The Seth Rich investigation presented a media opportunity for Wheeler that fit with his modus operandi of promoting his investigation reports in the media through explosive claims.  Within a few days of beginning the Rich investigation (before actually being hired by the Rich family), Wheeler began assisting Fox News' Malia Zimmerman with an article about the Seth Rich murder, reporting the details of his investigation to her in real time.

On March 15, 2017, Wheeler contacted Zimmerman to update her on his investigation and described an "underground network" operating in the D.C. area "knock[ing] off certain people." [Ex. 6.]  Two weeks later, Wheeler suggested that the D.C. Metro police were not equipped to handle the investigation due to an apparent political conspiracy.  [Ex. 7.]  On or around April 9, 2017, Wheeler told Zimmerman that he was "ready" to confirm that the murder of Seth Rich was not a botched street robbery as reported, and that there appeared to be some kind of government cover-up related to the investigation. [Ex. 8.]  Wheeler also sent a text message to Butowsky saying that he knew who was blocking the Seth Rich murder investigation: "Ed I just got some dynamic information! . . . I've made contact with the lead detective he is willing to meet with me.  And I know who is blocking the investigation."  [Ex. 9.]

Wheeler also interviewed D.C. Police Detective Della-Camera about Seth Rich with a focus on Rich's potential involvement with WikiLeaks.  Wheeler detailed the interview in an April 25, 2017 report, explaining that Detective Della-Camera "can't rule anything out" regarding whether Rich's death related to his job, and stated that if his death is "related to the DNC, at some point, it may come out."   Wheeler also reported that Detective Della-Camera *could not be certain* that Rich *never* received any money from WikiLeaks around the time of his death.  Finally, when

Wheeler asked him about whether emails to WikiLeaks were found on Rich's computer, Detective Della-Camera reportedly told him, "Well, well . . . there's stuff on there that, it's its, emails are sent everyday….um…the context of the emails I can't get into the details, um, again, I don't have anything pointing the finger at the DNC other than the conspiracy theories."  [Ex. 10.]

By mid-May, Zimmerman had written most of the story, and had provided an early draft of the story to Wheeler for his review.  [Compl. ¶ 71.]  Around this same time, Wheeler had disclosed to her that he began hearing that Donna Brazile, former chair of the DNC, had been interjecting herself into the Seth Rich investigation, and may have had an improper motive in doing so.  On May 15, 2017, as Zimmerman was finalizing the article, she asked Wheeler for a quote regarding Donna Brazile and the DNC.  Wheeler sent her a blurb for the quote, which explicitly detailed Wheeler's belief about the DNC's improper involvement in the investigation.  [Ex. 11.]

Wheeler confirmed that he "***just read the email***" Zimmerman sent, and he reported that Brazile and Congresswoman Debbie Wasserman Schultz had been asking why he had been "snooping around" the death of Seth Rich and his work at the DNC.  [Ex. 11.]  He continued, "As a police investigator that automatically makes me think that Donna Brazil (sic) is in a category of *persons of interest* as it relates to the death of Seth Rich," and asserted that the FBI should be investigating DNC staff about the murder. [Ex. 11.]  After receiving this information and getting Wheeler's express permission to quote him on this topic, Zimmerman worked to finalize her story, including quotes she had gathered from her many discussions with Wheeler.

### III.    Mr. Wheeler's Meritless Defamation Complaint Withholds Essential Facts that Make It Clear that His Claims Are Baseless

Wheeler's 33-page complaint, at its heart, concerns Wheeler's claims that two quotes in an article published by Malia Zimmerman on May 16, 2017, were misattributed to him.

- "My investigation up to this point shows there was some degree of email exchange between Seth Rich and Wikileaks."

- "My investigation shows someone within the D.C. government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward. That is unfortunate. Seth Rich's murder is unsolved as a result of that."

Although Wheeler's complaint describes numerous irrelevant and misleading messages surrounding the Fox News story's publication, he fails to disclose the details that are most important and, indeed, exculpatory. Namely, on May 15, 2017, on three separate occasions, Ms. Zimmerman sent Mr. Wheeler copies of her story for his approval, containing the precise quotes that are at the core of this case. On May 15 at 1:20 PM, Ms. Zimmerman sent Wheeler an email containing a draft of the article with the subject "small changes included – current draft." The draft contained the precise quotes Wheeler claims were wrongfully attributed to him. [Ex. 12.] At 3:59 PM, Zimmerman again sent Wheeler a copy of the article, stating in the subject line "please read carefully." The draft again contained both of the precise quotes that Rod Wheeler now claims were wrongfully attributed to him. [Ex. 13.]

Shortly thereafter, Ms. Zimmerman sent Mr. Wheeler a text message seeking his review and approval of the story, stating, "Can you read the story now? Get back to me as soon as you can so I can turn it in. Thanks!" Wheeler responded, "Reading it now. Malia you can add that I do strongly believe that the answers to who murdered Seth sits on his computer on a shelf at the D.C. Police or FBI headquarters." Zimmerman wrote, "Ok I'll add it." [Ex. 14.] Then, at 4:47 PM, Zimmerman sent Wheeler an email containing the final draft of the article, in the body of the email, with the subject "draft turned in." The final draft, the same draft published on Fox News the following day, contained the same quotes Wheeler claims were misattributed to him. [Ex. 15.]

Wheeler did not object to any of the contents of the story prior to its publication, including the quotes, despite telling Zimmerman he read the article and the numerous opportunities he had

to correct it.  These details, intentionally withheld from the Complaint, demonstrate that *no one* misattributed quotes to Mr. Wheeler.  Those quotes belonged to Wheeler, and certainly did not come from Mr. Butowsky.

**IV.    Wheeler Made the Same "Misattributed" Statements in Other Media Appearances**

    **A.    Wheeler Made the Same Statements in a May 15, 2017 Fox DC Appearance**

At the same time Zimmerman was requesting that Wheeler confirm the accuracy of her story and quotes, Wheeler was disclosing the details of Zimmerman's story and his Seth Rich investigation to other media outlets, including a local Fox 5 DC reporter named Marina Marraco. On May 15, 2017, Ms. Marraco interviewed Mr. Wheeler, on camera, for a "teaser" of the Zimmerman story, effectively permitting Ms. Marraco to scoop Zimmerman.  In that interview, Wheeler made several statements that previewed and confirmed his approval of the substance of the Fox News quotes at the center of this dispute.[6]  [Ex. 16.]

> Wheeler described political impediments to the Seth Rich murder investigation:
>
> The police department nor the FBI have been forthcoming.  They haven't been cooperating at all. I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or either at the FBI. I have been told both.

Wheeler also confirmed that he had an independent source linking Seth Rich to Wikileaks:

> **Marraco:** "You have *sources at the FBI* saying that there is information…"
> **Wheeler:** "For sure."
> **Marraco:** "…that *could link Seth Rich to Wikileaks*?"
> **Wheeler:** "Absolutely.  *That's confirmed*."  [Ex. 16.]

Wheeler then implicated the DNC as interfering with the Seth Rich murder investigation, and said that information would come out in the Fox News story:

> I have a source inside the police department that has looked at me straight in the eye and said, 'Rod, we were told to stand down on this case and I can't share any

---

[6] Available at http://www.fox5dc.com/news/local-news/254852337-story (last visited August 28, 2017).

> information with you.' Now, that is highly unusual for a murder investigation, especially from a police department . . . . I do believe there is a correlation between the mayor's office and the DNC and that is the information that will come out [on May 16]. [Ex. 16.]

After Fox 5 DC reported the interview, it quickly became a top news story.

Zimmerman was upset when she learned that Wheeler permitted another media outlet to scoop her story. Wheeler initially denied that he gave Marraco the scoop, but as the facts came out, he apologized to Zimmerman for giving away her story, saying he "blew it" and felt "duped," while insisting that Marraco misquoted him. [Ex. 17.] Despite her disappointment, Zimmerman was sympathetic, and counseled Wheeler on how to get a retraction. [Ex. 17.]

On May 17, 2017, Fox 5 DC reported that Rod Wheeler backtracked on his statements. Fox 5 DC reprinted the exchange between Wheeler and Marraco verbatim, including that he has "sources at the FBI" saying that there is information linking Seth Rich to Wikileaks, however, clarified that he now described his statements as a "miscommunication." [See Ex. 16.] Wheeler has not filed a defamation suit against Fox 5 DC or Marraco for the "miscommunication."

### B.      Wheeler Corroborated the Substance of his Quotes in Interviews with Other Media Outlets Following the Fox News Publication

Wheeler made several media appearances following publication, and repeatedly confirmed the substance of the quotes he now claims were falsely attributed to him. On May 16, 2017, he appeared on Fox News with Sean Hannity and confirmed his belief in a connection between Seth Rich and Wikileaks as well as the DNC's involvement in the criminal investigation:[7]

> Now, where did this information come from in terms of knowing or believing I should say that Seth Rich could have been in communications with Wikileaks? There was a federal investigator that was involved on the inside of the case, a person that's very credible...this person, we checked him out, very credible, he said he laid eyes on the computer and he laid eyes on the case file ...When you look at that with the totality of everything else I have found in this case, it's very consistent for a

---

[7] Also available at http://video.foxnews.com/v/5437207289001/?#sp=show-clips (last visited August 28, 2017)

person with my experience to begin to think well perhaps there were some email communications between Seth and Wikileaks....Guess what I learned yesterday from the family of Seth Rich, the police department did not call me back because someone, a high-ranking official at the DNC . . . got that information and called the Rich family, wanting to know why was I snooping around.

On May 22, 2017, Wheeler issued a statement, saying that he still believes in a connection between Seth Rich's murder and Rich's employment with the DNC, and that the Fox News story, at the center of this case, "*was essentially correct.*" [Ex. 18.]  (emphasis added).  On May 23, 2017, Wheeler appeared on Fetch Your News, a conservative radio show, on which he confirmed, "I thought it was so important for the people that are watching this know exactly what's going on." He then continued: "I can't go into details because of the cease and desist letter [from the Rich family] but let me just say this, *I do believe that his death, his murder, is related in some kind of way to his job (with the DNC)*, or to the relationships at his job (with the DNC) . . . And I also feel that I was getting very close to identifying a motive in this case, and as soon as I got very close, that's when I got stopped."[8]  (emphasis added).

A few days later, on or about May 29, 2017, on the radio show Crowdsource the Truth Interview, Wheeler insisted, "I haven't walked back anything.  As a matter of fact . . . I said then in my statement in writing that *I do believe that there was some communication between Seth and Wikileaks. And I believe that based on *common sense first of all*…and from information we're getting from various sources.*"[9]  (emphasis added).

### STANDARD ON A MOTION FOR SANCTIONS

   "A pleading, motion or other paper violates Rule 11 . . . where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or

---

[8] Available at https://www.youtube.com/watch?v=qcwTF-ObV_g (last visited August 28, 2017).
[9] Available at https://www.youtube.com/watch?v=yDI0AFOHuNI (last visited August 28, 2017).

reversal of existing law." *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (internal quotations omitted).   Rule 11(b) provides, in relevant part, that an attorney presenting a pleading to a court must "certify that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b); *see Steele v. Polymer Research Corp.*, No. 85-5563, 1987 U.S. Dist. LEXIS 5270, at *4-5 (S.D.N.Y. June 18, 1987) ("Rule 11 . . . imposes upon attorneys an affirmative duty of prefiling inquiry into the facts and the law . . . An attorney's subjective good faith will not suffice to protect a meritless or frivolous claim from Rule 11 censure.") (internal citations omitted).

"Rule 11 sanctions are judged under an objective reasonableness standard and are appropriate when it is patently clear that a pleading had no chance of success." *Gold v. The Last Experience*, 97-1459, 1999 U.S. Dist. LEXIS 3266, at *9 (S.D.N.Y. Mar. 22, 1999) (citations omitted).   "Sanctions shall be imposed against an attorney, his client, or both" when a pleading violates Rule 11.   *Greene v. Donovan*, No. 07-1928, 2007 U.S. Dist. LEXIS 49932, at *5 (S.D.N.Y. July 5, 2007).

## <u>ARGUMENT</u>

### A. **Plaintiff Has Not Alleged Nor Does He have Any Basis for Personal Jurisdiction Over Butowsky**

Plaintiff carries the burden of alleging personal jurisdiction over Butowsky, but alleges no

14

nexus between Butowsky and New York.  Butowsky, a Texas resident, is not alleged to have committed any tortious conduct in the State of New York.[10]  Indeed, Plaintiff does not allege a single fact it his 33-page complaint that would support personal jurisdiction over Butowsky.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  That is because there simply is no basis for bringing Butowsky to this Court to defend these claims.

As detailed in Plaintiff's motion to dismiss, in order for this Court to exercise specific jurisdiction over Butowsky, Plaintiff must establish that Butowsky's suit-related conduct "create[s] a substantial connection with the forum state."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  This "necessary relationship" must arise out of contacts that the "defendant himself" creates with New York.  *Id.* at 1122.  The mere occurrence of plaintiff's alleged injury in New York is not enough.  *Id.*

Plaintiff had the opportunity to correct this obvious deficiency, but took no action to withdraw or amend the complaint. Simply put, the failure to remove Butowsky from the Complaint, upon being notified of this plain deficiency, is sanctionable under Rule 11.

**B. Plaintiff's Baseless Defamation Claims Have No Chance of Success Given the Evidence Plaintiff Withheld from this Court**

Plaintiff's claim of defamation *per se* against Butowsky, an individual alleged to have knowledge of and consented to the purportedly defamatory statements, has no chance of success on the pleadings.  To state a claim for defamation a plaintiff must plead: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff suffered harm."  *Russell v. Railey*, No. 08-2468, 2012 U.S. Dist. LEXIS 49370, at *9 (D. Md. April 9, 2012).

As described in more detail below, Plaintiff's Complaint is devoid of allegations

---

[10] *See* Declaration of Ed Butowsky.  (ECF No. 37.)

satisfying a claim of defamation *per se* and, in fact, omitted material facts that make such a claim impossible at inception.  Because this case can never be proven under the facts, the filing of this Complaint is sanctionable under Rule 11.

### 1.    The Complaint Cannot Meet the Elements of Defamation Per Se

Plaintiff alleges defamation *per se* as to Butowsky based on Malia Zimmerman's alleged fabrication of two quotations attributed to him.

For a statement to be defamatory *per se*, however, the "words themselves [must] impute the defamatory character . . ., no innuendo – no allegation or proof of extrinsic facts—is necessary."  *Id.*  (quoting *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009)).  The "injurious character" of the words must be a "self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved."  *Haskins v. Baylis*, 440 F. Supp. 2d 455, 461-61 (D. Md. 2006) (internal citation omitted).  If defamation is not defamatory *per se*, then the alleged injury must be established "by allegations and proof of special damage."  *Id.*

As detailed in Butowsky's motion to dismiss, the misattribution plainly does not meet the standards for defamation *per se* because quotations themselves are not injurious toward Wheeler on their face.  Indeed, the alleged harm to Wheeler's reputation is based on Wheeler's subsequent *contradiction* of the statements attributed to him, and the "shifting and contradictory accounts" that he provided in their aftermath. (Compl. ¶104.)  That is not among the categories of harm recognized as defamation *per se*.  *Indep. Newspapers, Inc.,* 407 Md. at 441 (holding that to establish defamation *per se*, the alleged defamatory words must "impute the defamatory character per se, no innuendo—no allegation or proof of extrinsic facts—is necessary.").

Plaintiff cannot alternatively allege defamation *per quod*.  In order to prove defamation *per quod*, Plaintiff must establish injury by demonstrating special damages.  *Haskins*, 440 F. Supp. 2d

at 461-62.  Special damages consist of "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Collins v. Travers Fine Jewels Inc.*, No. 16-03780, 2017 U.S. Dist. LEXIS 46866, at *6-7 (S.D.N.Y. Mar. 28, 2017) (internal citation omitted). The damages must be "fully and accurately stated, with sufficient particularity to identify actual losses."  *Id*.  This "particularity requirement is strictly applied," and defamation claims "will be dismissed for failure to allege special damages with the requisite degree of specificity." *Id*.

Here Plaintiff does not attempt to allege special damages, let alone do so with particularity or with reference to specific losses.  Further, Plaintiff's allegations of general injury to reputation are belied by the material details that Plaintiff (1) made almost identical statements the day before the alleged defamatory publication at issue here, (2) continued to express his beliefs in the weeks after Zimmerman's publication, consistent with the substance of his quotes, and (3) confirmed a week after publication that the Fox News story was "essentially correct." [*See* Ex. 18.]  Indeed, even if none of this were true, Wheeler's history of making inflammatory public statements and retracting would make proof of damages to Wheeler's "reputation" impossible in any event.

Because the alleged misattribution in not intrinsically harmful or inherently injurious to reputation, and because special damages cannot be pled under any circumstances, Plaintiff's claim cannot succeed.  Plaintiff's omission of material facts exposing these deficiencies, and his failure to remove Butowsky when put on notice of them, violate Rule 11.

## 2.    Wheeler Consented to the Defamatory Statements Which is a Complete Defense Under Maryland Law

Plaintiff withheld material details that show he consented to the alleged defamatory statement published in the Fox News story by Malia Zimmerman.  Under Maryland law, consent

is an absolute defense to a defamation claim.[11]  *See Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 398 (D. Md. 2014); *see also MCI Communs. Servs. v. Am. Infrastructure-MD, Inc.*, No. 11-3767, 2013 U.S. Dist. LEXIS 113061 at *45 (D. Md. 2013) ("Consent is the willingness in fact for conduct to occur, which can be manifested by action or inaction and need not be communicated to the actor.") (internal quotations and citations omitted).  One who invites publication of allegedly defamatory statement cannot complain of the resulting injury.  *See Ziemkiewicz*, 996 F. Supp. 2d. at 389.

The Complaint alleges that Zimmerman advised Wheeler that she would be publishing the story, but failed to detail the interactions during which she gave him this advanced notice. During those communications, she pleaded with him to "please read it carefully" and "can you read the story now" each time, providing Wheeler the quotes he claims defamed him.  Wheeler then added to one of the quotes, after acknowledging that he was "reading it now."  The Complaint also neglects to describe Wheeler's pre-publication disclosures to Fox 5 DC during which he confirmed that *he* had sources in the FBI that confirmed there were communications between Seth Rich and Wikileaks, and his suspicions about the DNC's involvement in the investigation.  There is no meaningful difference between the allegedly misattributed quotes and Wheeler's prior Fox 5 DC comments.

The only plausible interpretation of Wheeler's pre-publication communications is that he had consented to the quotes provided in Zimmerman's article.  Because he and his counsel were fully aware of these exculpatory communications prior to filing the Complaint, they should be sanctioned for filing a frivolous Complaint.

**3.      Plaintiff Cannot Prove Defamation Given that Wheeler is a Public Figure**

---

[11] New York law also recognizes consent as a complete defense for a defamation claim. *See Mandelblatt v. Perelman*, 683 F. Supp. 379, 383 (S.D.N.Y. 1988)

A "limited purpose public figure" is one who: "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of the litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Biro v. Conde Nast,* 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013). In a suit involving a public figure, the plaintiff must demonstrate that the allegedly defamatory statement was made with "actual malice," meaning "with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 667 (1989). A long-time Fox News contributor, who willingly injected himself into the Seth Rich debate, Wheeler unequivocally meets the definition of a "limited public purpose figure," and, thus, must allege that the allegedly defamatory statements were made with knowledge they were false or with reckless disregard for whether they were true.

As detailed herein, Malia Zimmerman sent Mr. Wheeler copies of the final draft of her article containing the allegedly defamatory quotations *no less than three times*, and implored him to "*Please read carefully.*"  Plaintiff references interactions during which Zimmerman notified Wheeler on May 15 that she would be publishing the article the following day, but fails to share the substance of those communications – mainly, that the emails contained the exact quotes Wheeler claims she misattributed to him.  This material fact alone, omitted from the Complaint, defeats the contention that that the statements at issue were printed with "knowledge" that they were false, or made "with reckless disregard" as to whether they were true.

Zimmerman made painstaking efforts to get Wheeler's approval for the story, and the quotes, which he provided to her.  Plaintiff and his counsel were well aware of these interactions before filing this Complaint.  The withholding of these material facts, which destroy Plaintiff's

claims, is sanctionable.

### 4. Wheeler's Own Public Statements Disprove Material Falsity

Under Maryland law, Wheeler has the burden of proving the falsity of the statements he alleges were defamatory. *Brown v. Ferguson Enters.*, No. 12-1817, 2012 U.S. Dist. LEXIS 174991, at *6 (D. Md. Dec. 11, 2012) (citation omitted). Critically, however, non-substantive inaccuracies in quotations do not constitute defamation. *See AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (holding that [i]f the gist or 'sting' of a statement is substantially true, "minor inaccuracies will not give rise to a defamation claim.") (internal citations omitted)). Wheeler claims generally that the misattribution of two quotations defamed him; however, he does not allege what specifically about the quotes was false. Left to guess, one is strained to find the falsity in the statements given the volume of materially similar public statements made by Wheeler before and after the alleged defamatory attribution.

For example, in his interview with Fox 5 D.C., Wheeler confirmed the connection between Wikileaks and Seth Rich, and his suspicions about the DNC's involvement in the murder investigation. [Ex. 16.] Further, in numerous emails and text messages he sent to Ms. Zimmerman, Wheeler repeatedly confirmed the substance of the quotes in the Fox News story. Wheeler also repeated statements about his belief in a connection between Seth Rich and Wikileaks and his suspicions about the DNC to Sean Hannity, Fetch Your News, and to Crowdsource the Truth Interview.[12] Even in his own statement one week after the publication, Wheeler described Zimmerman's story as "essentially correct." [Ex. 18.]

---

[12] *See* Ex. 18; *See also* Wheeler's May 16, 2017 appearance on Hannity, available at http://video.foxnews.com/v/5437207289001/?#sp=show-clips (last visited September 18, 2017); Wheeler's May 23, 2017 appearance on Fetch Your News, available at https://www.youtube.com/watch?v=qcwTF-ObV_g (last visited September 18, 2017); Wheeler's May 29, 2017 appearance on Crowdsource the Trust, available at https://www.youtube.com/watch?v=yDI0AFOHuNI (last visited September 18, 2017).

According to the Supreme Court, even the "deliberate alteration of the words uttered" would not constitute defamation, unless the alteration resulted in "a material change in the meaning conveyed . . . ." *Masson v. New Yorker Magazine*, 501 U.S. 496, 517-518 (1991); *see also AIDS Counseling & Testing Ctrs.,* 903 F.2d at 1004 ("If the gist or 'sting' of a statement is substantially true, "minor inaccuracies will not give rise to a defamation claim.") (internal citations omitted). Given the striking similarities between Wheeler's pre- and post-publication statements and the alleged defamatory quotes, he simply cannot prove his claim.

### 5.   Butowsky's Tweets Do Not Come Close to Defamation

Plaintiff also alleges that Butowsky defamed him through two Twitter messages posted after the Fox News publication. [Compl. ¶¶ 107, 108.] The twitter posts are, at most, expressions of critical analysis and opinion, and thus, not defamation.  In making these allegations, Plaintiff again withheld material context to the allegedly defamatory tweets – context that shows the tweets clearly do not amount to actionable defamation.  Specifically, Butowsky retweeted another Twitter user, a SiriusXM Patriot channel host, who posted audio of Rod Wheeler discussing his investigation (in June 2016, well after publication of the Fox News article):

> [I]t kind of makes sense in a way because with everybody pushing back on this email thing, in the family, and they're so protective of the email . . . it leads me to think that perhaps there were some communications between Seth Rich and WikiLeaks.

Butowsky posted two Twitter messages in response.  His first message says, "This shows Rod Wheeler has a major battle with the truth.  Everyone needs to hear this.  He says the precise words he swears he didn't say ???"  Butowsky's message provided his opinion and criticism of Rod Wheeler, not a factual statement, and, moreover, pointed listeners to the source of his conclusions, so that "Everyone" could listen for themselves.  His second message stated "Fox News story was pulled b/c Rod Wheeler said [he] didn't say a quote . . . How much did DNC pay

him?"  The first part of the quote is true and admitted by Wheeler in the audio.  The second part

is a sarcastic question, aimed at critiquing Wheeler for retracting his quote and then making

essentially the same statement about the existence of emails between Seth Rich and Wikileaks

one month later.  These types of Twitter opinions are not false statements that are actionable in

defamation.  *See Jacobus v. Trump*, 51 N.Y.S.3d 330, 336 (N.Y. Sup. Ct. 2017) (holding that

"[l]oose, figurative or hyperbolic statements, are not actionable" with respect to allegedly

defamatory statements made on Twitter).

### C.  Plaintiff's Baseless Claims were Filed for an Improper Purpose

Plaintiff and his counsel filed this lawsuit to pressure Fox News into settling not only this

case, but over twenty other cases pending against Fox.  In order to carry out this improper

objective, they pursued a multimedia crusade to maximize press attention on an alleged conspiracy

between the Defendants and the President that is irrelevant to this case.  By withholding material

facts that are fatal to his claim, Plaintiff and his counsel are deceptively using this Court and the

media to intimidate and harass Butowsky and Fox for an improper purpose.  Rule 11, by definition,

protects against these types of vexation practices.  Fed. R. Civ. P. 11(b)(1) (by signing a pleading,

an attorney represents to the Court that "it is not being presented for any improper purpose, such

as to harass or to cause unnecessary delay or needless increase in the cost of litigation.").

Plaintiff's wholly unsupported legal claim, shrouded in inflammatory, irrelevant facts, was

signed and filed by counsel in bad faith to further his media campaign against Fox News.  In

*Hoatson v. N.Y. Archdiocese*, in the face of similar vexatious tactics, the court sanctioned

plaintiff's attorney for filing an amended complaint in bad faith without reasonable inquiry.  No.

05-10467, 2007 U.S. Dist. LEXIS 9406, at *32 (S.D.N.Y. 2007).  Plaintiff brought a RICO claim

against the Catholic Archdiocese of New York in relation to his termination as director of a

Catholic school, but the amended complaint laboriously detailed several accounts of sexual abuse by the Church, and included certain other personal facts about the defendants that were "wholly irrelevant, inflammatory, and embarrassing," and had "no bearing on the actions brought." *Id.* at *49. The needlessly inflammatory complaint coupled with a media campaign contemporaneous with the filing, "support[ed] the inference that [counsel's] intention was to injure" the defendant in violation of Rule 11. *Id.*

Similarly, in *Galonsky v. Williams*, the Court sanctioned the plaintiff's counsel for filing a complaint filled with baseless and irrelevant allegations, as part of a public relations campaign. No. 96-6207, 1997 U.S. Dist. LEXIS 19570, at *18 (S.D.N.Y. 1997). Among his sanctionable conduct, counsel threatened his adversary that he would assert personally embarrassing claims against his client if a prelitigation, monetary resolution was not reached. *Id.* at *8. Failing to obtain a settlement, counsel then made good on those threats by distributing copies of a proposed amended complaint to the press before it was filed. *Id.* at *7-8. The court held, "[w]hile the Court certainly cannot ordinarily punish a lawyer for talking to the press, it is appropriate to consider the press conference held by counsel in assessing the issue of his good faith in filing frivolous claims and motions." *Id.* at *18.

Here, prior to filing the Complaint, Wheeler and Wigdor pursued a global settlement with Fox based on threats of a media campaign involving irrelevant allegations of a conspiracy between Fox, its co-defendants, and the President. True to their threats, after failing to elicit a pre-filing settlement, Wheeler and Wigdor initiated an aggressive media campaign that has repeatedly focused on the alleged conspiracy between Defendants and the President that has nothing to do with Wheeler's defamation claim.

As several courts have held, this type of conduct, transparently intended to intimidate,

embarrass, and harass a party in order to create pressure for settlement, is well outside the bounds of appropriate conduct by an attorney.  *See e.g. Charles v. Levitt,* No. 15-9334, 2016 U.S. Dist. LEXIS 95725, at *21 (S.D.N.Y. 2016) (counsel sanctioned for a complaint "shot-through with plainly irrelevant, absurd, and/or scurrilous statements" as he "could not reasonably have believed that these 'allegations' were material—not even as background or commentary"); *Amityville Mobile Home Civic Ass'n v. Town of Babylon,* No. 14-2369, 2015 U.S. Dist. LEXIS 39016, at *15-17 (E.D.N.Y. 2015) (counsel sanctioned for "…conduct [that] has infected the entire complaint…based upon demonstrably false allegations and omitted material facts"); *see also In re Zion,* 727 F. Supp. 2d 388, 412 (W.D. Pa. 2010) ("[T]he court recognizes that the omission of 'facts that [a]re highly relevant to an accurate characterization of the facts' stated may be a basis for the imposition of Rule 11 sanctions." (quoting *In re Ronco, Inc.,* 838 F.2d 212, 218 (7th Cir. 1988))).  Wigdor's sensational media campaign, coupled with the volumes of exculpatory emails and texts withheld from Wheeler's complaint is strong evidence of an improper purpose to pressure Fox into a substantial lump sum settlement. *See e.g. Levine v. FDIC*, 2 F.3d 476, 479 (2d. Cir. 1993) (sanctions affirmed where counsel ignored contradictory facts, pursuing the filing in question even after his errors were revealed to him.). Wigdor's campaign to use Wheeler's allegations and the resulting media attention to cause issues for the Fox/Sky merger further demonstrates this point. [*See* Exs. 19, 20.]

　　The Complaint's improper presentation of numerous pages of irrelevant and inflammatory allegations that have no connection to Plaintiff's claim of defamation *per se* is further evidence of improper purpose.  One of the most obvious examples is the bizarre inclusion of allegations related to the proposed merger that purports to explain "precisely why British regulators have yet to provide a green light to Fox for the Sky takeover bid." [*See* Compl. ¶ 101.]  There can be no rational purpose for these allegations in this Complaint, other than to embarrass and harass Fox

News.  Similarly, Plaintiff peculiarly asserts allegations about a purported extortion attempt by Butowsky, which appear to be designed to expose and embarrass Butowsky, not to support a defamation claim. [Compl. ¶ 103.]  And, of course, the Complaint alleges an elaborate Presidential conspiracy, as its primary focus, despite Wheeler conceding he has no idea whether it is true, and Wigdor admitting that he does not need these allegations to prove Wheeler's defamation claim.[13] *See Hall v. Tressic*, 381 F. Supp. 2d 101, 108 (N.D.N.Y 2005) (awarding sanctions where "[t]he extensive and colorful portrayal of the social and political backdrop to defendants' alleged conduct is essentially irrelevant to the facts of this case").  As the *Charles* court put it, "irrelevant mudslinging serves merely to inflame, not to enlighten," and should be sanctioned by this Court. 2016 U.S. Dist. LEXIS 95725 at *23.

Wigdor's pernicious use of the media to pressure Fox into a global settlement is thus sanctionable, particularly as to Butowsky, an individual defendant from Texas, improperly pulled into New York only to be grouped with Wigdor's other, disparately related Fox lawsuits.

## CONCLUSION

In sum, Counsel's conduct leading up to the filing of this frivolous lawsuit and since is plainly sanctionable under long standing precedent in this District.  He signed a pleading that was intended to settle other lawsuits, and used irrelevant facts to further that agenda.  As described above, this lawsuit has absolutely no chance of success, and the Complaint omitted material facts to hide the case's futility.  Based on the foregoing, Plaintiff respectfully requests that the Court order sanctions under Rule 11 against Plaintiff and his counsel.

---

[13] *See* May 16, 2017 MSNBC appearance on The Beat with Ari Melber, where Wheeler says "I don't know for a fact [ ] if President Trump even knew about all of these things going on," available at www.msnbc.com/the-beat-with-ari-melber/watch/detective-says-fox-news-lured-him-into-plot-to-help-trump-white-house-1015014467654 (last visited August 8, 2017).

Respectfully submitted,

Dated: September 19, 2017                **SPIRO HARRISION**

s/ David B. Harrison
David B. Harrison
Jason C. Spiro
Carolyn Rendell
830 Morris Turnpike, 2nd Floor
Short Hills, NJ 07078
(973) 232-4109