**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROD WHEELER, <br><br> Plaintiff, <br><br> v. <br><br> TWENTY-FIRST CENTURY FOX, INC., FOX NEWS NETWORK, LLC, MALIA ZIMMERMAN, AND ED BUTOWSKY, <br><br> Defendants. | Civil Action No. 1:17-cv-05807 (GBD) |

## MEMORANDUM IN SUPPORT OF THE MOTION OF TWENTY-FIRST CENTURY FOX, INC., FOX NEWS NETWORK, LLC, AND MALIA ZIMMERMAN TO DISMISS FOR FAILURE TO STATE A CLAIM

HUGHES HUBBARD & REED LLP
David H. Stern (*pro hac vice*)
Daniel H. Weiner
Carolin Sahimi (*pro hac vice*)
350 South Grand Avenue
Los Angeles, CA 90071
(213) 613-2800

One Battery Park Plaza
New York, NY  10004

*Attorneys for Malia Zimmerman*

WILLIAMS & CONNOLLY LLP
Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

1330 Avenue of the Americas
Suite 23A
New York, NY 10019

*Attorneys for Twenty-First Century Fox, Inc., and Fox News Network, LLC*

December 1, 2017

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 6

I.    THE ALLEGED MISQUOTATIONS ARE NOT ACTIONABLE AS DEFAMATION. .... 9

  A.    The Quotations Are Not Defamatory on their Face (*Per Se*)............................ 9

    1.    The Quotations Did Not Impute Conduct Incompatible with the Standards of Wheeler's Profession. ................................................................................ 10

    2.    The Single-Instance Rule Precludes Wheeler's Claim for Defamation *Per Se*. ........... 13

  B.    No Extrinsic Facts Are Alleged To Give the Quotations a Defamatory Meaning (*Per Quod)*. ............................................................................................... 14

  C.    Wheeler's Defamation Claims Fail Because He Has Not Pled Special Damages........... 15

    1.    Alleged Lost Opportunity to Appear on Fox News. ................................... 16

    2.    Alleged Loss of Other Clients. ............................................................... 17

    3.    Alleged Non-Economic Damages. .......................................................... 17

II.    THE CHALLENGED QUOTATIONS WERE SUBSTANTIALLY TRUE. ...................... 18

III.    WHEELER CANNOT STATE A CLAIM BECAUSE HE CONSENTED TO THE STATEMENTS. ............................................................................................................ 21

IV.    ZIMMERMAN'S EMAIL TO RICH'S FATHER IS NOT ACTIONABLE. .................. 24

V.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST TWENTY-FIRST CENTURY FOX, INC. ................................................................................................. 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

### CASES

*Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 649 N.E.2d 825 (1995) ...........................12

*Aronson v. Wiersma*, 65 N.Y.2d 592, 483 N.E.2d 1138 (1985) .........................................10, 12, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................................7, 23, 25

*Ava v. NYP Holdings, Inc.,* 885 N.Y.S.2d 247 (App. Div. 2009) .............................................7, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................7

*Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637 (2d Cir. 2015) .....................................17

*Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013) ..........................................................7

*Bordoni v. N.Y. Times Co.*, 400 F. Supp. 1223 (S.D.N.Y. 1975) .......................................8, 13, 14

*Bowes v. Magna Concepts, Inc.*, 561 N.Y.S.2d 16 (App. Div. 1990) ......................................7, 10

*Cain v. Atelier Esthetique*, 182 F. Supp. 3d 54 (S.D.N.Y. 2016) .................................................16

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) ...............................12, 14, 18

*Chau v. Lewis*, 771 F.3d 118 (2d Cir. 2014) .................................................................................9

*Christopher Lisa Matthew Policano, Inc. v. N. Am. Precis Syndicate, Inc.*,
   514 N.Y.S.2d 239 (App. Div. 1987) ....................................................................................8, 15

*Croton Watch Co. v. Nat'l Jeweler Mag.*, No. 06-cv-662, 2006
   WL 2254818 (S.D.N.Y. Aug. 7, 2006) ....................................................................................14

*DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634 (S.D.N.Y. 2011) ...............................8, 14

*Drug Research Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 166 N.E.2d 319 (1960) ....................17

*Finn v. Smith Barney*, 471 F. App'x 30 (2d Cir. 2012) ..................................................................3

*Foster v. Churchill*, 87 N.Y.2d 744, 665 N.E.2d 153 (1996) ...............................................9, 13, 14

*Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87 (N.Y. App. Div. 2015) ........................... *passim*

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013) .....................................................................................16

Page

Cases—continued:

*Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*,
  742 F.3d 42 (2d Cir. 2014)...............................................................................3

*Kavanagh v. Zwilling*, 997 F. Supp. 2d 241 (S.D.N.Y. 2014) ...........................8

*Ladany v. William Morrow & Co.*, 465 F. Supp. 870 (S.D.N.Y. 1978) ..........9

*Lang Sang v. Ming Hai*, 951 F. Supp. 2d 504 (S.D.N.Y. 2013) .....................17

*Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997)...............................................12

*Levy v. Southbrook Int'l Investments, Ltd.*, 263 F.3d 10 (2d Cir. 2001)......2, 3

*Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344 (1992) ......................10

*Lish v. Harper's Mag. Found.*, 807 F. Supp. 1090 (S.D.N.Y. 1993) ..............21

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) .....................9, 18, 20

*November v. Time, Inc.*, 13 N.Y.2d 175, 194 N.E.2d 126 (1963) ...............8, 13

*Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp. 438 (S.D.N.Y. 1997)..............15, 17

*Palin v. N.Y. Times Co.*, No. 17-cv-4853, — F. Supp. 3d —, 2017 WL 3712177
  (S.D.N.Y. Aug. 29, 2017) ...........................................................................7

*Perry v. CBS, Inc.*, 499 F.2d 797 (7th Cir. 1974) ..........................................21

*Puranmalka v. Puranmalka*, 539 N.Y.S.2d 802 (App. Div. 1989)..................22

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
  813 F. Supp. 2d 489 (S.D.N.Y. 2011).....................................................10, 13

*Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717 (7th Cir. 2004) ...............24

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191 (2d Cir. 2015)..........21

*Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406 (2d. Cir. 2008) ......3

*Susko v. Cox Enters., Inc.*, No. 07-cv-144, 2008 WL 4279673
  (N.D. W. Va. Sept. 16, 2008) .....................................................................25

*Teichner v. Bellan*, 181 N.Y.S.2d 842 (App. Div. 1959)................................21

*Thompson v. Bosswick*, 855 F. Supp. 2d 67 (S.D.N.Y. 2012) ...................7, 16

*United States v. Bestfoods*, 524 U.S. 51 (1998) .............................................24

**Page**

**Cases—continued**:

*Van Buskirk v. CNN, Inc.*, 284 F.3d 977 (9th Cir. 2002)............................................................20

*Williby v. Hearst Corp.*, No. 15-cv-02538, 2017 WL 1210036
    (N.D. Cal. Mar. 31, 2017)............................................................24

## STATUTES AND RULES

42 U.S.C. § 1981............................................................6

Fed. R. Civ. P. 9............................................................15

Fed. R. Evid. 201............................................................3

Restatement (Second) of Torts § 563............................................................12

Restatement (Second) of Torts § 583............................................................22

Restatement (Second) of Torts § 614............................................................12

Restatement (Second) of Torts § 892............................................................22

## MISCELLANEOUS

David A. Anderson, *Reputation, Compensation and Proof*, 25 Wm. & Mary L.
    Rev. 747 (1984) ............................................................15

**INTRODUCTION**

Rod Wheeler, a Fox News contributor, has filed an Amended Complaint for defamation against Fox News Network, LLC, Twenty-First Century Fox, Inc., and Fox News reporter Malia Zimmerman ("Fox Defendants").  Wheeler alleges that he was defamed by being misquoted in a Fox News online report.  In truth, Wheeler was neither misquoted nor defamed.  As he admits, he made substantially the same statements *on the air* both before and after the Fox News report. He even stated publicly that the article he now challenges as false "*was essentially correct and worthy of further investigation.*"  Ex. 8 (emphasis added).  He further admits that before publication he was provided with drafts of the article containing the quotations at issue, and that he responded by providing "additional quotes," Am. Compl. ¶ 120, without ever questioning the quotes he now challenges in this case.

Wheeler cannot state a claim for defamation based upon these quotes because they are neither false nor defamatory:  they do not attribute to him views or observations that are different from those he expressed elsewhere, much less views or observations that would expose a person to public contempt or ridicule for having expressed them.  And even if one were to assume that these quotes were somehow false or defamatory, Wheeler at the very least provided apparent consent to their publication when, after receiving the drafts containing them, he failed to object to them and even sent additional quotations for inclusion in the article.  For these and other reasons set forth below, the Amended Complaint should be dismissed.

**BACKGROUND**

On May 16, 2017, Fox News published an article on its web site ("Article") that identified Seth Rich—a Democratic National Committee staffer shot and killed near his home in Washington, D.C.—as the source of thousands of internal DNC emails leaked during the 2016 presidential primaries.  Am. Compl. Ex. 1.  The Article extensively quoted and referenced an

1

unnamed federal investigator who provided details about the nature and extent of Rich's communications with WikiLeaks based upon the results of an FBI computer forensic search and his personal knowledge. The Article also contained numerous statements attributed to plaintiff Rod Wheeler, a Fox News contributor and former Washington, D.C., homicide detective investigating the death on behalf of the Rich family. Most of those statements are not contested here. *See* page 5, *infra*. Wheeler alleges, however, that Fox News defamed him by fabricating two direct quotations attributed to him. Am. Compl. ¶¶ 129-130.

Fox News reporter Malia Zimmerman was in regular contact with Wheeler about the status of his investigation for weeks before the Article was published. Am. Compl. ¶¶ 54-55, 105. As early as May 11, 2017—five days before publication—Zimmerman sent Wheeler a copy of the Article for his review. *Id.* ¶ 113. Wheeler asserts that the May 11 draft did not contain the quotes he now challenges as false, *id.*, but he acknowledges that on May 15, Zimmerman emailed him several updated drafts, *id.* ¶¶ 119-120. Those drafts *did* contain the very quotes at issue in this litigation. Exs. 2-4.[1] Wheeler claims that he told Zimmerman he was traveling that day and could not review the drafts, Am. Compl. ¶ 120, but he acknowledges that he nevertheless proceeded to provide "additional quotes" for the story, *id.*, and his own allegations contradict his claim that he was traveling on May 15. According to the Amended Complaint, Wheeler was in Washington, D.C., that evening, when he gave an on-camera interview to a reporter from the local D.C. Fox affiliate ("Fox 5") about his investigation into the Rich murder. *Id.* ¶ 122. The Fox 5 interview occurred *after* Wheeler had received drafts of the

---

[1] Because these drafts were "referred to in the complaint," they may be considered on a motion to dismiss. *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001).

Article from Zimmerman.  *See* Exs. 2-4.[2]  His remarks were televised as follows and also

published in an online report.[3]

> **Fox 5**:  The Rich family hired Rod Wheeler, a former [M]PD homicide detective, to run a parallel investigation into their son's death.  Wheeler says he believes there is a cover-up and the police department has been told to back down from the investigation.
>
> **Wheeler**:  The police department nor the FBI have been forthcoming; they haven't been cooperating at all.  I believe that the answer to solving his death lies on that computer, which I believe is either at the police department or either at the FBI.  I've been told both.
>
> **Fox 5**:  But you have sources at the FBI saying that there is information that could link—
>
> **Wheeler**:  For sure.
>
> **Fox 5**: —Seth Rich to WikiLeaks?
>
> **Wheeler**:  Absolutely.  Yeah, and that's confirmed.  Actually, I have a source inside the police department that has looked at me straight in the eye and said, "Rod, we were told to stand down on this case and I can't share any information with you."  Now, that's highly unusual for a murder investigation, especially from a police department.  Again, I don't think it comes from the Chief's office, but I do believe there is a correlation between the Mayor's office

---

[2] The time stamps on these exhibits reflect Greenwich Mean Time, which is five hours ahead of Eastern Standard Time.

[3] Wheeler's public statements on Fox 5 and the Sean Hannity Show, *see* page 5, *infra*, are properly considered on a motion to dismiss.  In ruling on such a motion, the court may consider not only the complaint itself, but also documents or statements "referred to in the complaint." *Levy*, 263 F.3d at 13 n.3.  The Amended Complaint refers specifically to the interviews that Wheeler gave to Fox 5 and Sean Hannity.  Am. Compl. ¶¶ 122, 142.  Separately, the court may consider these statements because they are a proper subject of judicial notice.  *See Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014).  The court may take judicial notice of matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  These statements were broadcast on television and remain publicly available online.  *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d. Cir. 2008) (courts may take judicial notice of the fact that certain statements were published in the press); *Finn v. Smith Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (finding no abuse of discretion where district court took judicial notice of media reports and other publicly available materials in ruling on motion to dismiss).

and the DNC, and that's the information that's going to come out
tomorrow.

Ex. 5 (transcript); www.fox5dc.com/news/local-news/private-investigator-there-is-evidence-

seth-rich-contacted-wikileaks-prior-to-death (video); Ex. 6 (online report).

Fox News published the Article at issue the next morning, on May 16. Am. Compl.

¶ 126. The principal source was an unnamed federal investigator who claimed to have reviewed

the FBI forensic report detailing the contents of Rich's computer. Am. Compl. Ex. 1. This

federal investigator told Fox News: "I have seen and read the emails between Seth Rich and

WikiLeaks." *Id.* The federal investigator also provided details of the FBI computer analysis to

substantiate his claim: he said Rich made contact with WikiLeaks through Gavin MacFadyen,

one of its directors, and that the cache of leaked material included more than 44,000 emails and

17,760 attachments. *Id.* Fox News reported that these "revelation[s]" were "consistent" with the

preliminary findings that Wheeler had made in his own investigation for the Rich family. *Id.*

Wheeler does not challenge that characterization here.

Wheeler objects to two direct quotes in the Article.

*First*, he claims that Fox News "falsely quoted" him by attributing to him the following

statement: "My investigation up to this point shows there was some degree of email exchange

between Seth Rich and WikiLeaks." Am. Compl. ¶¶ 129, 184, 208, 232. That statement is only

the first half of the direct quote that appeared in the Article. Wheeler does not contest the second

half, in which he said: "I do believe that the answers to who murdered Seth Rich sits [sic] on his

computer on a shelf at the DC police or FBI headquarters." Am. Compl. Ex. 1.

*Second*, Wheeler alleges that Fox News again "falsely quoted" him as follows:

> My investigation shows someone within the D.C. government,
> Democratic National Committee or Clinton team is blocking the
> murder investigation from going forward. That is unfortunate. Seth
> Rich's murder is unsolved as a result of that.

4

Am. Compl. ¶¶ 130, 184, 208, 232.

Wheeler does not challenge the accuracy of numerous other statements attributed to him in the May 16 Article, including other quotes consistent with those he challenges. Thus, although Wheeler asserts that Fox fabricated the quote that certain political figures are "blocking the murder investigation from going forward," he does not challenge the Article's claim that "Wheeler believes powerful forces are preventing the case from a thorough investigation." *See* Am. Compl. Ex. 1. Wheeler also does not deny that Fox accurately captured his views when it wrote: "Police should consider all angles, Wheeler said, especially in light of [Julian] Assange's statements" publicly suggesting a connection between Rich and WikiLeaks. *See id.*

After the Fox News Article was published, Wheeler again made statements similar to those he now challenges. During his "planned appearance on the Sean Hannity Show," a Fox News program, on May 16, Am. Compl. ¶ 142, Wheeler announced:

> There was a federal investigator that was involved on the inside of the case, a person that's very credible. . . . I can't say the person's name because that person would be thrown under the bus and I can't do that. But this person, we checked him out, we have to check him out, very credible. . . . When you look at that with the totality of everything else that I've found in this case, it's very consistent for a person with my experience to begin to think, "Well, perhaps there were some email communications between Seth and WikiLeaks."
>
> . . . Here's one other thing that's going to be startling. . . . I reached out to the police department way back in March. . . . Guess what I learned yesterday from the family of Seth Rich, the police department did not call me back because someone, a high-ranking official at the DNC . . . called the Rich family wanting to know why I was snooping around. . . . [T]he person that called the father after I called the police to get information, that's the person that Seth was having problems with at the DNC. So, you know, connect the dots here, it's starting to all come together.

Ex. 7 (transcript), at 4-8; https://www.youtube.com/watch?v=CuRJDKEVxHY (video).  Several days later, on May 22, Wheeler issued a public statement affirming the substance of the Fox News Article:  "I am of the personal opinion that the information/article reported by FoxNews Channel last Tuesday was essentially correct and worthy of further investigation."  Ex. 8; *see also* note 3, *supra*.

On May 23, 2017, Fox News retracted the Article, explaining:  "[T]he May 16 story was not initially subjected to the high degree of editorial scrutiny we require for all our reporting.  Upon appropriate review, the article was found not to meet those standards and has since been removed."  Am. Compl. ¶ 150.  The retraction made no reference to Wheeler or to the information he provided for the report.

Wheeler filed a complaint on August 1, 2017, asserting claims for defamation *per se* and for racial discrimination in violation of 42 U.S.C. § 1981.  The Fox Defendants filed a motion to compel arbitration or in the alternative to dismiss the complaint.  The motion to compel arbitration has been fully briefed.  In response to the Fox Defendants' motion to dismiss, Wheeler filed an Amended Complaint on October 23, 2017.  The Amended Complaint altered the claims in two respects.  *First*, it eliminated the employment discrimination claim.  *Second*, it broke the defamation claim into three identically worded counts titled Defamation *per se* (First Cause of Action); Defamation (Second Cause of Action in the Alternative); and Libel *Per Quod* (Third Cause of Action in the Alternative).

## ARGUMENT

Wheeler's defamation claims should be dismissed because he has failed to plead the required elements and because his apparent consent to the challenged quotes establishes a complete defense to his claims.

6

In New York, the elements of a defamation claim are:  (1) publication to a third party; (2) of a false statement of fact; (3) with the applicable level of fault; (4) that was either defamatory *per se* or caused the plaintiff special harm; (5) and was not protected by a privilege.  *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012).[4]  The plaintiff must plead facts sufficient to establish every element of the claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the facts alleged, taken as true, would not "state a claim to relief that is plausible on its face," the action must be dismissed.  *Iqbal*, 556 U.S. at 678.  Early culling of meritless claims is especially warranted in defamation cases because the mere pendency of these claims imposes a cost on the exercise of free speech rights.  *See, e.g.*, *Palin v. N.Y. Times Co.*, No. 17-cv-4853, — F. Supp. 3d —, 2017 WL 3712177, at *4 (S.D.N.Y. Aug. 29, 2017); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

New York has recognized two categories of defamation:  defamation *per se* and defamation *per quod*.  As a general matter, a written publication is libelous *per se*—that is, actionable without proof of special damages—if it is defamatory on its face without reference to extrinsic facts.  *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 92 (N.Y. App. Div. 2015); *Ava v. NYP Holdings, Inc.*, 885 N.Y.S.2d 247, 251 (App. Div. 2009).  Statements that disparage a plaintiff in his professional capacity may be libelous *per se*, *see Bowes v. Magna Concepts, Inc.*, 561 N.Y.S.2d 16, 18 (App. Div. 1990), but with an important qualification:  under New York's "single-instance rule," "language charging a professional man with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be

---

[4]  Wheeler and the Fox Defendants agree that New York law governs this action.  *See* Pl.'s Mem. in Opp. to Def. Butowsky's Mot. R. 11 Sanctions, Dkt. No. 57, at 16 ("New York law clearly applies in this case.").

considered defamatory on its face and so is not actionable unless special damages are pleaded."
*Bordoni v. N.Y. Times Co.*, 400 F. Supp. 1223, 1229 (S.D.N.Y. 1975); *November v. Time, Inc.*,
13 N.Y.2d 175, 178, 194 N.E.2d 126, 128 (1963).

A written publication is libelous *per quod* if not defamatory on its face but only by
reference to extrinsic facts.  To state a claim for libel *per quod*, special damages must be alleged.
*Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 249, 255 (S.D.N.Y. 2014); *Franklin*, 135 A.D.3d at
92-93; *Ava*, 885 N.Y.S.2d at 251 n.3.  In other words, special damages must be alleged where the
publication charges professional ignorance or mistake on a single occasion, or if its defamatory
character is evident only by reference to extrinsic facts.  *See DiFolco v. MSNBC Cable L.L.C.*,
831 F. Supp. 2d 634, 648-49 (S.D.N.Y. 2011); *Christopher Lisa Matthew Policano, Inc. v. N.
Am. Precis Syndicate, Inc.*, 514 N.Y.S.2d 239, 242 (App. Div. 1987).

The Amended Complaint fails to state a claim for libel in either of its forms for three
reasons.  *First*, there is nothing remotely defamatory—much less defamatory on its face (*per se*)
—about attributing the contested quotes to Wheeler, and he has failed to allege special damages.
Far from presenting Wheeler as incompetent or unprofessional, the quotes attributed to him were
consistent with the statements attributed to Fox's federal law enforcement source and showed
that Wheeler had factual support for his conclusions.  And even if the quotes somehow could be
read to disparage his professional judgment on this one occasion, the single-instance rule
requires that he plead and prove special damages, which he has failed to do.

*Second*, Wheeler cannot plausibly allege that it was false to attribute to him the views
expressed in these quoted statements, because he has concededly made numerous public
statements to the same effect on other occasions.  Regardless of whether Fox News printed his

exact words, it unquestionably captured "the substance, the gist, the sting" of the views he publicly expressed at the time.  *See Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

*Third*, Wheeler gave his apparent consent to these quotations by failing to object to them and, in fact, providing additional quotations to be added to a draft containing them.  Consent is a complete defense to a libel claim.

## I.   THE ALLEGED MISQUOTATIONS ARE NOT ACTIONABLE AS DEFAMATION.

Wheeler cannot state a claim for libel because—even assuming for purposes of the motion that he was misquoted—the quotations are not defamatory.  They are not defamatory on their face (*per se*), and there are no extrinsic facts alleged that would make them defamatory (*per quod*).  "Words are not actionable solely because false; they must also defame."  *Ladany v. William Morrow & Co.*, 465 F. Supp. 870, 875 (S.D.N.Y. 1978).  A statement is defamatory if it "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society."  *Foster v. Churchill*, 87 N.Y.2d 744, 751, 665 N.E.2d 153, 157 (1996).  Whether particular words are defamatory must be measured "not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject."  *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014).  It is for the Court to determine as a matter of law whether a statement is defamatory, whether it is defamatory *per se*, or whether it is not defamatory.  *See Franklin*, 135 A.D.3d at 92.

### A.   The Quotations Are Not Defamatory on their Face (*Per Se*).

Wheeler alleges that the purportedly fabricated quotations "constitute defamation *per se* because [they] injured [him] in his trade, business or profession."  Am. Compl. ¶ 196.  This claim fails for two reasons.  *First*, the quotations did not "impute conduct that is of a kind

incompatible with the proper conduct of the business, trade, profession or office itself." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011). *Second*, they are covered by New York's "single-instance rule," which provides that statements impugning the plaintiff's professional judgment on only a single occasion are not defamatory *per se* and special damages must be shown.

### 1. The Quotations Did Not Impute Conduct Incompatible with the Standards of Wheeler's Profession.

While statements that disparage a plaintiff in his professional capacity may be defamatory *per se*, *see Bowes*, 561 N.Y.S.2d at 18, not every statement that harms his business prospects is actionable without proof of special damages. "The allegedly defamatory statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself." *Pure Power Boot Camp*, 813 F. Supp. 2d at 550; *accord Liberman v. Gelstein*, 80 N.Y.2d 429, 436, 605 N.E.2d 344, 348 (1992); *Aronson v. Wiersma*, 65 N.Y.2d 592, 593, 483 N.E.2d 1138, 1140 (1985). Nowhere in his 254-paragraph complaint does Wheeler attempt to explain how the Fox Article in any way suggests that he engaged in conduct "incompatible with" the "specific standards of performance" in his profession. To the contrary, Wheeler was presented as having reached conclusions consistent with those of a federal investigator with knowledge of the investigation into the Rich murder.

When Fox quoted Wheeler saying "[m]y investigation . . . shows there was some degree of email exchange between Seth Rich and WikiLeaks," it had already reported in that Article that a federal investigative source claimed to have "seen and read" this email traffic firsthand. Am. Compl. Ex. 1. What is more, the Article provided a richly detailed account of the leak: it explained that the leak included 44,053 emails and 17,761 attachments funneled through Gavin

MacFadyen, a WikiLeaks director and former investigative journalist. *Id.* Far from imputing unprofessional conduct to Wheeler, the Article enhanced his professional standing by showing his own investigation to be in sync with the FBI's. That Wheeler reached the same conclusion through his investigation does not on its face portray him as "lying and incompetent" or lacking in "objectivity and integrity," as the Amended Complaint alleges. Am. Compl. ¶¶ 197, 221, 245.

There is likewise nothing defamatory on the face of the second quote Wheeler claims was falsely attributed to him. When Fox quoted Wheeler saying "[m]y investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward," it provided readers with the following context: The D.C. police department's investigation into the Rich murder had all but stalled, with "no suspects and no substantial leads." Am. Compl. Ex. 1. Wheeler himself believed that the department's "botched robbery theory . . . isn't panning out." *Id.* Although, according to Wheeler, police customarily release security camera footage, in this case the department had "refused" to make available a security video showing the crosswalk where Rich was shot. *Id.* Also according to Wheeler, police had refused to say whether Rich provided any information about the shooters before he died—or even to keep the family informed about the investigation. *Id.* As part and parcel of a story that documented the lack of progress and transparency in a high-profile case, Wheeler's quotation suggesting interference by powerful interests did not on its face impute unprofessional conduct to him or show him to be lying, incompetent, or lacking in objectivity and integrity, as the Amended Complaint alleges. *See* Am. Compl. ¶¶ 197, 221, 245.

In an apparent attempt to respond to Fox's original motion to dismiss, Wheeler added an allegation that the allegedly fabricated quotations were defamatory because they "falsely suggested" that he "believed he had 'cracked the case' and uncovered evidence that numerous

organizations, including the FBI, were unable to find, to prove that it was Seth Rich who had leaked the thousands of emails to WikiLeaks." Am. Compl. ¶¶ 195, 219, 243. This additional allegation fails to save his case for three reasons.

*First*, there is nothing defamatory about a suggestion that Wheeler had uncovered evidence the FBI was unable to find—or that he believed he had done so. *Second,* the Fox Article did not *on its face* say any such thing. *Third,* the alleged misquotations cannot reasonably be understood to convey that meaning. Although the court must accept plaintiff's *factual* allegations as true for purposes of this motion, it need not credit his "strained or artificial construction" of the Article at issue. *Aronson*, 65 N.Y.2d at 594, 483 N.E.2d at 1139; Restatement (Second) of Torts § 563 cmt. f. It is for the court to decide as a matter of law "whether the statement alleged to have caused plaintiff injury is reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997); *see also Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380, 649 N.E.2d 825, 829 (1995); Restatement (Second) of Torts § 614(1). In making this assessment, the court must consider the challenged words not in isolation, but in the context of the article as a whole. *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000).

Here, the quotations cannot reasonably be understood to mean that Wheeler believed that he had "uncovered evidence . . . the FBI [was] unable to find." Am. Compl. ¶ 196. The Article says exactly the opposite: its principal source was *a federal investigator* who claimed to have seen evidence in the *possession of the FBI* that Rich passed documents to WikiLeaks. Wheeler was presented as a mere corroborating source whose own investigation was "consistent" with the "revelation[s]" of the federal agent. Am. Compl. Ex. 1. Wheeler cannot survive a motion to dismiss by offering an unreasonable construction that the Article will not bear.

12

In sum, the alleged misquotations fail to meet the standard for defamation *per se*, because they do not on their face "impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself." *Pure Power Boot Camp*, 813 F. Supp. 2d at 550. Nor do they "tend[ ] to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster*, 87 N.Y.2d at 751, 665 N.E.2d at 157. There is nothing about these alleged misquotations that is defamatory on their face.[5]

### 2.    The Single-Instance Rule Precludes Wheeler's Claim for Defamation *Per Se*.

The quotations are not defamatory *per se* for the additional reason that they fall within New York's "single-instance rule." That rule holds that "language charging a professional man with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded." *Bordoni*, 400 F. Supp. at 1229; *November*, 13 N.Y.2d at 178, 194 N.E.2d at 128. The rationale of the single-instance rule is that everyone has missteps from time to time; "therefore, to state that even a businessman or professional person has erred in a particular instance would not presumptively cause damage to that person in his business or

---

[5]  As evidence of his alleged injury to reputation, Wheeler points to subsequent, unflattering news commentary about his involvement in Rich's murder investigation. *See* Am. Compl. ¶ 166. But subsequent commentary cannot render a publication defamatory *on its face.* And those news articles are completely irrelevant because they did not criticize Wheeler for the quotations that he now claims are false. The *New York Times* article, which referred to Wheeler's "shifting and contradictory accounts" and quoted Rich's brother saying that Wheeler had "discredited himself as an objective investigator," referred only to the interviews Wheeler gave to Fox 5 and Sean Hannity, neither of which he challenges here. Ex. 9. The same is true of the NBC News article that called Wheeler a "blabbing detective": the description was based solely on his interview with Fox 5, when NBC noted "quickly went viral." Ex. 10. Similarly, when *GQ* magazine called Wheeler "a verifiable dipshit," it was commenting *not* on his claims about Seth Rich, but on his "previous . . . warning . . . about the gangs of pink gun-toting lesbians raping young girls all over America." Ex. 11.

profession, because such statement would imply no more than that the person was human."

*Celle*, 209 F.3d at 180.  Accordingly, even though "a statement detailing a lone instance of improper conduct may have *some* adverse effect on one's business or reputation," it is not actionable absent allegations of special damages.  *Croton Watch Co. v. Nat'l Jeweler Mag.*, No. 06-cv-662, 2006 WL 2254818, at *8 (S.D.N.Y. Aug. 7, 2006) (Daniels, J.) (emphasis added).

The single-instance rule plainly covers Wheeler's claims.  Even assuming (unreasonably) that the quotations reflect poorly on Wheeler's professional judgment in some way, at most they reflect upon his judgment in a single instance with regard to a single investigation.  *See DiFolco*, 831 F. Supp. 2d at 649 (holding that statements concerning plaintiff's professional conduct were "not actionable under New York law absent allegations of special damages" because they "refer only to one event").  Because nothing in the Fox Article ascribes to Wheeler a "general ignorance or lack of skill," it "cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded."  *See Bordoni*, 400 F. Supp. at 1229.

### B.   No Extrinsic Facts Are Alleged To Give the Quotations a Defamatory Meaning (*Per Quod*).

In some cases, the defamatory meaning of a publication can be understood by reference to extrinsic facts even if not defamatory on its face.  But here the Amended Complaint alleges no extrinsic facts that would transform the quotations at issue into a charge of "general ignorance or lack of skill" or any other attribute that would "expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons."  *Foster*, 87 N.Y.2d at 751, 665 N.E.2d 153 at 157.  As such, the Amended Complaint fails to state a claim for libel *per quod*.

14

**C.**     **Wheeler's Defamation Claims Fail Because He Has Not Pled Special Damages.**

Each of Wheeler's three redundant defamation counts must be dismissed because the challenged quotes are not actionable *per se*—that is, without proof of special damages—and Wheeler has failed to satisfy New York's stringent requirements for pleading such damages. "Special damages consist of the loss of something having economic or pecuniary value, which must flow directly from the injury to reputation caused by the defamation." *Franklin*, 135 A.D.3d at 93. The standard for pleading special damages is a strict one. To plead special damages, "a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice." *Nunez v. A-T Fin. Info.*, *Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997); *see also Christopher Lisa Matthew Policano, Inc.*, 514 N.Y.S.2d at 242 (dismissing amended complaint where plaintiff made only "general and conclusory" allegations of special damages). The requirement that special damages be pleaded with particularity flows not only from state law, but from the Federal Rules, which require that special damages be "specifically stated." Fed. R. Civ. P. 9(g). If the plaintiff fails to plead special damages with precision, that in itself warrants dismissal. *See Franklin*, 135 A.D.3d at 92; *see also* David A. Anderson, *Reputation, Compensation and Proof*, 25 Wm. & Mary L. Rev. 747, 748 (1984) ("The 'special harm' that must be shown in the non-per se cases is a threshold that must be met, not a limitation on recovery.").

Wheeler makes two allegations of special damages. *First*, he alleges that he will lose $35,000 per year in "lost opportunities to appear on Fox News." Am. Compl. ¶¶ 205, 229, 253. *Second*, he claims he will suffer damages of approximately $50,000 per year from loss of clients who are unwilling to work with him. *Id.* Neither allegation is sufficient to satisfy his burden.

**1.        Alleged Lost Opportunity to Appear on Fox News.**

Wheeler's allegation that he will suffer special damages in the form of lost opportunities to appear on Fox News fails for three independent reasons.

*First*, Wheeler's allegations do not establish that these supposed damages "flow directly from the injury to reputation caused by the defamation." *Franklin*, 135 A.D.3d at 93; *see also Cain v. Atelier Esthetique*, 182 F. Supp. 3d 54, 72 (S.D.N.Y. 2016); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 420-21 (S.D.N.Y. 2013).  For Wheeler to show that his losses flowed from the defamation, he must show that they flowed from publication of a false statement of fact *to a third party*.  *See Thompson*, 855 F. Supp. 2d at 76.  But rather than identify third parties who have declined to do business with him, Wheeler makes the circular claim that Fox itself "intentionally prevented [him] from making further appearances on Fox programs." Am. Compl. ¶ 168.  Not only does this allegation render an essential element of the defamation claim—publication to a third party—entirely superfluous; it is also unsupported.  Wheeler does not allege any facts to suggest that Fox refused to put him on the air because of what it read on its own web site.  Nor would such an allegation be remotely plausible.

*Second*, Wheeler has failed to allege any entitlement to future earnings from Fox. Wheeler is not a salaried employee; he is an occasional contributor who earns a per-appearance fee of $515.  Am. Compl. ¶¶ 205, 229, 253.  His contract does not guarantee any minimum number of appearances and instead leaves the frequency of his on- and off-air contributions entirely to the discretion of Fox.  *See* Ex. 1.  In circumstances where the plaintiff serves "at the pleasure" of his employer, the New York Court of Appeals has held that as a matter of law he cannot establish special damages from lost future earnings.  *See Aronson*, 65 N.Y.2d at 595, 483 N.E.2d at 1140.

16

*Third*, even if Wheeler *were* capable of establishing special damages based on his role as an occasional Fox contributor, his mere "estimate[]" that he will lose $35,000 per year does not come close to satisfying New York's stringent pleading requirement.  Wheeler fails to allege any facts to substantiate his claim that he would have earned $35,000 per year from Fox but for the alleged misquotation.  This court has made clear that these sorts of "round figures or a general allegation of a dollar amount as special damages will not suffice."  *Nunez*, 957 F. Supp. at 441.

### 2.   Alleged Loss of Other Clients.

Wheeler separately "estimates" that he will sustain "$50,000 or more" in special damages per year "as a result of potential clients being unwilling to work with [him]."  Am. Compl. ¶¶ 205, 229, 253.  Once again, Wheeler fails to allege any facts that would demonstrate this figure is anything other a wild guess.  More critically, he has not offered the name of a single potential client that has declined his services as a result of the alleged misquotation, as he is required to do.  *See Lang Sang v. Ming Hai*, 951 F. Supp. 2d 504, 525 (S.D.N.Y. 2013) ("The individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized."); *Drug Research Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 441, 166 N.E.2d 319, 322 (1960) ("if the special damage was a loss of customers, the persons who ceased to be customers, or who refused to purchase, must be named" (alteration omitted)).  To the extent Wheeler might argue that he has lost business from future clients he cannot yet identify, the New York Court of Appeals has not recognized this theory of special damages.  *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 642 (2d Cir. 2015).

### 3.   Alleged Non-Economic Damages.

Wheeler's alleged "reputational harm, emotional distress and mental anguish" do not amount to special damages.  Am. Compl. ¶¶ 204, 228, 252.  Special damages require "the loss of something having economic or pecuniary value," *Franklin*, 135 A.D.3d at 93, and do not include

damages for "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering," *Celle*, 209 F.3d at 179 (citation omitted).  Accordingly, these allegations—to which Wheeler does not even attempt to attach a dollar figure—cannot establish special damages.

## II.  THE CHALLENGED QUOTATIONS WERE SUBSTANTIALLY TRUE.

Wheeler cannot plausibly allege that Fox falsely attributed the challenged statements to him because he expressed the same sentiments, both before and after the publication of the story at issue, on a number of television and radio programs.  The Supreme Court has recognized that a misattributed quote can injure reputation if it falsely imputes to the speaker "an attitude [he] does not hold."  *Masson*, 501 U.S. at 511.  If, as in this case, however, the quote attributes an attitude that the speaker not only holds, but has expressed elsewhere, the alleged misquotation cannot be shown to be materially false.

Even in cases of alleged misquotation, the plaintiff cannot show falsity where "the substance, the gist, the sting" of the quotation is accurate.  *Id.* at 516-17.  And "[i]f an author alters a speaker's words but effects no material change in meaning, . . . the speaker suffers no injury to reputation that is compensable as a defamation."  *Id.* at 516.

Here, Wheeler claims he was defamed when Fox News quoted him saying "[m]y investigation . . . shows there was some degree of email exchange between Seth Rich and WikiLeaks."  Am. Compl. ¶¶ 129, 184, 208, 232.  But Wheeler cannot claim that this quote misrepresented his views when he said the same thing *on the air* to Fox 5 the day before:

| | |
|---|---|
| Fox 5: | But *you* have sources at the FBI saying that there is information that could link— |
| Wheeler: | For sure. |
| Fox 5: | —Seth Rich to WikiLeaks? |
| Wheeler: | Absolutely.  Yeah, and that's confirmed. |

Ex. 5 (emphasis added).

18

Wheeler attempts—but fails—to put distance between these statements to Fox 5 and the quotations at issue.  Am. Compl. ¶ 122.  He alleges that he was careful to tell Fox 5 only that "a source" had information linking Rich to WikiLeaks, not that he could personally "confirm" their relationship "as fact."  *Id.*  But that is entirely consistent with the quote in the Fox News Article at issue—that "[m]y investigation . . . showed some degree of email exchange between Seth Rich and WikiLeaks."  Investigations rely on sources, and the Fox Defendants never stated that Wheeler had personally viewed any emails between Rich and WikiLeaks.  To the contrary, the Article at issue quoted him as saying only that he "*believe[s]* that the answers to who murdered Seth Rich sits [sic] on his computer on a shelf at the DC police or FBI headquarters"—a comment he does not challenge here.  Am. Compl. Ex. 1 (emphasis added).  It was the federal investigator, not Wheeler, who was quoted in the Article as saying:  "I have seen and read the emails between Seth Rich and WikiLeaks."  Am. Compl. Ex. 1.

Nor can Wheeler advance his defamation claim by alleging that the source for the Rich-WikiLeaks connection was *Fox News's* source, not his.  Am. Compl. ¶ 122.  As indicated above, Fox 5, which broadcast its report before the Fox News Article was published, asked him whether "*you* have sources at the FBI saying that there is information that could link . . . Seth Rich to WikiLeaks," and he answered, "For sure. . . . Absolutely.  Yeah, and that's confirmed."  Ex. 5 (emphasis added).  Likewise, mere hours after the Fox News Article was published, Wheeler appeared on the Sean Hannity Show and told viewers that "[t]here was a federal investigator" that "*we checked . . . out*," and "he came across very credible."  Ex. 7, at 4-5 (emphasis added); *see* Am. Compl. ¶ 142.  Further implying that the source was his, Wheeler told Hannity:  "I can't say the person's name because that person would be thrown under the bus and I can't do that."  Ex. 7, at 4-5.  Wheeler also said:  "When you look at that with the totality of everything else *that*

19

*I've found* in this case, it's very consistent *for a person with my experience* to begin to think,

'well, perhaps there were some email communications between Seth and WikiLeaks.'"  *Id.* at 5.

In short, both before and after the Article was published, Wheeler repeatedly claimed that

*his investigation* showed communication between Rich and WikiLeaks.  Even assuming that

Wheeler did not speak the precise words to Fox News that it quoted—"[m]y investigation . . .

shows there was some degree of email exchange between Seth Rich and WikiLeaks"—it was

neither false nor defamatory to quote him to that effect when he publicly said the same thing on

other occasions.  *See Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980-82 (9th Cir. 2002) (affirming

dismissal "where [the] report was entirely consistent with the plaintiff's version of events").

For the same reasons, Wheeler cannot claim falsity (or injury to reputation) based on the

second challenged quote:  "My investigation shows someone within the D.C. government,

Democratic National Committee, or Clinton team is blocking the murder investigation from

going forward."  Am. Compl. ¶¶ 130, 184, 208, 232.  The day before Fox News published that

quote, Wheeler told Fox 5:  "I have a source inside the police department that has looked at me

straight in the eye and said, 'Rod, we were told to stand down on this case' . . . . I don't think it

comes from the Chief's office, but I do believe there is a correlation between the Mayor's office

and the DNC."  Ex. 5.  And in his appearance on Hannity *after* the Article was published, Am.

Compl. ¶ 142, Wheeler confirmed that "a high ranking official at the DNC . . . called the Rich

family wanting to know why I was snooping around" the police department, Ex. 7, at 7.

In sum, the quotations that Wheeler challenges in this case are no different from

statements he made *on the air* on other occasions.  Attributing the challenged quotations to him

did not "have a different effect on the mind of the reader from that which" Wheeler's televised

words on those other occasions would have produced.  *See Masson*, 501 U.S. at 517.  For that

20

reason, the alleged misquotations were neither false nor defamatory.  *See Perry v. CBS, Inc.*, 499

F.2d 797, 799-800 (7th Cir. 1974) (holding that, because plaintiff "fostered the story and allowed

it to circulate publicly," he was "estopped now to point out its falsity").

This court has already held that a misquotation that is itself "representative" of plaintiff's

views is not actionable as defamation *per se*.  In *Lish v. Harper's Magazine Foundation*, 807 F.

Supp. 1090 (S.D.N.Y. 1993), the defendant magazine published a piece of plaintiff's writing that

was "severely edited" to roughly half its original length, without any indication that "significant,

substantive" passages had been removed by the magazine's editors, *id.* at 1093, 1108 & n.17.

Plaintiff asserted that the presentation of the "garbled" text as his original prose constituted libel

*per se* because it portrayed him as "a less competent teacher and a less inspired writer" than he

actually was.  *Id.* at 1108 & n.17; *cf.* Am. Compl. ¶¶ 197, 221, 245 (alleging that the quotes

portrayed Wheeler as "incompetent").  The court dismissed the libel claim following a bench

trial, holding that plaintiff could not maintain a *per se* action where the "published version . . .

was representative of" what plaintiff actually wrote.  *Id.* at 1108.  So too here, Wheeler cannot

state a claim for defamation *per se* where the quotations attributed to him by Fox News were

"representative" of statements he indisputably made on other news programs.

## III.   WHEELER CANNOT STATE A CLAIM BECAUSE HE CONSENTED TO THE STATEMENTS.

Wheeler's Amended Complaint must be dismissed for an additional, independent reason:

his own allegations establish that he consented to publication of the quotes he now challenges.

In New York, "the consent of the person defamed to the making of a defamatory statement bars

that person from suing for the defamation."  *Sleepy's LLC v. Select Comfort Wholesale Corp.*,

779 F.3d 191, 199 (2d Cir. 2015); *see also Teichner v. Bellan*, 181 N.Y.S.2d 842, 846 (App. Div.

1959) (describing consent as "an absolute immunity or an absolute privilege upon the

defendant"); Restatement (Second) of Torts § 583 (characterizing consent as "a complete

defense").  In this case, Wheeler's allegations make clear that he manifested, at the very least, his

*apparent* consent through his course of conduct with Fox News.

A plaintiff expresses apparent consent to the alleged defamation where his "words or

conduct are reasonably understood by another to be intended as consent."  Restatement (Second)

of Torts § 892; *see also Puranmalka v. Puranmalka*, 539 N.Y.S.2d 802, 803 (N.Y. App. Div.

1989).  Even where the plaintiff "does not in fact agree" to publication of the defamatory

statement, "his words or acts *or even his inaction* may manifest a consent that will justify the

other in acting in reliance upon them."  Restatement (Second) of Torts § 892 cmt. c (emphasis

added).  When apparent consent is given, it is "as effective as consent in fact."  Restatement

(Second) of Torts § 892.

Wheeler's own allegations establish that the Fox Defendants reasonably understood him

as consenting to the publication of the direct quotes at issue.  Wheeler acknowledges that

Zimmerman emailed him several drafts of the Article on May 15, the day before it was

published.  Am. Compl. ¶ 120.  Those drafts contained the quotes that Wheeler challenges here.

Exs. 2-4.[6]  Choosing his words carefully, Wheeler alleges that he "*told* Zimmerman he was

traveling and could not review the drafts of the story she sent to him throughout the day."  Am.

Compl. ¶ 120 (emphasis added).  But he does not allege that he did not in fact review the drafts,

and his own allegations establish that he was not traveling on May 15 (at least for the entire day).

According to the Amended Complaint, Wheeler was in Washington, D.C., that evening, when he

gave an on-camera interview to a reporter at the local Fox affiliate about his investigation into

---

[6] Wheeler conspicuously fails to state in his Amended Complaint whether these drafts contained
the disputed quotes.  But he alleges that he received the drafts, and the Court can take judicial
notice of their content.  *See* note 3, *supra.*

the Rich murder.  *Id.* ¶ 122.  Wheeler's allegations also show that he found time twice on May 15

to assist with the Article, which he understood "would be published imminently."  *Id.* ¶ 119.

After providing him with the drafts containing the quotes at issue, Zimmerman asked him that

day for "additional quotes to add to her story, and Mr. Wheeler provided them in writing."  *Id.*

¶ 120.  And then Wheeler "followed up with a separate quote—also in writing—later that

evening."  *Id.*

       The only reasonable conclusion that one could have drawn from these events was that

Wheeler had approved the quotations contained in the drafts sent to him on May 15.  Wheeler's

actions that day must be considered in the context of his working relationship with Zimmerman

in the preceding months.  Wheeler was no ordinary third-party source:  he had a contract to

provide "off-air assistance" to Fox News, Ex. 1 n.1, and was in fact identified as a "Fox News

contributor" in the published report, Am. Compl. Ex. 1.  Wheeler and Zimmerman were in

regular contact for nearly three months prior to publication, exchanging "[c]ountless" text

messages about the progress of Wheeler's investigation.  *Id.* ¶¶ 55, 92, 105.  Once Zimmerman

told Wheeler that the Article would be published "imminently," sent him drafts for his review,

and asked for—and received—additional quotations, she objectively had no reason to believe

that he objected to publication of the Article as written.  Indeed, any suggestion that Wheeler did

*not* consent cannot survive *Iqbal*'s facial plausibility standard, which requires dismissal where

the plaintiff has failed to plead "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

       In short, Wheeler gave his apparent consent to publication of the very quotes that form

the basis for his claims.  That is sufficient to bar his claims.

## IV.   ZIMMERMAN'S EMAIL TO RICH'S FATHER IS NOT ACTIONABLE.

Wheeler separately claims that he was defamed by an email Zimmerman sent to Seth

Rich's father.  That claim is equally meritless.  Zimmerman wrote to Joel Rich (and no one else):

"As you know, much of our information came from a private investigator, Rod Wheeler, who we

understand was working on behalf of you."  Am. Compl. ¶¶ 145, 198.  But Wheeler cannot

possibly allege this statement was false, because his *own allegations* establish that he provided

information to Zimmerman.  *See id.* ¶¶ 105, 120.  Furthermore, Zimmerman's email cannot have

harmed Wheeler's reputation, because it told Rich's family only what they "already kn[ew]," *id.*

¶¶ 145, 198—that Wheeler was a source for Fox News.  *See Republic Tobacco Co. v. N. Atl.*

*Trading Co.*, 381 F.3d 717, 727-28 (7th Cir. 2004) (alleged "falsehoods which do no *incremental*

damage to the plaintiff's reputation do not injure the only interest the law of defamation

protects").  Her email in no way suggested that Wheeler provided information *other than* what

was attributed to him in the Article—which was clear about what came from Wheeler and what

came from the federal investigator.  This claim too should be dismissed.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST TWENTY-FIRST CENTURY FOX, INC.

The defamation claims against Twenty-First Century Fox—Fox News's ultimate parent

company—must be dismissed for the additional reason that the Amended Complaint does not

allege that it engaged in any tortious conduct.  "It is a general principle of corporate law deeply

ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts

of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Thus, courts routinely

dismiss claims against parent corporations where there is no allegation that the parent was

directly involved in the alleged conduct.  *See, e.g., Williby v. Hearst Corp.*, No. 15-cv-02538,

2017 WL 1210036, at *4 (N.D. Cal. Mar. 31, 2017); *Susko v. Cox Enters., Inc.*, No. 07-cv-144, 2008 WL 4279673, at *8 (N.D. W. Va. Sept. 16, 2008).

Wheeler's original complaint did not allege that any Twenty-First Century Fox employee had a role in preparing the Article.  In response to the Fox Defendants' original motion to dismiss, Wheeler added an allegation that Zimmerman is an employee of *both* Twenty-First Century Fox and Fox News and that defendant Ed Butowsky is an agent of *both* companies. Am. Compl. ¶¶ 36-37.  Wheeler has not alleged any facts to support his assertion that Zimmerman, a reporter for Fox News, had a simultaneous employment relationship with Fox's parent company.  Similarly, Wheeler alleges that Butowsky contributes to Fox News, *see id.* ¶¶ 47-49, but he has failed to plead any facts that would show he is an "agent" for Twenty-First Century Fox.  Wheeler's bare assertion, bereft of any factual support, that Twenty-First Century Fox can be liable for the actions of Zimmerman and Butwosky has failed to "nudge[] his claim . . . across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 683 (brackets omitted). This claim too must be dismissed.

## CONCLUSION

For the reasons described herein, the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

S/   Kevin T. Baine

Kevin T. Baine
Dane H. Butswinkas
Joseph M. Terry (*pro hac vice*)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

1330 Avenue of the Americas

Suite 23A
New York, NY 10019
Tel: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
dbutswinkas@wc.com
jterry@wc.com

*Attorneys for Twenty-First Century Fox,*
*Inc., Fox News Network, LLC*


*With Consent*,

HUGHES HUBBARD & REED LLP
David H. Stern (*pro hac vice*)
Daniel H. Weiner
Carolin Sahimi (*pro hac vice*)

350 South Grand Avenue
Los Angeles, California 90071

One Battery Park Plaza
New York, NY 10004
Tel: (213) 613-2800
Fax: (213) 613-2950
david.stern@hugheshubbard.com
daniel.weiner@hugheshubbard.com
carolin.sahimi@hugheshubbard.com


*Attorneys for Malia Zimmerman*

DATED: December 1, 2017

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 1, 2017, I electronically filed the foregoing

Memorandum in Support of the Motion of Twenty-First Century Fox, Inc., Fox News Network,

LLC, and Malia Zimmerman to Dismiss For Failure to State a Claim with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to all counsel of record in

this matter who are on the CM/ECF system.

<u>*S/ Kevin T. Baine*</u>
Kevin T. Baine
