**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

ROD WHEELER,  :

     :

                Plaintiff,  :    Civil Action No.: 17-cv-05807 (GBD)

     :

       v.  :

     :

TWENTY-FIRST CENTURY FOX, INC., FOX  :
NEWS NETWORK LLC, MALIA  :
ZIMMERMAN, in her individual and professional  :
capacities and ED BUTOWSKY, in his individual  :
and professional capacities,  :

     :

              Defendants.  :

-------------------------------------------------------------X

 

**PLAINTIFF ROD WHEELER'S MEMORANDUM OF LAW IN OPPOSITION TO TWENTY-FIRST CENTURY FOX, INC., FOX NEWS NETWORK, LLC AND MALIA ZIMMERMAN'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

 

**WIGDOR LLP**

Douglas H. Wigdor, Esq.
Jeanne M. Christensen, Esq.
Michael J. Willemin, Esq.
Kenneth D. Walsh, Esq.

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800

*Counsel for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTS AND BACKGROUND ........................................................................ 2

I.      ALLEGATIONS OF THE AMENDED COMPLAINT .............................................. 2

        A.      The Parties ........................................................................................................ 2

        B.      Butowsky Recruits Plaintiff to Investigate Seth Rich's Murder ...................... 3

        C.      Publication of the Defamatory Article .............................................................. 4

        D.      Retraction of the Article and Aftermath ........................................................... 5

II.     PROCEDURAL BACKGROUND ............................................................................... 6

        LEGAL ARGUMENT ................................................................................................... 7

I.      MOTION TO DISMISS LEGAL STANDARD .......................................................... 7

II.     PLAINTIFF STATES A CLAIM FOR DEFAMATION ............................................ 7

        A.      Defamation Legal Standard ............................................................................... 7

        B.      The Fox Defendants' Statements Were Defamatory *Per Se* ............................ 8

                i.      The False Attribution of Quotations to Wheeler Disparaged Him in His
                        Profession, Trade or Business ................................................................ 8

                ii.     The Fox Defendants' Arguments Lack Merit ...................................... 10

        C.      The Fox Defendants' Statements Are Defamatory *Per Quod* ........................ 14

        D.      The Fox Defendants' Defamatory Statements Were False ............................... 14

                i.      Defendants Impermissibly Reply Upon Materials Outside Of The
                        Pleadings ............................................................................................. 15

                ii.     The Defamatory Statements Were Not Substantially True ................. 18

        E.      Wheeler Did Not Consent to Publication of the Defamatory Statements ........ 20

III.     PLAINTIFF STATES A CLAIM AGAINST TWENTY-FIRST CENTURY FOX.........21

CONCLUSION.......................................................................................................................24

## Cases

*Aggarwal v. Puranmalka*,
 149 A.D.2d 493, 539 N.Y.S.2d 802 (2d Dep't 1989) ............................................ 21

*Allen v. CH Energy Grp., Inc.*,
 58 A.D.3d 1102, 872 N.Y.S.2d 237 (3d Dep't 2009) .......................................... 12

*Amelkin v. Commercial Trading Co.*,
 23 A.D.2d 830, 259 N.Y.S.2d 396 (1st Dep't 1965)............................................. 9

*Armstrong v. Simon & Schuster, Inc.*,
 197 A.D.2d 87, 610 N.Y.S.2d 503 (1st Dep't 1994)........................................... 12

*Ava v. NYP Holdings, Inc.*,
 64 A.D.3d 407 (1st Dep't 2009)......................................................................... 14

*Bouveng v. NYG Capital LLC*,
 No. 14 Civ. 5474 (PGG), 2015 WL 3503947 (S.D.N.Y. June 2, 2015) ................. 23

*Brown v. Daikin Am. Inc.*,
 756 F.3d  (2d Cir. 2014)...................................................................................... 23

*Broxmeyer v. United Capital Corp.*,
 79 A.D.3d 780 (2d Dep't 2010) .......................................................................... 22

*Celle v. Filipino Reporter Enters. Inc.*,
 209 F.3d 163 (2d Cir. 2000)............................................................................... 11

*Conniff v. Dodd, Mead & Co.*,
 593 F. Supp. 266 (S.D.N.Y. 1984)...................................................................... 23

*Courtenay Commc'ns Corp. v. Hall*,
 334 F.3d 210 (2d Cir. 2003).................................................................................. 7

*Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.*,
 No. 06 Civ. 662 (GBD), 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006) ................... 13

*Cusimano v. United Health Servs. Hosps., Inc.*,
 30 Misc. 3d 1229(A), 926 N.Y.S.2d 343 (Table) (N.Y. Sup. Ct. 2011) ............ 11, 12

*Daniels v. Alvarado*,
 No. 03 Civ. 5832, 2004 WL 502561 (E.D.N.Y. Mar. 12, 2004).............................. 14

*DiFolco v. MSNBC Cable L.L.C.*,
 622 F.3d 104 (2d Cir. 2010)............................................................................... 13

*DiFolco v. MSNBC Cable L.L.C.*,
  831 F. Supp. 2d 634 (S.D.N.Y. 2011) .................................................................. 13

*Elias v. Rolling Stone LLC*,
  872 F.3d 97 (2d Cir. 2017) ............................................................................... 7, 8

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) .................................................................................. 8

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006) ........................................................................... 7, 16

*Finn v. Barney*,
  471 F. App'x 30 (2d Cir. 2012) .......................................................................... 17

*Frangipani v. HBO*,
  No. 08 Civ. 5675 (GBD), 2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010) ................... 7

*Gersbacher v. City of New York*,
  134 F. Supp. 3d 711 (S.D.N.Y. 2015) ................................................................ 16

*Gurary v. Winehouse*,
  190 F.3d 37 (2d Cir. 1999) ............................................................................... 18

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955 (DLC),
  2003 WL 21136096 (S.D.N.Y. May 15, 2003) ................................................ 22, 23

*Herlihy v. Metro. Museum of Art*,
  214 A.D.2d 250 (1st Dep't 1995) ......................................................................... 8

*Horowitz v. Aetna Life Ins.*,
  148 A.D.2d 584 (2d Dep't 1989) ........................................................................ 22

*Hussey v. New York State Dep't of Law/Office of Atty. Gen.*,
  933 F. Supp. 2d 399 (E.D.N.Y. 2013) ................................................................ 11

*Idema v. Wager*,
  120 F. Supp. 2d 361 (S.D.N.Y. 2000) ................................................................ 14

*Ives v. Guilford Mills, Inc.*,
  3 F. Supp. 2d 191 (N.D.N.Y. 1998) ...................................................................... 8

*Johns v. Town of East Hampton*,
  942 F. Supp. 99 (E.D.N.Y. 1996) ................................................................... 15, 16

*Kopec v. Coughlin*,
  922 F.2d 152 (2d Cir.1991) ........................................................................ 18

*Kramer v. Time Warner, Inc.*,
  937 F.2d 767 (2d Cir. 1991) ...................................................................... 15

*Lilakos v. New York City*,
  No. 14 Civ. 5288 (PKC)(LB), 2017 WL 4898193 n.5 (E.D.N.Y. Oct. 25, 2017) ................... 16

*Lish v. Harper's Magazine Found.*,
  807 F. Supp. 1090 (1992) ...................................................................... 19, 20

*Lucking v. Maier*,
  No. 03 Civ. 1401 (NRB), 2003 WL 23018787 (S.D.N.Y. Dec. 23, 2003) .............................. 11

*Mason v. Sullivan*,
  26 A.D.2d 115, 271 N.Y.S.2d 314 (1st Dep't 1966) ...................................... 11, 12, 13

*Masson v. New Yorker Magazine, Inc*,
  501 U.S. 496, 111 S. Ct. 2419 (1991) ........................................................... 9, 18

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
  102 F.3d 660 (2d Cir. 1996) ...................................................................... 15

*November v. Time Inc.*,
  13 N.Y.2d 175, 224 N.Y.S.2d  (1963) .............................................................. 11

*Palin v. New York Times Co.*,
  --- F. Supp. 3d ---, 2017 WL 3712177 (S.D.N.Y. Aug. 23, 2017) .................................. 19

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
  42 N.Y.2d 369 (1977) ............................................................................. 7, 8

*Rutman v. Giedel*,
  67 A.D.2d 662, 411 N.Y.S.2d 960 (2d Dep't 1979) ........................................... 12, 13

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974) ................................................................................ 7

*Schindler v. Mejias*,
  100 A.D.3d 1315, 955 N.Y.S.2d 252 (3d Dep't 2012) ............................................. 11

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
  779 F.3d 191 (2d Cir. 2015) ...................................................................... 21

*Speedmark Transp., Inc. v. Mui*,
   778 F. Supp. 2d 439 (S.D.N.Y. 2011) ................................................................. 7

*Staehr v. Hartford Fin Servs. Grp.*,
   547 F.3d 406 (2d Cir. 2008) ............................................................................... 17

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (1st Dep't 2014) ...................................................................... 7, 8

*Teichner v. Bellan*,
   7 A.D.2d 247 (4th Dep't 1959) .......................................................................... 21

*Theodore v. News Syndicate Co.*,
   270 N.Y. 603 (1936) ............................................................................................ 9

*Weldy v. Piedmont Airlines, Inc.*,
   985 F.2d 57 (2d Cir. 1993) .................................................................................. 8

*Wender v. Silberling*,
   No. 160505/13, 2014 WL 3350213 (N.Y. Sup. Ct. July 8, 2014) ....................... 18

*Wolf Street Supermarkets, Inc. v. McPartland*,
   108 A.D.2d 25, 487 N.Y.S.2d 442 (4th Dep't 1985) ......................................... 14

## **Other Authorities**

Fed. R. Civ. P. 12(d) ................................................................................................ 17

Plaintiff submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Twenty-First Century Fox, Inc. ("Twenty-First Century Fox"), Fox News Network LLC ("Fox News," and with Twenty-First Century Fox, the "Company") and Malia Zimmerman (collectively, the "Fox Defendants").

## PRELIMINARY STATEMENT

Plaintiff Rod Wheeler's Amended Complaint contains allegations that are more than sufficient to support his claims of defamation against the Fox Defendants in connection with their publication of a defamatory article in which they falsely attributed two quotations to Plaintiff. Specifically, Wheeler alleges that the Fox Defendants, working together and in concert with Defendant Ed Butowsky, published an article claiming that Plaintiff stated:

- "'My investigation up to this point shows there was some degree of email exchange between Seth Rich and WikiLeaks.'"

- "My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward' . . . 'That is unfortunate. Seth Rich's murder is unsolved as a result of that.'"

Plaintiff never made these statements and, as Plaintiff alleges, ***Defendants Ed Butowsky and Malia Zimmerman have since <u>admitted</u> that Wheeler did not make these statements.*** Nevertheless, Defendants baselessly seek pre-discovery dismissal of his claims by arguing that he made the statements that he alleges he did not make.

Defendants also argue that the false attribution of these quotations does not constitute defamation *per se* based on their claim that the conduct of Defendants would not tend to disparage Wheeler in his profession or business. This is preposterous. The false attributions convey that Wheeler, a solo private investigator, believed he had "cracked the case" and uncovered evidence that numerous organizations, including the FBI, were unable to find, to prove that it was Seth Rich – and not the Russians – who leaked the thousands of emails to

1

WikiLeaks. The misattributions made Wheeler appear to be a political shill, destroyed his reputation as an objective, credible and intelligent investigator with integrity, and ultimately precluded him from appearing on Fox News as a paid contributor.

Finally, in making these meritless arguments, Defendants often rely on evidence outside of the four corners of the Amended Complaint and rely on cases decided on summary judgment or following trial, which only serves to highlight the fact that Defendants' motion should be denied.

**RELEVANT FACTS AND BACKGROUND**

**I.     ALLEGATIONS OF THE AMENDED COMPLAINT**

**A.     The Parties**

Plaintiff is a former Washington, DC homicide detective and currently works in the private sector as a private investigator. *See* Am. Compl. ¶¶ 6, 39. Although Wheeler has appeared on Fox News programs for more than a decade on a "per appearance basis," his primary profession is "working on private investigations and providing individuals and businesses with security consulting services." *Id.* at ¶¶ 39, 98. Zimmerman is an investigative reporter for Fox News, which is a wholly owned subsidiary of Twenty-First Century Fox. *Id.* at ¶¶ 41-42, 62. In her role as an investigative journalist, Zimmerman regularly reports to Fox News editors, including Greg Wilson, the Deputy Managing Editor of foxnews.com, and Refet Kaplan, the Managing Director of foxnews.com, both of whom work at Fox News's headquarters located in New York City. *Id.* at ¶ 42. Butowsky is a self-described "internationally known financial advisor" who was a vocal supporter of President Donald Trump, and an outspoken critic of Hillary Clinton, during the 2016 Presidential election. *Id.* at ¶¶ 5, 43. Butowsky has

regularly and frequently performed work for Fox News, including appearing on Fox News television programs and writing articles published by Fox News.  *Id.* at ¶¶ 43, 47-49.

In early 2017, Butowsky enlisted Plaintiff's services to investigate the July 10, 2016 murder of Democratic National Committee ("DNC") staffer Seth Rich.  *Id.* at ¶¶ 77, 82-83. Although police had determined that Rich was murdered during the course of a botched robbery, Butowsky sought to establish that a Democratic operative had murdered Rich because Rich – and not Russian hackers – leaked DNC emails that WikiLeaks published during the 2016 Presidential primary race.  *Id.* at ¶¶ 75, 77, 84-85.  By shifting the blame from Russia to Rich, Butowsky sought, in his own words, to "help put to bed speculation that President Trump colluded with Russia in an attempt to influence the outcome of the Presidential election."  *Id.* at ¶ 2.  In an effort to lend support to this blame-shifting theory, in a May 16, 2017 article (the "Article"), Zimmerman, working with Butowsky and under the supervision of her editors at Fox News, falsely attributed two fabricated quotations to Plaintiff, which resulted in the destruction of his reputation as an objective, credible and intelligent investigator with integrity, and ultimately precluded him from appearing on Fox News as a paid contributor.  *Id.* at ¶¶ 123-34, 164.

### B.    Butowsky Recruits Plaintiff to Investigate Seth Rich's Murder

On February 23, 2017, Butowsky sent Wheeler a text message stating that they had "many mutual friends" and that he was "looking for some assistance on something that happened in Washington."  *Id.* at ¶ 82.  Plaintiff called Butowsky, who told Plaintiff that he wished to "enlist Mr. Wheeler to conduct an investigation into the Seth Rich murder."  *Id.* at ¶ 83. According to Butowsky, the Rich family sought to engage an investigator and "Butowsky [ ] agreed to foot the bill."  *Id.*   Thereafter, Plaintiff had multiple conversations with the Rich family, which resulted in the execution of a written agreement on March 14, 2017 (the "Rich Family Agreement").  *Id.* at Ex. 1.  Pursuant to the Rich Family Agreement, Plaintiff agreed to

engage in an investigation "with regards to the official police investigation surrounding the death of Seth Rich." *Id.* After executing the Rich Family Agreement, Plaintiff conducted his own investigation of the Seth Rich murder, including interviewing Seth Rich's relatives, co-workers and friends; reviewing evidence that was available to him through the Washington, D.C. police department; and drafting contemporaneous notes. *Id.* at ¶ 102.

**C.  Publication of the Defamatory Article**

As Plaintiff investigated Seth Rich's murder, Butowsky and Zimmerman kept in contact with him, and, on May 11, 2017, Zimmerman sent Plaintiff and Butowsky a draft of a story regarding the Seth Rich murder. *Id.* at ¶¶ 105, 113. The May 11, 2017 draft did not attribute any quotations to Wheeler to the effect that Seth Rich had sent any emails to WikiLeaks, nor did it quote Wheeler as saying that the DNC, Democratic Party or Clintons were engaged in covering up Seth Rich's murder. *Id.* at ¶ 113. On May 15, 2017, Zimmerman emailed Plaintiff, stating that her article would be published imminently. *Id.* at ¶ 119. Plaintiff never informed Zimmerman that his investigation revealed that Seth Rich sent any emails to WikiLeaks or that the DNC, Democratic Party or Clintons were engaged in covering up Seth Rich's murder. *Id.* at ¶ 121. Nevertheless, on May 16, 2017, Fox News published the Article, wherein Zimmerman, working together with Butowsky and under the supervision of her editors at Fox News and Twenty-First Century Fox, falsely attributed the following fabricated quotations to Plaintiff:

- "'My investigation up to this point shows there was some degree of email exchange between Seth Rich and WikiLeaks,' said Wheeler."

- "My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward' . . . 'That is unfortunate. Seth Rich's murder is unsolved as a result of that.'"

*Id.* at ¶¶ 126-32.

Shortly after the Article was published, Plaintiff demanded an explanation regarding the false statements. *Id.* at ¶ 138. Butowsky told Plaintiff that the statements "were included because that is the way the President [Donald J. Trump] wanted the article." *Id.* at ¶¶ 138-44. Furthermore, although Zimmerman initially told Wheeler that she would have the statements removed from the Article, later the same day, Zimmerman informed Plaintiff that she had "been instructed by her bosses at Fox to leave the false quotes in the story." *Id.* at ¶ 140.

The Fox Defendants' inclusion of the defamatory misquotations – and refusal to acknowledge their wrongdoing – is particularly egregious in light of the fact that both Zimmerman and Butowsky acknowledged that Plaintiff never made the statements included in the Article. Specifically, when Plaintiff reminded Zimmerman that "much of the information [in the Article] did not come from [him]," Zimmerman admitted, "***Not the part about the emails. Not the part about, I mean about the connection to WikiLeaks*** . . . ." *Id.* at ¶ 146 (emphasis in Amended Complaint). Similarly, Butowsky acknowledged the falsity of the defamatory statements when he told Plaintiff, "***one day you're going to win an award for having said those things you didn't say***." *Id.* (emphasis in Amended Complaint). In another conversation, Mr. Butowsky read, from the Article, the quotation falsely attributed to Wheeler: "my investigation up to this point shows that there was some degree of emails exchanged between Seth Rich and Wikileaks." Butowsky then said, "***Well I know that's not true . . . I've never heard you say that***." *Id.* "***If I'm under oath, I would say I never heard him say that***." *Id.*

### D.   Retraction of the Article and Aftermath

On May 23, 2017, Fox News retracted the Article, stating that it "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting." *Id.* at ¶ 150. However, Fox News neither admitted that it misquoted Plaintiff nor otherwise cleared his name.

*Id.* at ¶ 151.  As a result of the publication of the defamatory Article, Plaintiff has been exposed

to "hostility, contempt, ridicule and professional disgrace," including, *inter alia*:

- The New York Times reported that Wheeler has given "shifting and contradictory accounts" regarding Seth Rich's connection with WikiLeaks.

- The New York Times reported that "The Rich family regrets hiring Mr. Wheeler and has objected to his many public comments" and that "Aaron Rich, Mr. Rich's brother, said in an email Wednesday that Mr. Wheeler has 'Discredited himself as an objective investigator' and had lost the confidence of the family.  He said that the politicization of his brother's death had been 'painful' and 'debilitating.'"

- GQ reported: "Here's how the story unraveled.  Wheeler, it turns out, is a verifiable dipshit."

- MSNBC referred to Wheeler as a "blabbing detective."

- The Washington Post reported that the Rich Family said that Wheeler had "peddled politicized conspiracy theories."

*Id.* at ¶¶ 166, 186.  According to Plaintiff, the Fox Defendants' publication of the defamatory

Article has caused "him severe economic harm, as well as emotional distress."  *Id.* at ¶ 154.

## II.   <u>PROCEDURAL BACKGROUND</u>

On August 1, 2017, Plaintiff commenced this action against the Fox Defendants and

Defendant Ed Butowsky alleging claims of defamation *per se* and race, color and ethnicity

discrimination in violation of 42 U.S.C. § 1981.  DE [1].  On September 1, 2017, the Fox

Defendants filed a motion to compel arbitration, or, in the alternative, to dismiss Plaintiff's

Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  DE [38].  On October

23, 2017, Plaintiff both opposed the Fox Defendants' motion to compel arbitration and filed an

Amended Complaint, thereby rendering the Fox Defendants' motion to dismiss moot.  DE [56],

[59].  In the Amended Complaint, Plaintiff asserts additional factual allegations and pleads for

defamation *per se*, defamation, and defamation *per quod*.[1]  DE [56].  On December 1, 2017, the

---

[1]     Wheeler is pursuing his race discrimination claims in arbitration.

6

Fox Defendants filed the instant motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  DE [74].  For the reasons set forth herein, the Fox Defendants' motion to dismiss Plaintiff's Amended Complaint should be denied in its entirety.

## LEGAL ARGUMENT

### I.    MOTION TO DISMISS LEGAL STANDARD

On a motion to dismiss, the court must "liberally construe the complaint, accepting the factual allegations as true, and drawing all reasonable inferences in Plaintiff's favor." *Frangipani v. HBO*, No. 08 Civ. 5675 (GBD), 2010 WL 1253609, at *2 (S.D.N.Y. Mar. 16, 2010).  The court should deny a motion to dismiss "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  "[T]he district court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment."  *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003); *see also Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 440 n.1 (S.D.N.Y. 2011) ("The Court declines to consider these extraneous materials and will not convert [the] motion to dismiss into one for summary judgment, since plaintiffs have not had the opportunity to take discovery.").

### II.    PLAINTIFF STATES A CLAIM FOR DEFAMATION

#### A.    Defamation Legal Standard

To state a claim for defamation, a plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm.'"  *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d

28, 34 (1st Dep't 2014)); *see also Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (a defamatory statement is a statement that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of him").  "[W]here statements are defamatory *per se*, the law presumes that damages will result, and they need not be alleged." *Ives v. Guilford Mills, Inc.*, 3 F. Supp. 2d 191, 199 (N.D.N.Y. 1998) (citing *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993)); *see also Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) (observing that, where a statement is defamatory *per se*, "general damages to the reputation of the business are presumed").

In moving to dismiss the Amended Complaint, the Fox Defendants do not dispute that their defamatory statements were published to third parties.  *See* Fox Defs.' Mem. at 6-9. Rather, they argue that the Amended Complaint fails to plead facts sufficient to raise even an inference that the statements at issue were defamatory *per se* and untrue, and that Plaintiff consented to publication of the defamatory statements.  *Id.*  Even a cursory review of the Amended Complaint reveals that each of these arguments lacks merit, and the Fox Defendants' self-serving denials cannot serve to prevent discovery in this action.

### B.    The Fox Defendants' Statements Were Defamatory *Per Se*

i.    The False Attribution of Quotations to Wheeler Disparaged Him in His Profession, Trade or Business

"Words which have a tendency to disparage an individual, *inter alia*, in the way of [his] office, profession, trade or business are slanderous per se."  *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 261 (1st Dep't 1995).  Plaintiff's allegations, accepted as true, support an inference that the Fox Defendants' false attribution of quotations to Plaintiff was defamatory *per se* because it disparaged Plaintiff in his profession by "leading a reader to conclude that Mr. Wheeler claimed to have uncovered evidence showing that Russian hackers had not obtained

emails from the DNC and provided them to WikiLeaks but that Seth Rich had done so." Am. Compl. ¶ 196. According to Plaintiff, he "never said the actual words attributed to him in the Article and the quotes are false and grossly inaccurate." *Id.* at ¶ 191.

Plaintiff alleges that the falsely attributed statements "exposed him and his professional career to injury" because, *inter alia*, "[t]he average reader of the Article would believe that Mr. Wheeler is a lying and incompetent investigator who does not perform his job with objectivity and integrity." *Id.* at ¶¶ 194-97. Specifically, Plaintiff alleges that the defamatory statements "suggested that Mr. Wheeler, a solo private investigator, believed he had 'cracked the case' and uncovered evidence that numerous organizations, including the FBI, were unable to find, to prove that it was Seth Rich who had leaked the thousands of emails to WikiLeaks." *Id.* at ¶ 195. As alleged, the false statements regarding Wheeler's investigation "exposed Mr. Wheeler to hostility, contempt, ridicule and professional disgrace." *Id.* at ¶¶ 168-69.

These allegations support an inference that the Fox Defendants disparaged Plaintiff in his business or trade as a private investigator, and are therefore defamatory *per se*. *See, e.g.*, *Masson v. New Yorker Magazine, Inc*, 501 U.S. 496, 511, 111 S. Ct. 2419 (1991) (a "fabricated quotation may injure reputation"); *Amelkin v. Commercial Trading Co.*, 23 A.D.2d 830, 831, 259 N.Y.S.2d 396 (1st Dep't 1965) (it was defamatory *per se* to charge the plaintiff with being ignorant, incompetent, or incapable in his calling); *Theodore v. News Syndicate Co.*, 270 N.Y. 603, 603 (1936) (affirming judgment for the plaintiff in an action for libel where a publication published "words appearing therein and purporting to be a direct quotation of remarks made by the plaintiff were not spoken by the plaintiff, and that they constituted a misquotation").[2]

---

[2]     For the same reasons as those discussed herein, Zimmerman's May 16, 2017 email to Joel Rich in which she wrote that "much of [the Fox Defendants'] information came from a private investigator, Rod Wheeler, who we understand was working on behalf of you," was also defamatory *per se*, as Zimmerman essentially doubled down on the defamatory statements already made in the Article. *See* Am. Compl. ¶ 198.

ii.   The Fox Defendants' Arguments Lack Merit

In moving to dismiss the Amended Complaint, the Fox Defendants first argue that the defamatory statements are not defamatory *per se* because they "did not impute conduct incompatible with the standards of Wheeler's profession." *See* Fox Defs.' Mem. at 10-13.  It is worth noting that the Fox Defendants do not even attempt to analogize the facts of this case with any in which a claim for defamation *per se* was dismissed at the pleading stage, nor could they as Plaintiff specifically alleges that, as a result of the Fox Defendants' false statements, he was exposed to "hostility, contempt, ridicule and professional disgrace," including, *inter alia*:

- The New York Times reported that Wheeler has given "shifting and contradictory accounts" regarding Seth Rich's connection with WikiLeaks.

- The New York Times reported that "The Rich family regrets hiring Mr. Wheeler and has objected to his many public comments" and that "Aaron Rich, Mr. Rich's brother, said in an email Wednesday that Mr. Wheeler has 'Discredited himself as an objective investigator' and had lost the confidence of the family.  He said that the politicization of his brother's death had been 'painful' and 'debilitating.'"

- GQ reported: "Wheeler, it turns out, is a verifiable dipshit."

- MSNBC referred to Wheeler as a "blabbing detective."

- The Washington Post reported that the Rich Family said that Wheeler had "peddled politicized conspiracy theories."

*See* Am. Compl. ¶¶ 166, 186.

This was the natural result of Defendants' conduct, which was to falsely attribute quotations to Plaintiff in order to prop up a politically explosive narrative regarding WikiLeaks, Russian hacking and alleged Russian collusion with the Trump campaign.  Again, the false attributions would lead a reader to believe that Wheeler was a poor private investigator given the preposterous, falsely attributed claim that he uncovered the leaker of the hacked DNC emails to WikiLeaks, contrary to the determinations of, *inter alia*, the FBI.  The misattributions made Wheeler appear to be a political shill and an incompetent private investigator.  For the reasons

discussed above, these allegations are sufficient to support an inference that the Fox Defendants'
false statements injured Plaintiff's professional reputation, and the Fox Defendants' argument
that their statements were not defamatory *per se* therefore lacks merit.

The Fox Defendants further argue that, even if their defamatory statements imputed
conduct incompatible with the standards of Plaintiff's profession, and were therefore defamatory
*per se*, the statements still are not actionable pursuant to New York's "single-instance rule," *see*
Fox Defs.' Mem. at 13-14, which provides that an otherwise defamatory *per se* statement is not
actionable absent special damages "where [the] defamatory statement accuses plaintiff of a
'single dereliction in connection with his profession.'" *Hussey v. New York State Dep't of
Law/Office of Atty. Gen.*, 933 F. Supp. 2d 399, 415 (E.D.N.Y. 2013) (quoting *Celle v. Filipino
Reporter Enters. Inc.*, 209 F.3d 163, 180 (2d Cir. 2000); *see also November v. Time Inc.*, 13
N.Y.2d 175, 179, 224 N.Y.S.2d 309 (1963) (discussing New York's "single-instance rule").  But,
the single-instance rule does not preclude recovery "where the act alleged, by itself,
demonstrates a lack of character or total disregard for professional ethics." *Schindler v. Mejias*,
100 A.D.3d 1315, 1317, 955 N.Y.S.2d 252 (3d Dep't 2012); *see also Lucking v. Maier*, No. 03
Civ. 1401 (NRB), 2003 WL 23018787, at *6 (S.D.N.Y. Dec. 23, 2003) (holding that the single-
instance rule did not apply where "the passage in question potentially accuse[d] plaintiff of
willful unethical or illegal misconduct, as opposed to simple negligence or an error"); *Mason v.
Sullivan*, 26 A.D.2d 115, 117, 271 N.Y.S.2d 314 (1st Dep't 1966) ("[W]here the deviation from
professional conduct shows a lack of character or a total disregard of professional ethics . . . then
the words would certainly injury [the plaintiff] in his professional capacity and are libelous *per
se*."); *Cusimano v. United Health Servs. Hosps., Inc.*, 30 Misc. 3d 1229(A), at *5, 926 N.Y.S.2d
343 (Table) (N.Y. Sup. Ct. 2011) ("[T]he court finds that the nature of the alleged defamatory

statements implies a course of conduct by plaintiff that prevents application of the single instance rule.").

Here, the single instance rule does not preclude recovery against the Fox Defendants, as Plaintiff's allegations support an inference that the defamatory statements imputed a "lack of character or total disregard for professional ethics" on behalf of Plaintiff. *See Mason*, 26 A.D.2d at 117. According to Plaintiff, "the fact that Mr. Wheeler had to correct the record resulted in many media outlets and commentators declaring that Mr. Wheeler had backtracked on his story and statements about Seth Rich, destroying his credibility." Am. Compl. ¶ 167. Indeed, Plaintiff specifically alleges that, due to the Fox Defendants' publication of the defamatory Article, "[p]rofessional peers did everything to avoid being associated with Mr. Wheeler," which "resulted in his professional visibility being diminished that in turn, directly resulted in economic harm." *Id.* at ¶ 168. Plaintiff further alleges that the defamatory statements "overflowed into his work as a private investigative consultant, causing existing clients unnecessary concern and preventing potential clients from contracting for his services." *Id.* at ¶ 169.

These allegations imply a "total disregard of professional ethics," and are therefore not subject to New York's single-instance rule. *See, e.g.*, *Allen v. CH Energy Grp., Inc.*, 58 A.D.3d 1102, 1104, 872 N.Y.S.2d 237 (3d Dep't 2009) (denying the defendant's motion to dismiss the plaintiff's claim for defamation where "[t]he conduct attributed by [the defendant] to plaintiff reveal[ed] such an absence of character or ethics as to fall beyond the parameters of the single instance rule"); *Armstrong v. Simon & Schuster, Inc.*, 197 A.D.2d 87, 91, 610 N.Y.S.2d 503 (1st Dep't 1994) (holding that the single-instance rule did not preclude the plaintiff's defamation claim where he was "a professional whose stock in trade has to be integrity"); *Rutman v. Giedel*,

67 A.D.2d 662, 662, 411 N.Y.S.2d 960 (2d Dep't 1979) (declining to apply the single-instance rule to a "false accusation that a police officer was drunk or intoxicated while on duty").

Indeed, the case law upon which the Fox Defendants rely further demonstrates the inapplicability of the single-instance rule with respect to Plaintiff's allegations.  For example, in *Croton Watch Co., Inc. v. Nat'l Jeweler Magazine, Inc.*, No. 06 Civ. 662 (GBD), 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006), the court held that the single-instance rule precluded the corporate plaintiff's defamation claim where the defendant's defamatory statement did "not suggest plaintiff's general incompetence, ignorance, or lack of skills."  2006 WL 2254818, at *8. In contrast to *Croton Watch Co.*, as discussed above, Wheeler specifically alleges that the Fox Defendants' defamatory statements injured his professional reputation, including his professional peers avoiding being associated with him and potential clients declining from contracting for his services.  *See* Am. Compl. ¶¶ 168-69.

Likewise, in *DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634 (S.D.N.Y. 2011), the defendant falsely stated that the plaintiff resigned in the middle of her employment contract with the defendant.  The court held that "a report of Plaintiff's 'single instance' of resigning – even in the middle of a contract – [was] not actionable . . . absent allegations of special damages."  831 F. Supp. 2d at 649.  In contrast to *DiFolco*, the statements at issue in this action were not so benign as to merely imply that Wheeler failed to perform under his contract, but rather implied an inability to adequately perform his duties as a private investigator and a "total disregard for professional ethics."  *Mason*, 26 A.D.2d at 117.  Moreover, *DiFolco* was decided on a motion for summary judgment, after the plaintiff was afforded discovery.  Indeed, the Second Circuit reversed a prior decision granting a pre-discovery motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010) (internal quotation marks omitted).

13

### C.    The Fox Defendants' Statements Are Defamatory *Per Quod*

Even if the Court concludes that the statements at issue are not defamatory *per se*, Plaintiff still states a claim for defamation and defamation *per quod* because his allegations support an inference that he suffered special damages as a result of the Article.[3]    Special damages "include the loss of something of economic value which must flow directly from the injury to reputation caused by the defamation."    *Daniels v. Alvarado*, No. 03 Civ. 5832, 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004).    Here, Plaintiff alleges that, as a result of the injury to his reputation caused by the Fox Defendants' defamatory statements, he has suffered economic harm, including Plaintiff's "professional visibility being diminished," being prevented "from making further appearances on Fox programs, and "causing existing clients unnecessary concern and preventing potential clients from contracting for his services."    *See* Am. Compl. ¶¶ 167-69.    These allegations, accepted as true, are sufficient to support an inference that he suffered special damages, and are therefore sufficient to withstand Defendants' motion to dismiss.    *See Wolf Street Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 26, 487 N.Y.S.2d 442 (4th Dep't 1985) (holding that the plaintiff adequately demonstrated lost profits necessary to support an inference of special damages).    Therefore, the Fox Defendants' motion to dismiss Plaintiff's alternative claims of defamation and defamation *per quod* should be denied.

### D.    The Fox Defendants' Defamatory Statements Were False

The Article falsely quoted Wheeler as stating that his investigation established both that Seth Rich had "some degree of email exchange" with WikiLeaks and that his murder was unsolved due to the government, DNC, or "Clinton team."    *See* Am. Compl. ¶¶ 129-30.    Plaintiff

---

[3]        Statements are defamatory *per quod* "[w]hen the common usage of the challenged language can be [defamatory] due to extrinsic circumstances."    *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000).    As a claim for defamation *per quod* requires special damages, *see Ava v. NYP Holdings, Inc.*, 64 A.D.3d 407, 412 n.3 (1st Dep't 2009), Plaintiff addresses his claims of defamation and defamation *per quod* simultaneously.

specifically alleges that both Zimmerman and Butowsky acknowledged the falsity of the defamatory statements published in the Article.  *Id.* at ¶ 146.  Furthermore, it is undisputed that Fox News ultimately retracted the Article, stating that it "was not initially subjected to the high degree of editorial scrutiny [it] require[s] for all of [its] reporting," but that Fox News never cleared Plaintiff's name or admitted that he was misquoted in the Article.  *Id.* at ¶¶ 150-51.

Given these allegations, Defendants' self-serving assertions that Wheeler was correctly quoted are unavailing.  In moving to dismiss Plaintiff's Amended Complaint, the Fox Defendants argue that Plaintiff "cannot plausibly allege that Fox falsely attributed the challenged statements to him because he expressed the same sentiments, both before and after the publication at issue, on a number of television and radio programs."  *See* Fox Defs.' Mem. at 18. In support of their argument that their defamatory statements were substantially true – an obvious issue of fact that cannot be decided at the pleading stage – the Fox Defendants rely upon transcriptions of Wheeler's appearances on a Fox News program on May 15, 2017 and Sean Hannity's television show on Fox News on May 16, 2017.  *Id.* at 18-21 (citing Terry Decl. Exs. 5 and 7).  In deciding the instant motion to dismiss, the Court should not consider these extraneous materials upon which the Fox Defendants rely.  However, even if the Court were to consider these extraneous materials, Defendants do not demonstrate that their defamatory statements were substantially true, and the Fox Defendants' argument therefore lacks merit.

i.    Defendants Impermissibly Rely Upon Materials Outside Of The Pleadings

In deciding this motion, the Court "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  Moreover, even where the court considers materials referenced in the complaint or annexed thereto, it may not

15

draw inferences adverse to the plaintiff in considering such materials. *See Johns v. Town of East Hampton*, 942 F. Supp. 99, 104-05 (E.D.N.Y. 1996) ("[I]n recognition of the procedural posture, [the court] will not draw any inferences adverse to the plaintiffs from these exhibits except to the extent that these items of public record expressly contradict the Complaint's allegations.").

Here, the Court should decline to consider the extraneous materials upon which the Fox Defendants rely, as Plaintiff does not refer to the substance of these appearances in his Amended Complaint, neither the videos nor their transcriptions are annexed to the Amended Complaint, and the interviews are not integral to Plaintiff's pleading. *See, e.g.*, *Lilakos v. New York City*, No. 14 Civ. 5288 (PKC)(LB), 2017 WL 4898193, at *1 n.5 (E.D.N.Y. Oct. 25, 2017) ("[T]he Court can only consider the pleadings on a motion to dismiss."); *see Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 718 (S.D.N.Y. 2015) (declining to consider videos that were not referenced in the plaintiff's pleading and that were not relied upon in drafting the complaint); *see also Faulkner*, 463 F.3d at 134-35 (holding that the district court erred in considering materials outside of the pleadings where there were disputes regarding the authenticity and relevance of extraneous materials relied upon).

The Fox Defendants' arguments that the Court may consider these extraneous materials both because Plaintiff refers to them in the Amended Complaint and because they are materials of which the Court may take judicial notice lack merit and should be disregarded. *See* Fox Defs.' Mem. at 3 n.3. Any references to Plaintiff's appearances on these news programs in the Amended Complaint do not refer in any depth to the substance of the interviews. By way of example, with respect to Plaintiff's May 15, 2017 interview, Plaintiff merely alleges that he "was interviewed by a Fox affiliate on the evening of May 15, 2017," and that he "made sure not to confirm as fact the proposition that Seth Rich sent emails to WikiLeaks, instead confirming only

that a 'source' . . . had information that could link Seth Rich to WikiLeaks." *See* Am. Compl. ¶

122.  Likewise, with respect to Plaintiff's May 16, 2017 interview with Sean Hannity, Plaintiff

merely alleges, "Following Mr. Wheeler's disclosures and in advance of Mr. Wheeler's planned

appearance on the Sean Hannity Show, Zimmerman sent a text to Mr. Wheeler that stated,

'***Reread the story we sent to you last night [with the false quotes] and stick to that script.***'"  *Id.*

at ¶ 142 (emphasis in Amended Complaint).  As these references do not address the substance of

Plaintiff's interviews, and because they are not materials of which the Court may take judicial

notice, they should be disregarded by the Court.

To that end, the case law Defendants cite is readily distinguishable and does not support

their argument that the Court may consider the truth of the matters asserted in these extraneous

materials in deciding the instant motion.  For example, in *Finn v. Barney*, 471 F. App'x 30 (2d

Cir. 2012), the Second Circuit observed that "the district court took judicial notice of the

documents for the purpose of establishing that the information was publicly available; ***it did not***

***consider the documents for their truth.***"  471 F. App'x at 32 (emphasis added).  Likewise, in

*Staehr v. Hartford Fin Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008), the district court "took judicial

notice of, *inter alia*, media reports, state court complaints, and regulatory filings."  547 F.3d at

424.  The Second Circuit held that it was not an abuse of discretion to do so, as the court did "***not***

***take judicial notice of the documents for the truth of the matters asserted in them***, but rather to

establish that the matters [had] been publicly asserted."  *Id.* (emphasis added).  As the Fox

Defendants rely upon extraneous materials for the truth of the matters asserted therein, both *Finn*

and *Staehr* are inapplicable, and the Court should decline to consider the extraneous materials

upon which the Fox Defendants rely in deciding the instant motion to dismiss.[4]

---

[4]     When a district court converts a motion to dismiss into one for summary judgment, "[a]ll parties must be
given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

ii.    The Defamatory Statements Were Not Substantially True

In any event, even if the Court were to consider these extraneous materials in deciding the Fox Defendants' motion to dismiss, the Fox Defendants' characterization of their defamatory statements as being "no different from statements [Plaintiff] made *on the air* on other occasions" is inaccurate.  *See* Fox Defs.' Mem. at 20 (emphasis in original).  As alleged, when Wheeler was interviewed by a Fox affiliate on the evening of May 15, 2017, he made sure not to confirm as fact the proposition that Seth Rich sent emails to WikiLeaks, instead confirming only that a "source" (*i.e.*, *Zimmerman's and Butowsky's alleged source*) had information that could link Seth Rich to WikiLeaks."  *See* Am. Compl. ¶ 122.  This is ***vastly*** different than Wheeler stating that his own personal investigation conclusively established "some degree of email exchange between Seth Rich and WikiLeaks."  Moreover, Defendants know very well that the "source" to which Plaintiff referred was a purported source disclosed to Wheeler by Butowsky, which only serves to confirm that Butowsky knew that Wheeler did not independently confirm that Mr. Rich sent any emails to Wikileaks.[5]

The Fox Defendants further unpersuasively argue that there is truth to their defamatory statement that Wheeler stated that his "investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward."  *See* Fox Defs.' Mem. at 20-21.  According to the Fox Defendants, Wheeler stated

---

Ordinarily, this means that a district court "must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading."  *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (citing *Kopec v. Coughlin*, 922 F.2d 152, 154–55 (2d Cir.1991)). Therefore, in the event the Court chooses to rely upon materials outside the Amended Complaint, Plaintiff should be afforded the opportunity for additional briefing.

[5]    Defendants' argument that they "never stated that Wheeler had personally viewed any emails between Rich and WikiLeaks" lacks merit, as the Article specifically stated that Plaintiff's investigation showed that there was email communication between the two – and, thus, failed to capture "the substance, the gist, the sting" of Wheeler's actual statements.  *Masson*, 501 U.S. at 516-17; *see also Wender v. Silberling*, No. 160505/13, 2014 WL 3350213, at *2 (N.Y. Sup. Ct. July 8, 2014) (observing that "a written statement falsely accusing a person of lying in a matter of public interest is libelous per se").

18

both:  (i) "I have a source inside the police department that has looked me straight in the eye and said, 'Rod, we were told to stand down on this case' . . . .  I don't think it comes from the Chief's office, but I do believe there is a correlation between the Mayor's office and the DNC"; and (ii) "[A] high ranking official at the DNC . . . called the Rich family wanting to know why I was snooping around the police department."  *Id.*

As an initial matter, neither statement upon which the Fox Defendants rely makes any reference to the "Clinton team" blocking his murder investigation from going forward, and any reference to the Clinton team in the Article is therefore patently false and defamatory. Furthermore, Wheeler did ***not*** claim that any order to "stand down" came from "the DC Government" or the DNC – rather, at most, he stated that he believed there was "a correlation between the Mayor's office and the DNC."  Likewise, questions from a "high ranking official at the DNC" regarding why Wheeler was "snooping around the police department" do not in any way suggest an attempt to impede or otherwise block the investigation of Seth Rich's murder. Therefore, even if the Court were to consider the improperly cited extraneous material in deciding the instant motion to dismiss, the Fox Defendants' arguments do not support a conclusion that the defamatory statements at issue in this action were true.  *See, e.g.*, *Palin v. New York Times Co.*, --- F. Supp. 3d ---, 2017 WL 3712177, at *5-6 (S.D.N.Y. Aug. 23, 2017).

Finally, the Fox Defendants' reliance on *Lish v. Harper's Magazine Found.*, 807 F. Supp. 1090 (1992) in support of their argument that "a misquotation that is itself 'representative' of plaintiff's views is not actionable as defamation *per se*," *see* Fox Defs.' Mem. at 21, is misplaced.[6]  In *Lish*, the plaintiff did not dispute that the allegedly defamatory statements were

---

[6]      *Lish* is procedurally distinguishable, as it is a decision of the court's findings of facts and conclusions of law following a bench trial.  807 F. Supp. at 1091.  Furthermore, although the plaintiff asserted a claim for defamation, the main "question whether the publication constitute[d] fair use [was] the principal issue in the case."  *Id.* at 1093.

his own words; rather, he argued that his words were "severely edited," rendering them susceptible to a meaning other than that which he initially intended.  807 F. Supp. at 1108.  In contrast, Plaintiff's allegations establish that the Fox Defendants' defamatory statements were **_not_** Plaintiff's own words; rather, they fabricated quotations that Wheeler did not actually state, thereby subjecting him to professional disrepute.  *See* Am. Compl. ¶¶ 129-34, 146, 164-73.  To that end, whereas the plaintiff in *Lish* testified that he personally believed that the statements at issue made him appear less credible, the court specifically observed that the plaintiff "presented no evidence whatever of damage to his reputation."  807 F. Supp. at 1108.  In contrast, Wheeler alleges that potential clients and others within his industry view him as less credible due to the defamatory statements.  *See, e.g.*, Am. Compl. ¶¶ 167-69.  As Plaintiff disputes having made the defamatory statements in the Article in the first instance, and does not merely claim that his words were distorted or otherwise "severely edited," *Lish* is distinguishable, and does not support a finding that the Fox Defendants' defamatory statements were substantially true.

### E.       Wheeler Did Not Consent to Publication of the Defamatory Statements

Finally, the Fox Defendants incorrectly argue that their defamatory statements published in the Article are not actionable because Plaintiff's "allegations establish that he consented to publication of the quotes he now challenges."  *See* Fox Defs.' Mem. at 21-23.  According to the Fox Defendants, "Wheeler acknowledges that Zimmerman emailed him several drafts of the Article on May 15, the day before it was published."  *Id.* at 22.  The Fox Defendants claim that "[t]hose drafts contained the quotes that Wheeler challenges here."  *Id.*  However, Plaintiff specifically alleges that he did not review the drafts sent to him on May 15, 2017.

Moreover, the case law upon which the Fox Defendants rely in support of their argument that Plaintiff consented to publication of the defamatory statements in the Article is

distinguishable.  For example, in *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191 (2d Cir. 2015), the Second Circuit examined when "a person's intentional eliciting of a statement she expects will be defamatory can constitute her consent to the making of the statement," ultimately holding that the district court erred in granting summary judgment with respect to the plaintiff's claim for slander because ***questions of fact existed*** regarding whether the plaintiff "consented to the elicited statements."  779 F.3d at 201-02.  Unlike *Sleepy's LLC*, Plaintiff clearly did not elicit the defamatory statements, as the Butowsky and the Fox Defendants inserted them into the Article without Wheeler's knowledge.  *See* Am. Compl. ¶¶ 112-30.  To that end, *Aggarwal v. Puranmalka*, 149 A.D.2d 493, 539 N.Y.S.2d 802 (2d Dep't 1989), is similarly inapplicable, as the court observed that "[t]here was testimony elicited that the plaintiff rather than the defendant had made two people involved aware of the allegedly libelous statements about her."  149 A.D.2d at 494.  Finally, in *Teichner v. Bellan*, 7 A.D.2d 247 (4th Dep't 1959), the Appellate Division specifically observed that "the problem in this case should [not] be dealt with . . . as one of 'no publication' or of consent, but rather as one of qualified privilege," and ultimately held that "[t]he issue of qualified privilege must ***await determination upon the trial.***"  7 A.D.2d at 253 (emphasis added).

Based upon the foregoing, Plaintiff's allegations do not permit a determination that he consented to publication of the defamatory statements at issue in this action, and the Fox Defendants' argument to the contrary lacks merit and does not support their motion to dismiss.

## III.    PLAINTIFF STATES A CLAIM AGAINST TWENTY-FIRST CENTURY FOX

The Fox Defendants further argue that, even assuming Plaintiff states a claim for defamation against Fox News and Zimmerman, his "defamation claims against Twenty-First Century Fox – Fox News's ultimate parent company – must be dismissed for the additional

reason that the Amended Complaint does not allege that it engaged in any tortious conduct." *See* Fox Defs.' Mem. at 24-25.  However, it is well established that a parent corporation may be held liable for the tortious conduct of a subsidiary company and its employees where "it can be shown that the parent's control over the subsidiary disregards its corporate independence." *Horowitz v. Aetna Life Ins.*, 148 A.D.2d 584, 586 (2d Dep't 1989); *see also Broxmeyer v. United Capital Corp.*, 79 A.D.3d 780, 784 (2d Dep't 2010) (allowing a claim against the corporate parent to proceed where questions of fact existed "as to [the corporate parent's] dominion and control over [its subsidiary]").  Relevant here, New York courts specifically allow for defamation claims to proceed against corporate parent companies.  *See, e.g.*, *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955 (DLC), 2003 WL 21136096, at *2 (S.D.N.Y. May 15, 2003).

Contrary to Defendants' arguments, the Amended Complaint is replete with allegations demonstrating that Twenty-First Century Fox is liable for the Fox Defendants' defamatory statements.  To that end, Plaintiff alleges specific facts demonstrating Twenty-First Century Fox's role in the drafting and publication of the defamatory Article, including, *inter alia*:

- Zimmerman reported to her supervisors who work for both Twenty-First Century Fox and Fox News during the drafting and publication of the Article, including reporting to Deputing Managing Editor of foxnews.com, Greg Wilson, and Managing Director of foxnews.com, Refet Kaplan.  *See* Am. Compl. ¶¶ 36, 42, 56, 65, 70.

- Butowsky remained in close contact and performed work for officials from Twenty-First Century Fox while drafting and publishing the Article.  *Id.* at ¶¶ 37, 43, 56, 65.

- Butowsky and Zimmerman met with Fox executives in New York City to discuss the substance and content of the Article prior to its publication.  *Id.* at ¶ 58.

- Following publication of the defamatory Article, the Company executives "summoned Butowsky to 1211 Avenue of the Americas to personally meet and discuss the Article with several Fox executives."  *Id.* at ¶ 63.

- After Fox News retracted the defamatory Article, "a conference call took place" between various executives and Zimmerman "to discuss the false statements attributed to Mr. Wheeler," during which time "Zimmerman admitted that a number

of draft versions of the Article were sent to Mr. Wheeler that did not include the false quotes." *Id.* at ¶ 152.

Furthermore, as the Fox Defendants concede, the Amended Complaint cures any infirmities regarding Zimmerman's status as an employee for Twenty-First Century Fox, as Plaintiff alleges that Zimmerman is an employee of *both* Fox News and Twenty-First Century Fox. *See* Fox Defs.' Mem. at 25; *see also* Am. Compl. ¶ 36. These allegations, accepted as true, support an inference that Twenty-First Century Fox was intricately involved in the publication of the defamatory statements at issue in this action, and are therefore sufficient to state a claim against Twenty-First Century Fox for defamation. *See, e.g.*, *Brown v. Daikin Am. Inc.*, 756 F.3d 291, 227 (2d Cir. 2014) (holding that the defendant was subject to liability where it "had a role in an amount of participation that [was] sufficient and necessary to the total employment process"); *Haugh*, 2003 WL 21136096, at *2 (permitting the plaintiff to assert a defamation claim against a parent company); *see also Bouveng v. NYG Capital LLC*, No. 14 Civ. 5474 (PGG), 2015 WL 3503947, at *13 (S.D.N.Y. June 2, 2015) (allowing defamation claim to proceed where the speaker made defamatory statements in his professional role as CEO); *Conniff v. Dodd, Mead & Co.*, 593 F. Supp. 266, 271 (S.D.N.Y. 1984) (allowing defamation claim against parent corporation to proceed where it was responsible for defamatory statements). Therefore, the Fox Defendants' motion to dismiss Plaintiff's claims of defamation against Twenty First Century Fox should be denied.

**CONCLUSION**

For the reasons set forth herein, the Fox Defendants' motion to dismiss Plaintiff's Amended Complaint should be denied in its entirety.

Dated: January 9, 2018
      New York, New York           Respectfully submitted,

                           **WIGDOR LLP**

                           By: _____
                               Douglas H. Wigdor
                               Jeanne M. Christensen
                               Michael J. Willemin
                               Kenneth D. Walsh

                           85 Fifth Avenue
                           New York, NY  10003
                           Telephone:  (212) 257-6800
                           Facsimile:   (212) 257-6845
                           dwigdor@wigdorlaw.com
                           jchristensen@wigdorlaw.com
                           mwillemin@wigdorlaw.com
                           kwalsh@wigdorlaw.com

                           *Counsel for Plaintiff*

24