**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ROD WHEELER,                                     :
                                                 :
                                 Plaintiff,       :       Civil Action No.: 17-cv-05807 (GBD)
                                                 :
                   v.                            :
                                                 :
TWENTY-FIRST CENTURY FOX, INC., FOX              :
NEWS NETWORK LLC, MALIA                          :
ZIMMERMAN, in her individual and professional    :
capacities and ED BUTOWSKY, in his individual    :
and professional capacities,                     :
                                                 :
                                 Defendants.      :
-------------------------------------------------------------X

**PLAINTIFF ROD WHEELER'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ED BUTOWSKY'S MOTION TO DISMISS PLAINTIFF'S AMENDED
<u>COMPLAINT</u>**

**WIGDOR LLP**

Douglas H. Wigdor, Esq.
Jeanne M. Christensen, Esq.
Michael J. Willemin, Esq.
Kenneth D. Walsh, Esq.

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTS AND BACKGROUND ............................................................................ 1

I.      ALLEGATIONS OF THE AMENDED COMPLAINT ................................................ 1

      A.    The Parties ........................................................................................................ 1

      B.    Butowsky and the Rich Family Employ Plaintiff to Investigate Seth Rich's Murder ................................................................................................................ 3

      C.    Publication of the Defamatory Article .............................................................. 3

      D.    Retraction and Aftermath .................................................................................. 5

II.     PROCEDURAL BACKGROUND ................................................................................. 6

     LEGAL ARGUMENT ................................................................................................... 7

I.      MOTION TO DISMISS LEGAL STANDARD ........................................................... 7

II.     THIS COURT HAS PERSONAL JURISDICTION OVER BUTOWSKY ..................... 8

      A.    Legal Standard .................................................................................................. 8

      B.    Butowsky is Subject to New York's Long-Arm Jurisdiction Statue ..................... 9

           i.    Butowsky Purposefully Availed Himself of the Privilege of Conducting Business Within New York ................................................................10

           ii.    Plaintiff's Claims Against Butowsky Are Related to Butowsky's Conduct in New York ......................................................................................... 12

           iii.   Butowsky's Arguments Lack Merit ................................................... 13

      C.    Butowsky is Subject to General Personal Jurisdiction in New York ................... 14

      D.    Targeted Jurisdiction Discovery is Appropriate ............................................... 16

III.      PLAINTIFF STATES A CLAIM FOR DEFAMATION AGAINST BUTOWSKY........18

 A. Defamation Legal Standard ................................................................................18

 B. Butowsky Both Contributed and Personally Made Statements That Were
  Defamatory *Per Se* ..............................................................................................19

  i. Butowsky Made Defamatory Statements About Plaintiff in the Article ...19

  ii. Butowsky Made Defamatory Statements About Plaintiff on Twitter........21

  iii. Plaintiff's Allegations Support an Inference That He Suffered Special
   Damages.............................................................................................................22

  iv. Plaintiff's Allegations Support an Inference of Actual Malice ................23

 C. Plaintiff Did Not Consent to Publication of Butowsky's Defamatory
  Statements.............................................................................................................24

  i. Butowsky Relies on Impermissible Material in Support of His
   Argument that Plaintiff Consented to Publication of the Defamatory
   Article .............................................................................................................24

  ii. Plaintiff Did Not Consent to Publication of the Defamatory Article.........26

  iii. Plaintiff Did Not Consent to Publication of the Defamatory Tweets ........27

 D. Butowsky's Defamatory Statements Were False................................................27

  i. Butowsky Again Impermissibly Relies Upon Extraneous Materials ........27

  ii. The Defamatory Statements Were Not True ..............................................28

CONCLUSION.............................................................................................................29

## **Cases**

*Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC,*
  595 F. Supp. 2d 618 (D. Md. 2009) ................................................................ 18

*Amelkin v. Commercial Trading Co.,*
  23 A.D.2d 830, 259 N.Y.S.2d 396 (1st Dep't 1965).......................................... 20, 22

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................ 7

*Ava v. NYP Holdings, Inc.,*
  64 A.D.3d 407, 885 N.Y.S.2d 247 (1st Dep't 2009)........................................... 22

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................ 7

*Best Van Lines v.  Walker,*
  490 F.3d 239 (2d Cir. 2007)........................................................................ 9

*Brown v. Mack,*
  185 Misc. 368, 56 N.Y.S.2d 910 (N.Y. Sup. Ct. 1945) .................................... 19, 20

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)........................................................................ 28

*Chloe v. Queen Bee of Beverly Hills, LLC,*
  616 F.3d 158 (2d Cir. 2010) ....................................................................... 9, 14

*Church of Scientology Int'l v. Time Warner, Inc.,*
  806 F. Supp. 1157 (S.D.N.Y. 1992) .............................................................. 7

*Courtenay Commc'ns Corp. v. Hall,*
  334 F.3d 210 (2d Cir. 2003) ....................................................................... 8

*Daimler AG v. Bauman,*
  --- U.S. ---, 134 S. Ct. 746 (2014) .............................................................. 8

*Daniels v. Alvarado,*
  No. 03 Civ. 5832, 2004 WL 502561 (E.D.N.Y. Mar. 12, 2004)............................. 22

*Eades v. Kennedy, PC Law Offices,*
  799 F.3d 161 (2d Cir. 2015)........................................................................ 10

*Edward B. Beharry & Co., Ltd. v. Bedessee Imports, Inc.,*
  No. 09 Civ. 77 (DLI)(JMA), 2010 WL 1223590 (E.D.N.Y. Mar. 23, 2010).......... 10, 12, 13, 14

*Elias v. Rolling Stone LLC*,
  872 F.3d 97 (2d Cir. 2017) ........................................................................................... 18

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002) ...................................................................................... 18, 19

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006) ............................................................................... 8, 24, 25

*Frangipani v. HBO*,
  No. 08 Civ. 5675 (GBD), 2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010) ..................... 7

*Gersbacher v. City of New York*,
  134 F. Supp. 3d 711 (S.D.N.Y. 2015) ................................................................... 25, 28

*Golden Archer Investments, LLC v. Skynet Fin. Sys.*,
  No. 11 Civ. 3673 (RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ......................... 11

*Goodyear Dunlop Tire Orgs., S.A. v. Brown*,
  564 U.S. 915, 131 S. Ct. 2846 (2011) ................................................................... 14, 15

*Hearst Corp. v. Goldberger*,
  No. 96 Civ. 3620 (PKL)(AJP), 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997) ............... 13

*Herlihy v. Metro. Museum of Art*,
  214 A.D.2d 250 633 N.Y.S.2d 106 (1st Dep't 1995) ................................................. 19

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
  763 F.2d 55 (2d Cir. 1985) ......................................................................................... 17

*Hutson v. Notorious B.I.G., LLC*,
  No. 14 Civ. 2307 (RJS), 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) ......... 28

*Idema v. Wager*,
  120 F. Supp. 2d 361 (S.D.N.Y. 2000) ....................................................................... 22

*In re Bayou Hedge Fund Inv. Litig.*,
  472 F. Supp. 2d 534 (S.D.N.Y. 2007) ....................................................................... 18

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003) ....................................................................................... 16

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310, 66 S. Ct. 154 (1945) ...................................................................... 14, 15

*Ives v. Guilford Mills, Inc.*,
   3 F. Supp. 2d 191 (N.D.N.Y. 1998) ............................................................. 18

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*,
   160 F. Supp. 2d 722 ...................................................................................... 17

*Johns v. Town of East Hampton*,
   942 F. Supp. 99 (E.D.N.Y. 1996) ................................................................... 24

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991) ........................................................................... 24

*Lebron v. Encarnacion*,
   --- F. Supp. 3d ---, 2017 WL 2352856 (E.D.N.Y. May 31, 2017) .................... 14

*Leon v. Smuckler*,
   992 F. Supp. 2d 179 (E.D.N.Y. 2014) ............................................................ 16

*Licci v. Lebenese Canadian Bank*,
   673 F.3d 50 (2d Cir. 2012) ............................................................................... 9

*Lilakos v. New York City*,
   No. 14 Civ. 5288 (PKC)(LB), 2017 WL 4898193 n.5 (E.D.N.Y. Oct. 25, 2017) .................. 25

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496, 111 S. Ct. 2419 (1991) ..................................................... 20, 22

*Modica v. Westchester Rockland Newspapers, Inc.*,
   54 Misc. 2d 1086 (N.Y. Supp. Ct. 1967) ........................................................ 11

*Montgomery v. Minarcin*,
   263 A.D.2d 665 (3d Dep't 1999) ..................................................................... 11

*New York Times Co. v. Sullivan*,
   376 U.S. 254, 84 S. Ct. 710 (1964) ................................................................ 23

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
   102 F.3d 660 (2d Cir. 1996) ........................................................................... 24

*Paterno v. Laser Spine Inst.*,
   24 N.Y.3d 370 (2014) ....................................................................................... 9

*Penguin Grp. (USA), Inc. v. Am. Buddha*,
   609 F.3d  (2d Cir. 2010) ................................................................................... 8

*Present v. Avon Prods., Inc.*,
   253 A.D.2d 183, 687 N.Y.S.2d 330 (1st Dep't 1999)............................................... 23

*Regenlab USA LLC v. Estar Techs. Ltd.*,
   No. 16 Civ. 08771 (ALC), 2017 WL 3601304 (S.D.N.Y. Aug. 17, 2017).............................. 16

*Reich v. Lopez*,
   858 F.3d 55 (2d Cir. 2017) ..................................................................... 15

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 ................................................................................. 18

*Ryder Truck Rental, Inc. v. Swish Maint. Ltd.*, No. 09 Civ. 842,
   2009 WL 3381679 (N.D.N.Y. Oct. 16, 2009)................................................... 16, 17

*Scheuer v. Rhodes*,
   416 U.S. 232, 94 S. Ct. 1683 (1974) ......................................................... 7, 8

*Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
   29 N.Y.3d 292 (2017) ........................................................................ 9, 10

*Skrodzki v. Marcello*,
   810 F. Supp. 2d 501 (E.D.N.Y. 2011)........................................................... 10

*Sokolow v. Palestine Liberation Org.*,
   583 F. Supp. 2d 451 (S.D.N.Y. 2008)........................................................ 17, 18

*Speedmark Transp., Inc. v. Mui*,
   778 F. Supp. 2d 439 (S.D.N.Y. 2011) ........................................................... 8

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28, 987 N.Y.S.2d 37 (1st Dep't 2014).............................................. 18

*Supan v. Michelfeld*,
   97 A.D.2d 755, 468 N.Y.S.2d 384 (2d Dep't 1983) ............................................. 23

*Tannerite Sports, LLC v. NBC Universal Media, LLC*,
   135 F. Supp. 3d 219 (S.D.N.Y. 2015).......................................................... 9

*Theodore v. News Syndicate Co.*,
   270 N.Y. 603 (1936) ....................................................................... 20, 22

*Thomas v. G2 FMV, LLC*,
   147 A.D.3d 700, 48 N.Y.S.3d 358 (1st Dep't 2017)............................................. 26

*Treppel v. Biovail Corp.*,
    No. 03 Civ. 3002, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005)............................................ 21

*Troma Entm't, Inc. v. Centennial Pics. Inc.*,
    729 F.3d 215 (2d Cir. 2013) ...................................................................................................... 8

*Weber v. Align Tech, Inc.*,
    No. 07 Civ. 535 (GTS), 2010 WL 2265418 n.1 (N.D.N.Y. June 2, 2010) ................................. 7

*Weldy v. Piedmont Airlines, Inc.*,
    985 F.2d 57 (2d Cir. 1993) ...................................................................................................... 18

*Wolf Street Supermarkets, Inc. v. McPartland*,
    108 A.D.2d 25, 487 N.Y.S.2d 442 (4th Dep't 1985) ............................................................... 23

*World Wrestling Federation Entm't, Inc. v. Bozell*,
    142 F. Supp. 2d 514 (S.D.N.Y. 2001) ...................................................................................... 11

## <u>Other Authorities</u>

Fed. R. Civ. P. 4(k)(1)(A)..................................................................................................................... 8

N.Y. C.P.L.R. 302(a)(1)................................................................................................................. 9, 10

Plaintiff submits this memorandum of law in opposition to Defendant Ed Butowsky's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

"The story is up or will be up very early tomorrow morning. . . . ***I'm actually the one who's been putting this together but as you know I keep my name out of things because I have no credibility.*** One of the big conclusions we need to draw from this is that the Russians did not hack our computer systems and ste[a]l emails and there was no collusion like Trump with the Russians."

> -- Defendant Ed Butowsky in a May 15, 2017 email to various Fox News producers and on air talent located in New York State (emphasis in Amended Complaint).

Despite Plaintiff's allegations that Butowsky was intricately involved in drafting and publishing a defamatory article falsely attributing two quotations to Plaintiff, and that his unlawful conduct involved extensive interactions with and connections to New York, Butowsky seeks dismissal of the Amended Complaint based on his self-serving assertions that he had nothing to do with the article or New York.

For the reasons set forth herein, Butowsky's motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) should be denied in its entirety.

## RELEVANT FACTS AND BACKGROUND

### I.      ALLEGATIONS OF THE AMENDED COMPLAINT

#### A.      The Parties

Plaintiff Rod Wheeler ("Plaintiff" or "Wheeler") is a former Washington, D.C. homicide detective and currently works in the private sector as a private investigator. *See* Am. Compl. ¶¶ 6, 39. Although Wheeler has appeared on Fox News Network LLC ("Fox News") programs for more than a decade on a "per appearance basis" to comment on local and national crime stories, his primary profession was "working on private investigations and providing individuals and businesses with security consulting services." *Id.* at ¶¶ 39, 98. Defendant Malia Zimmerman

1

("Zimmerman") is an investigative reporter for Fox News, which is a wholly owned subsidiary of Twenty-First Century Fox, Inc. ("21CF", and together with Fox News, "Fox"). *Id.* at ¶¶ 41-42, 62. In her role as an investigative journalist, Zimmerman regularly reported to Fox News editors, including Greg Wilson, the Deputy Managing Editor of foxnews.com and Refet Kaplan, the Managing Director of foxnews.com, both of whom work at Fox News's headquarters located at 1211 Avenue of the Americas, New York, New York. *Id.* at ¶ 42. Defendant Ed Butowsky ("Butowsky") is a self-described "internationally known financial advisor," who was a vocal supporter of President Donald Trump, and an outspoken critic of Hillary Clinton, during the 2016 Presidential election. *Id.* at ¶¶ 5, 43. Butowsky has regularly and frequently performed work for Fox News, including appearing on Fox News television programs and writing articles published by Fox News. *Id.* at ¶¶ 43, 47-49.

In early 2017, Butowsky enlisted Plaintiff's services to investigate the July 10, 2016 murder of Democratic National Committee ("DNC") staffer Seth Rich ("Rich"). *Id.* at ¶¶ 77, 82-83. Although police had determined that Rich was murdered during the course of a botched robbery, Butowsky sought to establish that a Democratic operative had murdered Rich because Rich – and not Russian hackers – leaked approximately 20,000 DNC emails that WikiLeaks published during the 2016 Presidential primary race. *Id.* at ¶¶ 75, 77, 84-85. By shifting the blame from Russia to Rich, Butowsky sought, in his own words, to "help put to bed speculation that President Trump colluded with Russia in an attempt to influence the outcome of the Presidential election." *Id.* at ¶ 2. In an effort to lend support to this blame-shifting theory, in a May 16, 2017 article (the "Article"), Zimmerman, working with Butowsky and under the supervision of her editors at Fox News, falsely attributed two fabricated quotations to Plaintiff, thereby destroying his reputation as an objective, credible and intelligent investigator with

integrity, and ultimately precluding him from appearing on Fox News as a paid contributor.  *Id.*
at ¶¶ 123-34, 164.

      **B.**     **Butowsky and the Rich Family Employ Plaintiff to Investigate Seth Rich's**
              **Murder**

      On February 23, 2017, Butowsky sent Wheeler a text message stating that they had
"many mutual friends" and that he was "looking for some assistance on something that happened
in Washington . . . ." *Id.* at ¶ 82.  Plaintiff called Butowsky, who told Plaintiff that he wished to
"enlist Mr. Wheeler to conduct an investigation into the Seth Rich murder." *Id.* at ¶ 83.
According to Butowsky, the Rich family sought to engage an investigator and "Butowsky had
agreed to foot the bill." *Id.* Shortly thereafter, Butowsky introduced Plaintiff to the Rich family.
*Id.* at ¶ 93.  Thereafter, Plaintiff had multiple conversations with the Rich family, which resulted
in the execution of a written agreement on March 14, 2017 (the "Rich Family Agreement"). *Id.*
at Ex. 1.  Pursuant to the Rich Family Agreement, Plaintiff agreed to engage in an investigation
"with regards to the official police investigation surrounding the death of Seth Rich." *Id.*

      After executing the Rich Family Agreement, Plaintiff conducted his own investigation of
the Rich murder, including interviewing Rich's relatives, co-workers and friends, reviewing
evidence that was available to him through the Washington, D.C. police department and drafting
contemporaneous notes that would eventually assist in a final report of his investigation.  *Id.* at ¶
102.

      **C.**     **Publication of the Defamatory Article**

      As Plaintiff investigated Rich's murder, Butowsky and Zimmerman kept in contact with
him, and, on May 11, 2017, Zimmerman sent Plaintiff and Butowsky a draft of a story regarding
the Seth Rich murder.  *Id.* at ¶¶ 105, 113.  The May 11, 2017 draft did not contain any quotations
from Wheeler to the effect that Rich had sent any emails to WikiLeaks, nor did it quote Wheeler

as saying that the DNC, Democratic Party or Clintons were engaged in a cover-up of Rich's murder. *Id.* at ¶ 113. On May 15, 2017, Zimmerman emailed Plaintiff, stating that her article would be published immediately. *Id.* at ¶ 119. Wheeler told Zimmerman that he was travelling and was therefore unable to review a draft that she had sent. *Id.* at ¶ 120. Plaintiff never informed Zimmerman or anyone else that his investigation revealed that Rich sent any emails to WikiLeaks or that the DNC, Democratic Party or Clintons were engaged in a cover-up of Rich's murder. *Id.* at ¶ 121. Nevertheless, on May 16, 2017, Fox News published the Article, wherein Zimmerman, working together with Butowsky and under the supervision of her editors at Fox News, falsely attributed the following fabricated quotations to Plaintiff, for which he received no compensation and which were entirely unrelated to his Contributor Agreement:

- "'My investigation up to this point shows there was some degree of email exchange between Seth Rich and WikiLeaks,' said Wheeler."

- "My investigation shows someone within the DC government, Democratic National Committee or Clinton team is blocking the murder investigation from going forward' . . . 'That is unfortunate. Seth Rich's murder is unsolved as a result of that.'"

*Id.* at ¶¶ 126-32.

Shortly after the Article was published, Plaintiff demanded an explanation from Butowsky regarding the false statements. Butowsky told Plaintiff that the statements "were included because that is the way the President wanted the article." *Id.* at ¶¶ 138-44. Furthermore, although Zimmerman initially told Wheeler that she would have the statements removed from the Article, later the same day, Zimmerman informed Plaintiff that she had "been instructed by her bosses at Fox to leave the false quotes in the story." *Id.* at ¶ 140. On May 23, 2017, Fox News ultimately retracted the Article, stating that it "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting." *Id.* at ¶ 150. However, Fox News neither admitted that it misquoted Plaintiff nor otherwise cleared his name, despite the fact

that both Butowsky and Zimmerman have admitted that Wheeler was falsely quoted.  *Id.* at ¶ 151.

Indeed, both Zimmerman and Butowsky acknowledged that Plaintiff never made the statements included in the Article.  Specifically, when Plaintiff reminded Zimmerman that "much of the information [in the Article] did not come from [him]," Zimmerman admitted, "***Not the part about the emails.  Not the part about, I mean about the connection to WikiLeaks*** . . . ." *Id.* at ¶ 146 (emphasis in Amended Complaint).  Similarly, Butowsky acknowledged the falsity of the defamatory statements when he told Plaintiff, "***one day you're going to win an award for having said those things you didn't say.***"  *Id.* (emphasis in Amended Complaint).  In another conversation, Butowsky read, from the Article, the quotation falsely attributed to Wheeler: "my investigation up to this point shows that there was some degree of emails exchanged between Seth Rich and Wikileaks."  Butowsky then said, "***Well I know that's not true . . . I've never heard you say that.***"  *Id.* (emphasis in Amended Complaint).  "***If I'm under oath, I would say I never heard him say that***."  *Id.* (emphasis in Amended Complaint).

### D.     Retraction and Aftermath

On May 23, 2017, Fox News retracted the Article, stating that it "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting."  *Id.* at ¶ 150.  However, Fox News neither admitted that it misquoted Plaintiff nor otherwise cleared his name, despite the fact that both Butowsky and Zimmerman have admitted that Wheeler was falsely quoted.  *Id.* at ¶ 151.  As a result of the publication of the defamatory Article, Plaintiff has been exposed to "hostility, contempt, ridicule and professional disgrace," including, *inter alia*:

- The New York Times reported that Mr. Wheeler has given "shifting and contradictory accounts" regarding Seth Rich's connection with WikiLeaks.

- The New York Times reported that "The Rich family regrets hiring Mr. Wheeler and has objected to his many public comments" and that "Aaron Rich, Mr. Rich's brother, said in an email Wednesday that Mr. Wheeler has 'Discredited himself as an objective investigator' and had lost the confidence of the family. He said that the politicization of his brother's death had been 'painful' and 'debilitating.'"

- GQ reported: "Here's how the story unraveled. Wheeler, it turns out, is a verifiable dipshit."

- MSNBC referred to Mr. Wheeler as a "blabbing detective."

- The Washington Post reported that the Rich Family said that Mr. Wheeler had "peddled politicized conspiracy theories."

*Id.* at ¶¶ 166, 186.

Furthermore, following Fox News's retraction of the defamatory Article, Butowsky published two defamatory tweets on Twitter. In his first tweet, Butowsky wrote, "This shows Rod Wheeler has a ***major battle with the truth***. Everyone needs to hear this. He says the precise words he swears he didn't say???" *Id.* at ¶ 179(emphasis added). In his second tweet, Butowsky wrote, "Fox News story was pulled b/c Rod Wheeler said [he] didn't say a quote . . . ***How much did DNC pay him***?" *Id.* at ¶ 175 (emphasis added).

According to Plaintiff, Defendants' publication of the defamatory Article and Butowsky's publication of the defamatory tweets has caused "him severe economic harm, as well as emotional distress." *Id.* at ¶ 154.

## II.   PROCEDURAL BACKGROUND

On August 1, 2017, Plaintiff commenced this action against Defendants alleging claims of defamation *per se* and race, color and ethnicity discrimination in violation of 42 U.S.C. § 1981. *See* Dkt. No. 1. On September 18, 2017, Butowsky filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). *See* Dkt. No. 34. On October 23, 2017, Plaintiff both opposed the Butowsky's motion to dismiss for lack of personal jurisdiction and filed an Amended Complaint, thereby rendering Butowsky's motion to dismiss for failure to

state a claim as moot.[1]   *See* Dkt. Nos. 56, 59.   In the Amended Complaint, Plaintiff pleads additional factual allegations and asserts claims for defamation *per se*, defamation, and defamation *per quod*.   *See* Dkt. No. 56.   On December 1, 2017, Butowsky filed the instant motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).   *See* Dkt. No. 78.   For the reasons set forth herein, Butowsky's motion to dismiss Plaintiff's Amended Complaint should be denied in its entirety.

## LEGAL ARGUMENT

## I.    MOTION TO DISMISS LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must only plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).   A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).   The court must "liberally construe the complaint, accepting the factual allegations as true, and drawing all reasonable inferences in Plaintiff's favor."   *Frangipani v. HBO*, No. 08 Civ. 5675 (GBD), 2010 WL 1253609, at *2 (S.D.N.Y. Mar. 16, 2010); *see also Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992) ("[T]he Court must draw all reasonable inferences in plaintiff's favor.").   The court should deny a motion to dismiss "unless it appears beyond a doubt that the plaintiff can

---

[1]    The Amended Complaint arguably rendered the motion to dismiss for lack of personal jurisdiction as moot as well.   *See Weber v. Align Tech, Inc.*, No. 07 Civ. 535 (GTS), 2010 WL 2265418, at *1 n.1 (N.D.N.Y. June 2, 2010) (acknowledging that the filing of an amended complaint rendered the defendant's motion to dismiss for lack of personal jurisdiction as moot).   However, out of an abundance of caution, Plaintiff opposed the merits of Butowsky's motion pursuant to Fed. R. Civ. P. 12(b)(2) with respect to the allegations set forth in the Amended Complaint.   *See* Dkt. No. 61.

prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974).

Furthermore, it is well established that, "[g]enerally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Therefore, the Second Circuit has observed that "the district court may not consider matters outside the pleadings without converting the motion into a motion for summary judgment." *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003); *see also Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 440 n.1 (S.D.N.Y. 2011) ("The Court declines to consider these extraneous materials and will not convert defendants' motion to dismiss into one for summary judgment, since plaintiffs have not had the opportunity to take discovery from defendants.").

## II.    THIS COURT HAS PERSONAL JURISDICTION OVER BUTOWSKY

### A.    Legal Standard

In deciding a motion to dismiss for lack of personal jurisdiction, a federal court applies the jurisdictional laws of the state in which it sits. *See Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 753 (2014); *see also* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). Where the defendant moves to dismiss for a lack of personal jurisdiction prior to discovery, the plaintiff need only make a "prima facie showing that jurisdiction exists." *Penguin Grp. (USA), Inc. v. Am. Buddha*, 609 F.3d 50, 34-35 (2d Cir. 2010). Therefore, the plaintiff's complaint "will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are legally sufficient allegations of jurisdiction." *Troma Entm't, Inc. v. Centennial Pics. Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation omitted).

**B.**    **Butowsky is Subject to New York's Long-Arm Jurisdiction Statute**

Pursuant to New York's long-arm jurisdiction statute, and in the context of a defamation claim, New York courts "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply services within the state." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting N.Y. C.P.L.R. 302(a)(1)); *see also Tannerite Sports, LLC v. NBC Universal Media, LLC*, 135 F. Supp. 3d 219, 230 (S.D.N.Y. 2015) ("[P]ersonal jurisdiction over a defamation defendant may still be obtained under Section 302(a)(1)'s transaction-of-business prong.").  In determining whether a defendant "transacts business" within the state of New York for purposes of long-arm jurisdiction, "a court must decide (1) whether the defendant 'transacts any business' in New York, and, if so (2) whether this cause of action 'aris[es] from' such a business transaction." *Licci v. Lebenese Canadian Bank*, 673 F.3d 50, 60 (2d Cir. 2012) (quoting *Best Van Lines v.  Walker*, 490 F.3d 239, 246 (2d Cir. 2007)); *see also D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297 (2017) (observing that personal jurisdiction exists if both:  (i) the defendant "purposefully availed itself of the privilege of conducting activities within" New York, and (ii) the plaintiff's claim "arise[s] from that business transaction").

With respect to the first prong of New York's long-arm jurisdiction statute, a non-domiciliary purposefully avails himself of the privilege of conducting business in New York when he "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *D & R Glob. Selections, S.L.*, 29 N.Y.3d at 298 (quoting *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014)).  With respect to the second prong of New York's long-arm jurisdiction statute, a plaintiff's claim is sufficiently related to the

defendant's purposeful transaction with New York where there is "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *D & R Glob. Selections, S.L.*, 29 N.Y.3d at 299 (internal quotation marks omitted).

Even where the defendant never enters New York, a single transaction may be sufficient to invoke jurisdiction if the defendant's activities were purposeful and there is a substantial relationship between the transaction and the plaintiff's claims. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015); *see also Skrodzki v. Marcello*, 810 F. Supp. 2d 501, 509 (E.D.N.Y. 2011) ("Section 302(a)(1) is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, as long as the requisite purposeful activities and the connection between the activities are shown.") (internal quotation omitted).  Relevant here, an allegation that the defendant "contributed to the publication of . . . allegedly defamatory remarks" published in New York is sufficient to confer jurisdiction in New York courts. *See Edward B. Beharry & Co., Ltd. v. Bedessee Imports, Inc.*, No. 09 Civ. 77 (DLI)(JMA), 2010 WL 1223590, at *3 (E.D.N.Y. Mar. 23, 2010).

Plaintiff's allegations, accepted as true, demonstrate both that Butowsky purposefully availed himself of the privilege of conducting business in New York and that Plaintiff's claims are related to Butowsky's business contacts with New York.

          i.      Butowsky Purposefully Availed Himself of the Privilege of Conducting Business Within New York

With respect to the first prong of the long-arm jurisdiction statute, Plaintiff alleges that Butowsky had extensive business dealings with Fox News executives, producers and on-air talent in relation to the publication and promotion of the defamatory Article.  Am. Compl. ¶¶ 43,

47-49, 54-62.  Specifically, Wheeler alleges that Butowsky communicated about the Article with Fox's senior editors in New York, including Greg Wilson and Refet Kaplan, and that those senior editors ultimately made the decision to publish the Article.  *Id.* at ¶¶ 12, 42-43, 59-62. Plaintiff further alleges that, on May 15, 2017, Butowsky sent an email to various New York-based "Fox producers and on air talent, including Steve Doocy, Gavin Hadden, Ainsley Earhardt and Brian Kilmeade," in which Butowsky stated that he was "actually the one who's been putting this together."  *Id.* at ¶ 123.  The same email also directed these producers and on air talent with regard to how they should cover the information contained in the Article during television programs broadcast from New York.

As a result of the actions he took to get the Article drafted and published, Butowsky has purposefully availed himself of the privilege of conducting business in New York.  *See World Wrestling Federation Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 533 (S.D.N.Y. 2001) (holding that the defendant was subject to personal jurisdiction under New York's long-arm statute where he "took advantage of New York's unique resources in the entertainment industry") (internal quotation omitted); *Montgomery v. Minarcin*, 263 A.D.2d 665, 667 (3d Dep't 1999) (holding that a defamatory news report broadcast in New York supported a transaction of business within the state); *Modica v. Westchester Rockland Newspapers, Inc.*, 54 Misc. 2d 1086, 1087 (N.Y. Supp. Ct. 1967) (holding that the defendant was subject to personal jurisdiction under New York's long-arm statute where a newspaper article he authored was published in New York); *see also Golden Archer Investments, LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673 (RJS), 2012 WL 123989, at *4 (S.D.N.Y. Jan. 3, 2012) (observing that "jurisdiction is appropriate when . . . communications allow the defendant to participate in the transaction itself").  Therefore, Plaintiff's allegations are sufficient to satisfy the first prong of New York's long-arm statute.

      ii.     Plaintiff's Claims Against Butowsky Are Related to Butowsky's Conduct <u>in New York</u>

Plaintiff's allegations are also sufficient to satisfy the second prong of the long-arm jurisdiction standard, as Wheeler's claims in this action are related to Butowsky's extensive business dealings in New York.  As discussed above, Plaintiff alleges that Butowsky facilitated publication of the defamatory Article, as he remained in close contact with Fox News executives, editors and on-air talent with respect to Wheeler's investigation and the ultimate publication of the Article.  *See* Am. Compl. ¶¶ 54-62.  To that end, Wheeler specifically alleges that Butowsky informed Fox News producers in New York that he was responsible for "putting this together," and that in the days leading up to the Article's publication, he remained in contact with individuals at Fox News in New York in an effort to have the Article published.  *Id.* at ¶ 123.  Indeed, at all times, Butowsky acted in concert with Zimmerman to draft, edit and finalize the Article.  *Id.* at ¶¶ 54-62.  Furthermore, after Wheeler complained about the defamatory Article being published, Fox News summoned Butowsky to its headquarters in New York to meet with several Fox News executives, further suggesting that Butowsky played an integral role in the Article's initial publication.  *Id.* at ¶ 63.

As Butowsky's extensive dealings with individuals in New York ultimately resulted in the publication of the defamatory Article, Plaintiff's allegations are sufficient to satisfy the second prong of New York's long-arm jurisdiction statute.  *See Edward B. Beharry & Co., Ltd.*, 2010 WL 1223590, at *3 (holding that the plaintiff's allegations were sufficient to support an inference of personal jurisdiction where the plaintiff "allege[d] that defendant contributed to the publication of the allegedly defamatory remarks in *The Caribbean New Yorker*, which is distributed in New York").

iii.   Butowsky's Arguments Lack Merit

Butowsky argues that "[a]ssertions that the article in question was published over the Internet gives rise to jurisdiction in New York over Mr. Butowsky, a Texas resident, do not hold any weight."  *See* Def.'s Mem. at 13.  This is a strawman argument that misses the mark. Plaintiff does not merely allege jurisdiction based on the fact that the defamatory Article was published over the Internet, but rather, his allegations demonstrate that Butowsky was extensively involved in coordinating, editing, and publishing the defamatory Article, and that such actions occurred in substantial part in New York.  *See* Am. Compl. ¶¶ 43, 47-49, 54-62; *see also Edward B. Beharry & Co., Ltd.*, 2010 WL 1223590, at *3.  To that end, although Butowsky argues that "[o]ther courts are in solid agreement" that publication on the Internet does not give rise "to purposeful availment with the forum state," he fails to cite a ***single*** case actually supporting that proposition.  *See* Def.'s Mem. at 14.  In any event, the proposition, if supported, would be irrelevant.  Again, Wheeler does not rely solely on the fact that the Article was published on the internet.

The case law upon which Butowsky actually does rely in support of his argument that he did not purposefully avail himself in New York is readily distinguishable and does not support his argument.  For example, in *Hearst Corp. v. Goldberger*, No. 96 Civ. 3620 (PKL)(AJP), 1997 WL 97097, at *11 (S.D.N.Y. Feb. 26, 1997), the court held that publishing a website that was "analogous to an advertisement in a national publication . . . [did] not constitute sufficient contacts with New York to provide the Court with personal jurisdiction" over the plaintiff. However, in contrast to *Hearst Corp.*, and as discussed herein, Butowsky did not merely assist in disseminating an article that was read in New York.  To the contrary, Plaintiff alleges that Butowsky had an extensive pre-existing business relationship with Fox News, and that he

regularly communicated with Fox News in New York with respect to the publication of the defamatory Article in this action.  *See* Am. Compl. ¶¶ 43, 47-49, 56-62.

In sum, Butowsky's emphasis on the fact that the Article was published online and in New York is either an attempt to confuse the Court as to Plaintiff's claimed basis for jurisdiction or demonstrates a fundamental misunderstanding of the basis for this Court's jurisdiction, as Plaintiff alleges that Butowsky played an integral role in the actual drafting and publication process of the Article, and that actions he took in doing so were connected to New York (rather than merely that the article was published in New York).  *Id.* at ¶¶ 112-44.  These allegations, accepted as true, are sufficient to support an inference that Butowsky transacted businesses within the state of New York for purposes of New York's long-arm jurisdiction statute.  *See Edward B. Beharry & Co., Ltd.*, 2010 WL 1223590, at *3.  Therefore, Butowsky's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should be denied.

### C.    Butowsky is Subject to General Personal Jurisdiction in New York

Even if Butowsky was not subject to specific personal jurisdiction in New York pursuant to New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") 302(a)(1), Plaintiff plausibly alleges that Butowsky is subject to general jurisdiction in the state of New York pursuant to N.Y. C.P.L.R. 301 as a result of his extensive and ongoing dealings in New York.  General jurisdiction "permits a court to adjudicate any cause of action against the defendant, wherever arising, and whoever the plaintiff."  *Lebron v. Encarnacion*, --- F. Supp. 3d ---, 2017 WL 2352856, at *2 (E.D.N.Y. May 31, 2017) (quoting *Chloe*, 616 F.3d at 164).  Under N.Y. C.P.L.R. 301, non-domiciliaries are subject to general personal jurisdiction in New York "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state."  *Goodyear Dunlop Tire Orgs., S.A. v. Brown*, 564 U.S. 915, 919, 131

S. Ct. 2846 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S. Ct. 154 (1945)); *see also Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (observing that general jurisdiction exists where "an individual's contacts with a form [are] so extensive as to support general jurisdiction notwithstanding domicile elsewhere").

Plaintiff's allegations are sufficient to support an inference that Butowsky is subject to general jurisdiction pursuant to N.Y. C.P.L.R. 301 as a result of his extensive contacts with New York. According to Wheeler, Butowsky is an "internationally known financial advisor" who advises clients throughout the United States, including in New York. *See* Am. Compl. ¶ 43. Plaintiff further alleges that Butowsky "has clients that reside in New York, and for purposes of his private consulting, Butowsky consults with and retains the services of financial experts who reside and work out of New York, New York." *Id.* at ¶ 44. Indeed, Butowsky specifically boasts that he "works for wealthy individuals, including 'top athletes' and 'celebrities' throughout the United States, as well as "'Wall Street based' financial experts." *Id.* at ¶ 45. Furthermore, Butowsky "founded an exclusive investment club for athletes throughout the U.S.," through which he "advertises that his 'team' consists of 'research analysts, venture capital investment professionals and private equity experts . . . from Wall Street including institutional investors, all-star analysts, venture capitalists and investment bankers." *Id.* at ¶¶ 45-46.

In addition to his financial services business, Plaintiff further alleges that Butowsky has worked extensively with Fox News, and has "appeared on countless Fox programs, all of which are produced and aired through Fox's headquarters" in New York. *Id.* at ¶ 47. Indeed, Plaintiff identifies at least ten instances in which Butowsky has appeared on Fox News in his capacity as a Financial Advisor Analyst. *Id.* at ¶ 48. In addition to his frequent television appearances for Fox News, Plaintiff alleges that "Butowsky frequently writes articles for Fox that are published

15

by Fox, through its headquarters" in New York, and that "[a]s a necessary part of his appearances, [he] regularly and frequently works with producers and senior Fox executives who work out of Fox's headquarters" in New York. *Id.* at ¶¶ 43, 47-49. Furthermore, in addition to his work for Fox News in New York, Plaintiff further alleges that Butowsky regularly comes to New York to appear on live programs for other news networks, including CNN, ABC, CBS, NBC, CNBC, Bloomberg TV and China TV. *Id.* at ¶ 50. These allegations, accepted as true, are sufficient to support an inference that Butowsky is subject to general personal jurisdiction in New York as a result of his extensive contacts with the state.

Therefore, Butowsky is also subject to general jurisdiction in New York, and his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should be denied.

**D.    Targeted Jurisdictional Discovery is Appropriate**

In the event the Court concludes that Plaintiff's allegations are insufficient to demonstrate that Butowsky is subject to either specific or general personal jurisdiction in New York, it should allow for targeted jurisdictional discovery. It is well established that, "even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Smuckler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)); *see also Regenlab USA LLC v. Estar Techs. Ltd.*, No. 16 Civ. 08771 (ALC), 2017 WL 3601304, at *4 (S.D.N.Y. Aug. 17, 2017) (observing that a plaintiff should be given "ample opportunity to secure and present evidence relevant to the existence of jurisdiction"). Therefore, where the plaintiff has demonstrated a colorable basis for personal jurisdiction, courts allow for targeted jurisdictional discovery. *See, e.g.*, *Ryder Truck Rental, Inc. v. Swish Maint. Ltd.*, No. 09

Civ. 842, 2009 WL 3381679, at *1 (N.D.N.Y. Oct. 16, 2009) (denying the defendant's motion to dismiss for lack of personal jurisdiction as premature to allow for discovery relevant to the issue of personal jurisdiction); *Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451, 460 (S.D.N.Y. 2008) (allowing for "limited jurisdictional discovery prior to considering defendants' motion to dismiss for lack of personal jurisdiction").

Although Plaintiff has adequately alleged that Butowsky is subject to personal jurisdiction in New York, targeted jurisdictional discovery will likely reveal the extent to which Butowsky transacts business and supplies services in New York.  By way of example, although Plaintiff has alleged substantial communications with Fox News executives in the course of drafting, editing and publishing the defamatory Article, discovery may reveal even more extensive communications or trips to New York in connection with publication of the Article. *See* Am. Compl. ¶¶ 44-66.   Similarly, although Plaintiff has alleged that Butowsky has substantial business contacts in New York, jurisdictional discovery will likely demonstrate significantly more New York contacts.  To that end, Butowsky does not dispute the relevance of targeted jurisdictional discovery,[2] and the case law upon which he relies actually supports a finding that jurisdictional discovery is appropriate.  *See, e.g.*, *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 733 (dismissing for lack of personal jurisdiction only where the extent of the defendant's contacts with New York was known to the court); *see also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57-58 (2d Cir. 1985) (same).

As the issue of personal jurisdiction "must be determined on a case-by-case basis because it is dependent upon the defendants' contacts with the State at the time the lawsuit was

---

[2]     As Plaintiff previously argued that jurisdictional discovery was appropriate in opposing Butowsky's motion to dismiss Plaintiff's Complaint, *see* Dkt No. 61 at 16-18, the same argument in the instant opposition can hardly come as a surprise to Butowsky.

commenced," *see Sokolow*, 583 F. Supp. 2d at 460, the Court should, at the very least, allow for jurisdictional discovery.  As the Court should not grant Butowsky's motion to dismiss for lack of personal jurisdiction before, at the very least, allowing for targeted jurisdictional discovery, Butowsky's motion to dismiss should be denied.

## III.    PLAINTIFF STATES A CLAIM FOR DEFAMATION AGAINST BUTOWSKY

### A.    Defamation Legal Standard

To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm."[3]  *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (internal quotation omitted); *see also Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379, 397, N.Y.S.2d 943 (1977) (observing that a defamatory statement is a statement that "tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace or induce an evil opinion of him in the minds of right-thinking people to deprive him of their friendly intercourse in society").  Courts have observed that, "where statements are defamatory *per se*, the law presumes that damages will result, and they need not be alleged."  *Ives v. Guilford Mills, Inc.*, 3 F. Supp. 2d 191, 199 (N.D.N.Y. 1998) (citing *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993)); *see also Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002)

---

[3]       Although Butowsky argues that Maryland law applies to Plaintiff's claims for defamation, the legal standard for defamation under Maryland law is substantially similar to that of New York.  *Compare Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC*, 595 F. Supp. 2d 618, 622 (D. Md. 2009) (describing the elements of a claim for defamation under Maryland law), *with Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37 (1st Dep't 2014) (describing the elements of a claim for defamation under New York law).  To that end, Butowsky does not argue that Maryland law is substantially different than New York law with respect to claims for defamation, and, in certain instances, actually relies upon New York law in support of his specious arguments. *See, e.g.*, Def.'s Mem. at 20.  Indeed, despite his argument that Maryland law applies to Plaintiff's claim for defamation, Butowsky cites nearly no case law examining defamation under Maryland law.  Therefore, the Court need not undergo a lengthy choice of law analysis, and Plaintiff relies upon New York law in opposing Butowsky's instant motion to dismiss.  *See In re Bayou Hedge Fund Inv. Litig.*, 472 F. Supp. 2d 534, 541 (S.D.N.Y. 2007) ("[I]t is not necessary to engage in a lengthy choice of law analysis when the two states involved would apply the same substantive law.").

(observing that, where a statement is defamatory *per se*, "general damages to the reputation of the business are presumed").

In moving to dismiss the Amended Complaint, Butowsky does not dispute that the defamatory statements were published to third parties. *See* Def.'s Mem. at 18-29. Rather, Butowsky argues that he did not make the misattributed quotations contained in the Article, that his defamatory tweets were not actually defamatory, that Plaintiff consented to publication of Butowsky's defamatory statements, that Butowsky's defamatory statements were true and that Plaintiff fails to allege that Butowsky acted with actual malice. *Id.* Each of these arguments lacks merit, and Butowsky's motion should be denied in its entirety.

### B.  Butowsky Both Contributed to and Personally Made Statements That Were Defamatory *Per Se*

   i. <u>Butowsky Made Defamatory Statements About Plaintiff in the Article</u>

It is well established that "[w]ords which have a tendency to disparage an individual, *inter alia*, in the way of [his] office, profession, trade or business are slanderous per se." *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 261 633 N.Y.S.2d 106 (1st Dep't 1995). Relevant here, New York courts have observed that "all who take part in the procurement, composition, and publication of a libel are responsible in law and equally so." *Brown v. Mack*, 185 Misc. 368, 373, 56 N.Y.S.2d 910 (N.Y. Sup. Ct. 1945).

Plaintiff's allegations, accepted as true, support an inference that Butowsky is liable for defamation because he "orchestrated the substance and message of the Article," and was "intimately involved in the timing of the publication and push to get the Article out as soon as possible after President Trump fired [FBI] Director Comey." Am. Compl. ¶ 137. According to Plaintiff, Butowsky was heavily involved in the drafting, editing, and publication process of the defamatory article, as he exchanged drafts of the Article with Zimmerman, remained in close

communication with Fox News senior editors regarding publication of the Article and attempted to advise Plaintiff on what to say following publication of the defamatory Article in an effort to present a story consistent with his desired narrative.  *Id.* at ¶¶ 134-44.  Plaintiff further alleges that "Butowsky's and Zimmerman's work on the substantive content of the Article was a joint effort," that "Butowsky and Zimmerman exchanged multiple drafts of the Article prior to the publication date,"  and that "Mr. Wheeler received the majority of email communication about his private investigation from Butowsky with Zimmerman cc'd."  *Id.* at ¶¶ 54, 59.  Indeed, Plaintiff alleges that Butowsky specifically boasted to Fox News producers and on air talent that he was "[a]ctually the one who's been putting [the defamatory Article] together . . . ."  *Id.* at ¶ 123.

These allegations, accepted as true, are sufficient to state a claim against Butowsky for defamation.  *See, e.g.*, *Brown*, 185 Misc. at 373 (holding that involvement in the publishing process of defamatory statements is sufficient to state a claim for defamation); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 511, 111 S. Ct. 2419 (1991) (observing that a "fabricated quotation may injure reputation"); *Amelkin v. Commercial Trading Co.*, 23 A.D.2d 830, 831, 259 N.Y.S.2d 396 (1st Dep't 1965) (holding that it was defamatory *per se* to charge the plaintiff with being ignorant, incompetent, or incapable in his calling); *Theodore v. News Syndicate Co.*, 270 N.Y. 603, 603 (1936) (affirming judgment for the plaintiff in an action for libel where a publication published "words appearing therein and purporting to be a direct quotation of remarks made by the plaintiff were not spoken by the plaintiff, and that they constituted a misquotation").

Contrary to Butowsky's argument that Plaintiff "does not allege, anywhere in his Complaint [*sic*], that Butowsky had any specific role in sourcing, drafting, fact checking or

publishing the quotes in question," the Amended Complaint is replete with allegations supporting an inference that Butowsky played an integral role in the drafting and publication of the defamatory statements at issue. *See* Def.'s Mem. at 20. For example, Plaintiff alleges that "Butowsky was working on the draft of the Article with Zimmerman and involved in the finalization of the Article prior to publication." *See* Am. Compl. ¶ 115. Plaintiff specifically alleges that Zimmerman sent numerous drafts of the Article to Butowsky, that Butowsky "sent an email regarding the Article to various Fox News producers and on air talent," and that, after publication of the Article, "Fox summoned Butowsky to [Fox News's headquarters] to personally meet and discuss the Article with several Fox executives." *Id.* at ¶¶ 112-44, 152. To that end, Butowsky's reliance upon *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005) is misplaced, as the court in *Treppel* observed that "all who take part in the procurement, composition and publication of a libel are responsible," and, as discussed above, Plaintiff alleges that Butowsky was intricately involved in the drafting and publication of the defamatory Article.

Based upon the foregoing, Plaintiff's allegations, accepted as true, are sufficient to support an inference that Butowsky's involvement in drafting and publishing the Article is sufficient to subject him to liability for the defamatory statements contained therein.

ii.   <u>Butowsky Made Defamatory Statements About Plaintiff on Twitter</u>

In addition to Butowsky's heavy involvement in publication of the defamatory Article, and contrary to Butowsky's argument that "the sole basis for Wheeler's defamation claim against Butowsky" is his involvement in the Article, following Fox News's retraction of the Article, Butowsky continued to defame Plaintiff through two posts on Twitter. *See* Am. Compl. ¶¶ 174-82. In his first tweet, Butowsky wrote, "This shows Rod Wheeler has a ***<u>major battle with the</u>***

__*truth*__.  Everyone needs to hear this.  He says the precise words he swears he didn't say???"  *Id.* at ¶ 179 (emphasis added).  In his second tweet, Butowsky wrote, "Fox News story was pulled b/c Rod Wheeler said [he] didn't say a quote . . . __*How much did DNC pay him*__?"  *Id.* at ¶ 175 (emphasis added).  As with the defamatory statements in the Article, Butowsky's defamatory tweets charge Plaintiff with being both dishonest and an incompetent and biased private investigator, and are therefore actionable as defamation *per se*.  *See Masson*, 501 U.S. at 511; *Amelkin*, 23 A.D.2d at 831; *Theodore*, 270 N.Y. at 603.

These allegations, accepted as true, support an inference that Butowsky disparaged Plaintiff in his business or trade as a private investigator, and are therefore defamatory *per se*.

### iii.  Plaintiff's Allegations Support An Inference That He Suffered Special Damages

Even if the Court concludes that Butowsky's defamatory statements are not defamatory *per se*, Plaintiff still states a claim for defamation and defamation *per quod* against Defendant because his allegations support an inference that he suffered special damages as a result of the Article.[4]  Special damages "include the loss of something of economic value which must flow directly from the injury to reputation caused by the defamation."  *Daniels v. Alvarado*, No. 03 Civ. 5832, 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004).  Here, Plaintiff alleges that, as a result of the injury to his reputation caused by Butowsky's defamatory statements, he has suffered economic harm, including Plaintiff's "professional visibility being diminished," being prevented "from making further appearances on Fox programs, and "causing existing clients unnecessary concern and preventing potential clients from contracting for his services."  *See* Am.

---

[4]   Statements are defamatory *per quod* "[w]hen the common usage of the challenged language can be [defamatory] due to extrinsic circumstances . . . ."  *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000).  As a claim for defamation *per quod* requires that the plaintiff plead special damages, *see Ava v. NYP Holdings, Inc.*, 64 A.D.3d 407, 412 n.3, 885 N.Y.S.2d 247 (1st Dep't 2009), Plaintiff addresses his alternative claims for defamation and defamation *per quod* simultaneously.

Compl. ¶¶ 167-69.  These allegations, accepted as true, are sufficient to support an inference that he suffered special damages, and are therefore sufficient to withstand Defendants' motion to dismiss.  *See Wolf Street Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 26, 487 N.Y.S.2d 442 (4th Dep't 1985) (the plaintiff adequately demonstrated lost profits necessary to support an inference of special damages).  Therefore, Butowsky's motion to dismiss Plaintiff's claims for defamation and defamation *per quod* should be denied.

iv.    <u>Plaintiff's Allegations Support an Inference of Actual Malice</u>

Finally, Butowsky argues that Plaintiff fails to allege "actual malice, as is required for a limited purpose public figure such as Wheeler."  *See* Def.'s Mem. at 27.  However, Plaintiff specifically alleges that Butowsky acted with actual malice in making the defamatory statements about him both in the Article and on Twitter.  *See* Am. Compl. ¶¶ 129, 131-34.  Indeed, Plaintiff alleges that Butowsky explicitly acknowledged the falsity of his statements, when he told Wheeler he would be unable to testify to their veracity if placed under oath.  *Id.* at ¶ 146.  These allegations, accepted as true, are sufficient to support an inference that Butowsky acted with actual malice in defaming Plaintiff, and any argument regarding Plaintiff's status as a "limited purpose public figure" lacks merit.  *See, e.g.*, *Supan v. Michelfeld*, 97 A.D.2d 755, 757, 468 N.Y.S.2d 384 (2d Dep't 1983) (observing that the plaintiff stated a claim for slander "by alleging that [the defendants] knowingly and maliciously accused plaintiff of dishonesty"); *see also Present v. Avon Prods., Inc.*, 253 A.D.2d 183, 188, 687 N.Y.S.2d 330 (1st Dep't 1999) ("A speaker exhibits constitutional malice . . . when he makes a defamatory statement while knowing that it is false or recklessly disregarding whether it is false.") (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710 (1964)).

### C.    Plaintiff Did Not Consent To Publication of Butowsky's Defamatory Statements

Butowsky further argues that Plaintiff fails to state a claim for defamation because Wheeler consented to publication of the defamatory materials.  *See* Def.'s Mem. at 21-24. According to Butowsky, email communications with Zimmerman and "on camera statements to a local Fox 5 DC affiliate . . . establish Wheeler's consent to publication as a matter of law . . . ." *Id.* at 21.  However, the materials upon which Butowsky relies in support of his argument may not be considered in deciding the instant motion, and, even if they could be considered, they do not support Butowsky's argument.  Furthermore, Butowsky does not dispute that Wheeler did not consent to publication of Butowsky's defamatory tweets.

> i.    Butowsky Relies on Impermissible Material in Support of His Argument that Plaintiff Consented to Publication of the Defamatory Article

In support of his argument that Plaintiff consented to publication of the defamatory Article, Butowsky cites email communications with Zimmerman and "on camera statements to a local Fox 5 DC affiliate."  *Id.*  However, it is well established that "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."  *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *see also Faulkner*, 463 F.3d at 134 (observing that, in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is generally "limited to consideration of the complaint itself").  Indeed, even where a court considers materials referenced in the complaint or annexed thereto, it may not draw any inferences adverse to the plaintiff in relying on any such materials.  *See Johns v. Town of East Hampton*, 942 F. Supp. 99, 104-05 (E.D.N.Y. 1996) ("[I]n recognition of the procedural posture, [the court] will not draw any inferences

adverse to the plaintiffs from these exhibits except to the extent that these items of public record *expressly* contradict the Complaint's allegations.") (emphasis in original).

Here, Butowsky concedes that the Amended Complaint "does not provide the actual text of his communications with Zimmerman," and he neither offers any argument nor cites any case law that would suggest that this Court should consider these extraneous materials in deciding the instant motion to dismiss. *See* Def.'s Mem. at 22. Furthermore, contrary to Butowsky's contention that the "Amended Complaint also refers to, describes, and characterizes the contents of an on camera interview with a Fox 5 DC affiliate," Plaintiff merely alleges that he "was interviewed by a Fox affiliate on the evening of May 15, 2017," and that he "made sure not to confirm as fact the proposition that Seth Rich sent emails to WikiLeaks, instead confirming only that a 'source' . . . had information that could link Seth Rich to WikiLeaks." *See* Am. Compl. ¶ 122. Finally, Butowsky does not dispute that the Amended Complaint contains absolutely no reference to the text message communications between Zimmerman and Plaintiff upon which he purports to rely. As the communications and extraneous materials upon which Butowsky relies are neither annexed to the Amended Complaint, nor integral thereto, the Court should not consider them in deciding the instant motion to dismiss. *See, e.g.*, *Lilakos v. New York City*, No. 14 Civ. 5288 (PKC)(LB), 2017 WL 4898193, at *1 n.5 (E.D.N.Y. Oct. 25, 2017) ("[T]he Court can only consider the pleadings on a motion to dismiss."); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 718 (S.D.N.Y. 2015) (declining to consider videos that were not referenced in the plaintiff's pleading and that were not relied upon in drafting the complaint); *see also Faulkner*, 463 F.3d at 134-35 (holding that the district court erred in considering materials outside of the pleadings where there were disputes regarding the authenticity and relevance of extraneous materials relied upon).

ii.    Plaintiff Did Not Consent to Publication of the Defamatory Article

Nevertheless, even if the Court were to consider the materials upon which Butowsky impermissibly relies, the extraneous materials do not support an inference that Plaintiff consented to the publication of the defamatory Article.  With respect to communications with Zimmerman prior to publication of the defamatory Article, Plaintiff specifically alleges that all prior drafts of the Article did not contain the defamatory statements at issue in this action.  *See* Am. Compl. ¶¶ at 112-18.  Although Zimmerman sent a message to Butowsky and Wheeler on May 15, 2017, that contained a draft of the Article with the defamatory statements included, Plaintiff specifically alleges that he did not review that draft, but rather, he informed Zimmerman that "he was traveling and could not review the drafts of the story she sent to him throughout the day." *Id.* at ¶ 120.[5]  As Plaintiff alleges that he did not review drafts of the Article that contained the defamatory statements, he could not have consented to their publication.  *See, e.g.*, *Thomas v. G2 FMV, LLC*, 147 A.D.3d 700, 701, 48 N.Y.S.3d 358 (1st Dep't 2017) (holding that the plaintiff did not consent to the publication of defamatory statements).

Butowsky's argument that "Wheeler's own on-camera statements to the Fox 5 DC affiliate, published prior to Zimmerman's article, show that he adopted and approved the substance of Zimmerman's quotes," *see* Def.'s Mem. at 25, also lacks merit and should be disregarded in deciding the instant motion to dismiss.  As alleged, when Wheeler was interviewed by a Fox affiliate on the evening of May 15, 2017, he made sure not to confirm as fact the proposition that Rich sent emails to WikiLeaks, instead confirming only that a "source" (*i.e.*, *Zimmerman's and Butowsky's alleged source*) had information that could link Rich to

---

[5]      As there is no reference whatsoever to the alleged text message communications between Zimmerman and Wheeler in the Amended Complaint, and because Butowsky does not argue otherwise, there is no plausible basis for considering those text messages in deciding the instant motion to dismiss, and they are not addressed further herein. Defendants will have an opportunity to take Wheeler's deposition and can ask him about his communications with Zimmerman, including the text message at issue, which is not dispositive.

WikiLeaks." *See* Am. Compl. ¶ 122.  This is ***vastly*** different than Wheeler stating that his own personal investigation conclusively established "some degree of email exchange between Seth Rich and WikiLeaks."  Moreover, as alleged, the "source" to which Plaintiff referred was a purported source disclosed to Wheeler by Butowsky, which only serves to confirm that Butowsky knew that Wheeler did not independently confirm that Rich sent any emails to Wikileaks.

<ul style="list-style:none"><li>iii.   <u>Plaintiff Did Not Consent to Publication of the Defamatory Tweets</u></li></ul>

Finally, even if Plaintiff had consented to publication of the defamatory Article, it is undisputed that he did not consent to Butowsky's publication of the defamatory tweets that were published after Fox News retracted the article.  *See* Am. Compl. ¶¶ 174-82.  To that end, although Butowsky concedes that he made and published the defamatory tweets after Fox News retracted the Article, he offers no argument in support of the proposition that any such publication was done with Plaintiff's consent.  *See* Def.'s Mem. at 26-27.  Therefore, Butowsky's arguments regarding consent to publication of defamatory statements is inapplicable to his defamatory tweets.

**D.   Butowsky's Defamatory Statements Were False**

Finally, Butowsky argues that his defamatory statements are not actionable because Plaintiff's allegations "demonstrate the inconsequential difference between Zimmerman's quotes and Wheeler's own television statements for the Fox 5 DC affiliate.  *See* Def.'s Mem. at 25.  As with his previous meritless arguments, Plaintiff's allegations support an inference that the defamatory statements were not true, and Butowsky's argument is meritless.

<ul style="list-style:none"><li>i.   <u>Butowsky Again Impermissibly Relies Upon Extraneous Materials</u></li></ul>

In arguing that the defamatory statements at issue in this action are true, Butowsky again impermissibly relies upon extraneous materials, including Plaintiff's May 15, 2017 on-air

statements made to a Fox 5 DC affiliate. *See* Def.'s Mem. at 25. However, Butowsky again fails to advance any argument whatsoever or cite any controlling case law suggesting that this Court should consider these extraneous materials in deciding the instant motion to dismiss. *Id.* Therefore, for the reasons discussed above, the Court should disregard these extraneous materials upon which Butowsky relies in considering whether the defamatory statements at issue in this action were substantially true. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Gersbacher*, 134 F. Supp. 3d at 718; *Hutson v. Notorious B.I.G., LLC*, No. 14 Civ. 2307 (RJS), 2015 WL 9450623, at *3 (S.D.N.Y Dec. 22, 2015).

ii.     The Defamatory Statements Were Not True

In any event, even if the Court were to consider these materials in deciding Butowsky's motion to dismiss, his argument that any difference between "Zimmerman's quotes and Wheeler's own television statements for the Fox 5 DC affiliate" is "inconsequential" is patently false. *See* Def.'s Mem. at 25. As noted *supra* at pp. 26-27, Wheeler's statement to the Fox 5 affiliate was substantially different that the statement that Defendants falsely attributed to him in the Article. Likewise, during his appearance on Sean Hannity's program, Plaintiff never claimed to have evidence that a member of the "Clinton team" blocking his murder investigation from going forward, and any reference to the Clinton team in the Article is therefore patently false and defamatory. Furthermore, even accepting as true that someone "inside the police department" told Plaintiff that they were instructed to "stand down on this case," Wheeler did ***not*** claim that any such order came from "the DC Government" or the DNC – rather, at most, he stated that believed there was "a correlation between the Mayor's office and the DNC." No reasonable interpretation would allow for this to be understood as an order coming from the DNC to "stand down" from investigating Rich's murder.

28

## CONCLUSION

For the reasons set forth herein, Butowsky's motion to dismiss Plaintiff's Amended Complaint should be denied in its entirety.

Dated: January 9, 2018
      New York, New York               Respectfully submitted,

                                    **WIGDOR LLP**

By: _____
                                  Douglas H. Wigdor
                                  Jeanne M. Christensen
                                  Michael J. Willemin
                                  Kenneth D. Walsh

                                85 Fifth Avenue
                                New York, NY  10003
                                Telephone:  (212) 257-6800
                                Facsimile:   (212) 257-6845
                                dwigdor@wigdorlaw.com
                                jchristensen@wigdorlaw.com
                                mwillemin@wigdorlaw.com
                                kwalsh@wigdorlaw.com

                                *Counsel for Plaintiff*