**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

ROD WHEELER,

                         Plaintiff,    :    Civil Action No.: 17-05807 (GBD)

     v.

TWENTY-FIRST CENTURY FOX, INC., FOX NEWS NETWORK LLC, MALIA ZIMMERMAN, in her individual and professional capacities and ED BUTOWSKY, in his individual and professional capacities,

                        Defendants.

----------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ED BUTOWSKY'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………….…ii

PRELIMINARY STATEMENT……………………………………………………………..…1

ARGUMENT—

    I.    This Court Cannot Assert Personal Jurisdiction Over Mr. Butowsky And Plaintiff's Arguments That It Can Are All Meritless……………………………...2

        A.    Plaintiff's Specific Jurisdiction Argument Fails…………………………..2

        B.    Plaintiff's General Jurisdiction Argument is Frivolous…………………...5

        C.    Jurisdictional Discovery Would be Futile and Plaintiff's Request For It Should Be Denied…………………………………………………………....6

    II.    Plaintiff Does Not State A Claim For Defamation Against Mr. Butowsky..……..7

        A.    Plaintiff Has Not Plausibly Pleaded Defamation……..……………….......7

        B.    Plaintiff Does Not Allege That Mr. Butowsky Was Involved In Actually Drafting The Alleged Misattributed Quotations…………………………..8

        C.    Plaintiff Consented To The Article's Publication, Rendering His Claims Baseless………………………………………………………………………8

        D.    Defendant's Purported Post-Hoc Admission Does Not Support Actual Malice………………………………………………………………………..9

        E.    Defendant's Tweets Are Protected Opinions And Not Actionable………………………………………………........................10

CONCLUSION…………………………………………………………………………..11

**TABLE OF AUTHORITIES**

**Cases**

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)……………………………………………………………….…2,4

*Carlson v. Cuevas*,
    932 F. Supp. 76 (S.D.N.Y. 1996)……………………………...……….…………3

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs*,
    7 N.Y.3d 65 (2006)……………………………………………………………….………3

*D&R Global Selections, S.L. v Bodega Olegario Falcon Pineiro,*,
    29 N.Y.3d 292 (2017)……………………………………………………..……………3

*Ehrenfeld v. Bin Mahfouz*,
    9 N.Y.3d at 501 (2007)……………………………………………………………………3

*Epstein v. Thompson*,
    No. 09 Civ. 8696, 2010 U.S. Dist. LEXIS 82000 (S.D.N.Y. Aug. 11, 2010)…..………..5

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (2007)…………………………………………………………………….3

*Golden Archer Invs., LLC v Skynet Fin. Sys.*,
    No. 2011 U.S. Dist. LEXIS 150742 (S.D.N.Y. Dec. 30, 2011)…...……………………4

*Guccione v. Hustler Magazine, Inc.*,
    800 F.2d 298 (2d Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987) …………..………….7

*Jacobus v. Trump*,
    51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017), *aff'd* 64 N.Y.S.3d 889 (1st Dep't 2017)…...….10

*Johnson v. Ward*,
    4 N.Y.3d 516 (2005)………………………………………………..……………..4

*Korkala v. W.W. Norton Co.*,
    618 F. Supp. 152 (S.D.N.Y. 1985) ……...………………………………………....…..8

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 12-2391, 2017 U.S. Dist. LEXIS 38271 (S.D.N.Y. Mar. 10, 2017)……..……....…..6

*Ladany v. William Morrow & Co.*,
   465 F. Supp. 87 (S.D.N.Y. 1978)……………………………………………………………7

*Mandelblatt v. Perelman*,
   683 F. Supp. 379 (S.D.N.Y. 1988)……………………………………………………....8

*Mantello v. Hall*,
   947 F. Supp. 92 (S.D.N.Y. 1996)……………………………………………..……6

*Montgomery v. Minarcin*,
   263 A.D.2d 665 (3d Dep't 1999)………………………………………………………….4

*Printers II, Inc. v. Professionals Publishing, Inc.*,
   784 F.2d 141 (2d Cir. 1986)……………………………………………………………….8

*Sharon v. Time, Inc.*,
   599 F. Supp. 538 (S.D.N.Y. 1984)…………………………………………………….....9

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
   450 F.3d 100 (2d Cir. 2006)……………………………………………………………….4

*Stratte-Mcclure v. Stanley,*
   776 F.3d 94 (2d Cir. 2015)………………………………………………………………...9

*Tacopina v. Kerik,*
   No. 14CV749-LTS-FM, 2016 U.S. Dist. LEXIS 44212, (S.D.N.Y. Mar. 31, 2016)……….7

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017)……………….......................................................................7

*Trachtenberg v. FailedMessiah.com*,
   43 F. Supp. 3d 198 (E.D.N.Y. 2014)………………………………………………….....6

*Treppel v. Biovail Corp.*,
   No. 03-3002, 2005 U.S. Dist. LEXIS 18511 (S.D.N.Y. Aug. 30, 2005)…..……………..8

*Universal Grading Serv. v eBay, Inc.,*
   No. 08-CV-3557, 2009 WL 2029796 (E.D.N.Y. June 9, 2009)…………………..………3

*World Wrestling Federation Entm't, Inc. v. Bozell*,
   142 F. Supp. 2d 514 (S.D.N.Y. 2001)……………………………………………………..4

## PRELIMINARY STATEMENT

Plaintiff Rod Wheeler's ("Plaintiff" or "Wheeler") opposition to Defendant Ed Butowsky's motion to dismiss proves yet again that the single driving force behind his lawsuit is a pie-in-the-sky political narrative that is legally irrelevant to his claims. Even a cursory examination of his arguments reveals a gross mischaracterization of not only Mr. Butowsky's motion to dismiss, but also of the authorities both parties rely on. Plaintiff's claims all fail.

*First*, there is no personal jurisdiction over Mr. Butowsky in New York. Even as alleged, he has almost no contact in New York, neither in his unrelated professional life, nor in connection with the allegations of this case. Both Plaintiff's specific and general jurisdiction arguments fail as a matter of law. *Second*, the Amended Complaint is devoid of allegations that Plaintiff had anything to do with the drafting of the quotations. The Amended Complaint (though it haphazardly uses the word "publish") fails to allege that Butowsky actually participated in the drafting, editing, or reviewing of the alleged misattributed quotations at issue. This deficiency is fatal to Plaintiff's claim. *Third*, the alleged misattributions that are the subject of Plaintiff's claims cannot be defamatory because they are ***true***. Indeed, the very substance of Plaintiff's prior publications and statements naturally form the conclusions Plaintiff made in the article. The razor thin distinction that Plaintiff attempts to make about the word "show" is devoid of any legal significance. Plaintiff made repeated statements that are nearly identical to those in the article. *Fourth*, Plaintiff received and commented directly on the quotations in the article, objectively consenting to their publication. The confoundingly disingenuous assertion that Plaintiff never read the article despite receiving it three times the day before publication, and insisting that Zimmerman "add" to the quotations themselves, is incredible. Plaintiff's acknowledgement is consent as a matter of law.

1

*Finally*, Zimmerman, the Fox Defendants, and Mr. Butowsky could not have shown actual malice in light of the fact that Zimmerman repeatedly asked Plaintiff to review the quotations before they were published.  Notably, the only support for actual malice against Mr. Butowsky is a purported, after-the-fact confession that the quotes were not true.  Even assuming that the confession is what Plaintiff says it is (it is not), it does support actual malice or even an inference of it because it speaks nothing about Mr. Butowsky's state of mind *before* publication which is the lynchpin of the inquiry.

Plaintiff has no viable cause of action against Mr. Butowsky.  For the reasons set forth in greater detail below, Defendant's motion to dismiss should be granted in its entirety.

## ARGUMENT

### I.  This Court Cannot Assert Personal Jurisdiction Over Mr. Butowsky And Plaintiff's Arguments That It Can Are All Meritless

#### A.  *Plaintiff's Specific Jurisdiction Argument Fails*

As Mr. Butowsky asserted in his motion to dismiss, he has almost no contact with New York State, either through his personal business dealings or through is appearances on Fox.  The law does not support jurisdiction for occasional trips to a forum state or sporadic communications with people that work there.  Plaintiff relies on "transacts business" Section 302(a)(1) of the New York long arm statute.  In determining whether a court may exercise personal jurisdiction under section 302(a)(1), "a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citations omitted).  Plaintiff utterly fails to meet either prong.

*As to the **first*** prong, "the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of

conducting activities within New York," *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d at 508, 851 N.Y.S.2d at 385, 881 N.E.2d at 834 (internal quotation marks omitted), thereby "invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 505, 880 N.E.2d 22, 26 (2007).

Plaintiff's claims that Butowsky "transacted business" are incredibly thin – he contends that the communications to editors that happened to work in New York (who may or may not have been there at the time) are sufficient to support the transaction of business under the long-arm statute. But, as the Court of Appeals has indicated "'merely telephon[ing] a single order' to New York requesting a shipment of goods to another state, [or] the transitory presence of a corporate official here, [or] communications and shipments sent here by an out-of-state doctor serving as a 'consultant' to plaintiff's New York physician do not support [N.Y. C.P.L.R. § 302(a)(1)] jurisdiction." *Deutsche Bank Sec., Inc.*, 7 N.Y.3d at 71.  Indeed, "[t]he mere existence of defendant's telephone conversations into New York are not sufficient to sustain New York long arm jurisdiction. Telephone conversations are significant only if they are used by the defendant to actively participate in business transactions in New York." *Carlson v. Cuevas,* 932 F. Supp. 76, 78 (S.D.N.Y. 1996) (internal quotations and citations omitted).  No business was transacted through these purported communications, and even if the Court found there was, the forum state had absolutely nothing to do with those communications.  As Plaintiff notes, a defendants contacts must be "purposeful," meaning he "seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *D & R Glob. Selections, S.L.*, 29 N.Y.3d at 298 (citation and quotation omitted); *see also Universal Grading Serv. v. eBay, Inc.*, No. 08 Civ. 3557 (CPS), 2009 WL 2029796, at *6 (E.D.N.Y. June 10, 2009) ("[A] defendant's communication from another locale with a party in New York is generally not

3

sufficient to establish personal jurisdiction."). The incidental, if not speculative, New York contacts here are hardly sufficient.

Plaintiff's citation to authority is very clearly misplaced. In *World Wrestling Federation Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514 (S.D.N.Y. 2001), the defendant actively participated in fundraising videos which were distributed in New York, and the court expressly found that defendant actively and specifically "took advantage" of the New York entertainment industry. *Id.* at 533. The non-domiciliary defendant in *Montgomery v. Minarcin*, 263 A.D.2d 665 (3d Dep't 1999) lived in New York and researched, wrote, produced, and reported the defamatory story while in the State for a New York television station he was employed by, which was about a New York company. Plaintiff's cases are simply inapposite.[1]

*As to the **second** prong*, "'[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Best Van Lines,* 490 F.3d at 246. "[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated," *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005), and "[a] connection that is merely coincidental is insufficient to support jurisdiction," *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal quotation marks omitted).

The facts, as alleged, are as follows: Mr. Butowsky, a Texas resident, worked with Zimmerman, a California resident, on an article while she was in California and he in Texas, for

---

[1] *Golden Archer Invs., LLC v Skynet Fin. Sys.*, 2011 U.S. Dist. LEXIS 150742, at *13 (S.D.N.Y. Dec. 30, 2011), is also inapposite. There, the very communications, including regular "e-mails, phone calls, and online video conferences to discuss the project development" were integral to the transaction itself – a software development deal based in New York using a New York server. Defendant's limited communications here, as alleged by Plaintiff, fall woefully short of the standards set by this case and the other cases cited by Plaintiff in opposition.

4

Fox News, which happens to be headquartered in New York.  Plaintiff claims Mr. Butowsky communicated with Fox News editors and producers about the article, and informed them on one occasion that he was involved in putting the article together.  Finally, after publication, he allegedly traveled to New York for one meeting, after being asked to discuss the matter by "Fox News executives."  Thus, the sum of Plaintiff's allegations are a few emails and a post-publication meeting in New York.  The connection between Butowsky's alleged involvement in the article, namely these minimal communications with Fox News personnel, and New York is clearly tangential to this case.  Accordingly, the Court must dismiss this case for lack of personal jurisdiction.[2]

### B.  *Plaintiff's General Jurisdiction Argument Is Frivolous*

Plaintiff's argument on general jurisdiction fares worse.  Plaintiff argues for general jurisdiction asserting that it lies as a result of Mr. Butowsky's "extensive and ongoing dealings in New York," and then absolutely fails to cite any credible evidence in support of this assertion.  Plaintiff does no better than writing that Mr. Butowsky is an "internationally known financial advisor" who advises clients throughout the United States, including New York."  Pl. Br. at 15.  Under Plaintiff's expansive and untenable theory of jurisdiction, jurisdiction will lie in a state *wherever* Mr. Butowsky has a client.  "The fact that . . . a[] . . . client resides in New York does not mean that the [defendant] transacts business in New York."  *Epstein v. Thompson*, No. 09 Civ. 8696 (HB), 2010 U.S. Dist. LEXIS 82000, at *8 (S.D.N.Y. Aug. 11, 2010) (citing *Mayes v.*

---

[2] Plaintiff's citation in support of his position, *Edward B. Beharry & Co. v Bedessee Imports, Inc.*, No. 09-CV-0077, 2010 U.S. Dist. LEXIS 27404, at *7 (E.D.N.Y. Mar. 23, 2010) is a stark misrepresentation of that holding.  The court there found that Plaintiff's claim was "legally sufficient to confer jurisdiction over defendant [ ] because it was reasonably foreseeable that his allegedly tortious conduct would negatively affect plaintiff in New York where plaintiff sells its products and where *The Caribbean New Yorker* is distributed."  *Id.*  The facts there don't even remotely resemble the facts in the case at bar.

*Leipziger*, 674 F.2d 178 (2d Cir. 1982)). That is not the law for purposes of *specific* personal jurisdiction—*a fortiori*, it certainly is not the law for *general* jurisdiction. Notably, in his argument on general jurisdiction, *Plaintiff cites no case in support*. Nor does he contend with much less mention caselaw relied upon by Defendant which firmly establish that jurisdiction does not lie. *E.g.*, *Mantello v. Hall*, 947 F. Supp. 92, 98(S.D.N.Y. 1996) (rejecting general jurisdiction where defendant was headquartered in New York and defendant dealt with New York business concerns and regularly traveled there)

Plaintiff also ignores *Trachtenberg v. FailedMessiah.com*, 43 F. Supp. 3d 198, 204-05 (E.D.N.Y. 2014), where the court found that plaintiff's "best candidate" for jurisdiction was the defendant's contractual relationship with a New York-based company. *Id.* The court did not find jurisdiction. There, like here, "the fact that [defendant's] offices happen to be located in New York" was a "merely coincidental nexus" that was not enough to confer jurisdiction.

### C. *Jurisdictional Discovery Would Be Futile And Plaintiff's Request For It Should Be Denied*

In a last-ditch effort to save his case against Mr. Butowsky, Plaintiff argues for "targeted" jurisdictional discovery, seeking a third bite at the apple if this one fails. But no facts can save Plaintiff from the reality that Mr. Butowsky is subject to neither specific nor general personal jurisdiction. Conducting jurisdictional discovery in this case, even "targeted," would entail a waste of time and judicial/party resources, and would be completely futile. *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12-2391 (GBD), 2017 U.S. Dist. LEXIS 38271, at *27 (S.D.N.Y. Mar. 10, 2017) ("District courts in this [C]ircuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a prima facie case of jurisdiction.") Plaintiff has not made a prima-facie showing of jurisdiction. As such, jurisdictional discovery would be futile in this case and Plaintiff's request for it should be denied.

## II.     Plaintiff Does Not State A Claim For Defamation Against Mr. Butowsky

### A.  *Plaintiff Has Not Plausibly Pleaded Defamation*

Plaintiff simply does not state a claim of defamation for a host of reasons.  "Words are not actionable solely because false; they must also defame." *Ladany v. William Morrow & Co.*, 465 F. Supp. 870, 875 (S.D.N.Y. 1978).[3]  A statement is defamatory under New York law if it "tends to expose a person to public contempt hatred, ridicule, aversion or disgrace . . . ." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 244 (2d Cir. 2017) (citation and quotation marks omitted).

Plaintiff does not remotely state a claim for defamation *per se*.  "The allegedly defamatory statement must be targeted at specific standards of performance that are directly relevant to the plaintiff's business, and must impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself." *Tacopina v. Kerik*, No. 14CV749-LTS-FM, 2016 U.S. Dist. LEXIS 44212, at *12-13 (S.D.N.Y. Mar. 31, 2016) (internal quotation marks omitted).  Completely absent from Plaintiff's Amended Complaint is an allegation that somehow the article at issue suggested that Plaintiff engaged in conduct "incompatible with" the "specific standards of performance" in his profession.

Quite the contrary.  The article reflected what was true: that Wheeler reached conclusions consistent with those of an investigator with knowledge of the murder of Seth Rich.  The record reflects that this was Wheeler's belief both *pre*-publication *and post*-publication of the article at issue.  The truth reflected in the public record of the allegedly misattributed quotes renders the defamation claims dead on arrival. Under New York law, it is well-settled that "truth is an absolute, unqualified defense to a civil defamation action." *Guccione v. Hustler Magazine, Inc.*,

---

[3] Defendant will assume that New York law applies solely for purposes of completeness.

7

800 F.2d 298, 301 (2d Cir. 1986), *cert. denied*, 479 U.S. 1091 (1987)). The gist of the alleged misquotations is simply *true* in this case, and even if they were imprecise (which they're not), it does not matter: "It is only necessary that the gist or substance of the challenged statements be true." *Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986).[4]

### B. Plaintiff Does Not Allege That Mr. Butowsky Was Involved In Actually Drafting The Alleged Misattributed Quotations

Plaintiff's failure to state that Butowsky was specifically involved in fabricating the allegedly misattributed quotes is fatal to his claim.[5] Aside from a conclusory allegation in the Amended Complaint, there is not a single allegation in it that Mr. Butowsky actually crafted the quotations at issue. Importantly, this case is decidedly not about a defamatory *article*. It's about defamatory quotations, the substance of which were true as discussed *infra*. As alleged in the AC, Zimmerman wrote the article, not Butowsky. Properly distilled, all the AC alleges is Mr. Butowsky's general involvement. That involvement in the article generally does not sufficiently allege his participation in the misattributed quotes. Short of allegations of that nature, which he could not plausibly make, Plaintiff's claim falls short.

### C. Plaintiff Consented To The Article's Publication, Rendering His Claims Baseless

Plaintiff also consented to publication of the article at issue, defeating his defamation claims as a matter of law. Under New York law, "[c]onsent to the publication of defamatory matter bars recovery for defamation." *Mandelblatt v. Perelman*, 683 F. Supp. 379, 383 (S.D.N.Y. 1988). The record is plain that Wheeler sent Zimmerman text messages that he was

---

[4] *See also Korkala v. W.W. Norton Co.*, 618 F. Supp. 152, 155 (S.D.N.Y. 1985) ("Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.") (internal quotation marks and citation omitted).
[5] *See Treppel v. Biovail Corp.*, No. 03-3002, 2005 U.S. Dist. LEXIS 18511, at *11 (S.D.N.Y. Aug. 30, 2005).

"reading [the story] now" and that he had just "read your email" (referring to Zimmerman).[6] Wheeler appeared on a Fox DC affiliate *pre*-publication of the article wherein he confirmed veracity of the quotations. And as explained at length in Mr. Butowsky's opening brief, *post*-publication of the article, Plaintiff went on Sean Hannity's show to confirm the veracity of the quotations. Notably, none of these facts which alone demonstrate consent, accounts for the repeated emails to Plaintiff prior to publication pleading with him to read the story and confirm the quotes.

Given that Plaintiff consented to its publication pre-publication and then confirmed the veracity of the quotations post-publication, his defamation claim fails.

### D. Defendant's Purported Post-Hoc Admission Does Not Support Actual Malice

Defendant relies exclusively on the purported, post-hoc admission by Butowsky that Plaintiff did not make the attributed statements in the article to support actual malice. The admission itself, read in this completely out-of-context form, as an initial matter, is not an admission at all. It's merely an acknowledgement that Butowsky never heard Plaintiff make the statements to him – but, of course, he didn't write the article or the quotes and Plaintiff cannot Plausibly allege that he did. But, more importantly at this stage, "actual malice rests on the defendant's state of mind *at the time of publication*." *Sharon v. Time, Inc.*, 599 F. Supp. 538, 564 (S.D.N.Y. 1984) (emphasis added). Thus, even taking Plaintiff's allegations as true, he has not adequately alleged actual malice against Butowsky.

More broadly, there can be no reading of the record that actual malice existed here, when, by Plaintiff's own admission, Zimmerman repeatedly sent him the article with the quotes for

---

[6] Wheeler's complaint that Defendant references materials outside the Amended Complaint cannot be taken seriously. *See generally Stratte-Mcclure v. Stanley*, 776 F.3d 94, 100 (2d Cir. 2015).

approval.  Not only did he confirm to her that he was "reading it now," after she sent the article, but he directly added to one of the quotes in question, language Zimmerman incorporated verbatim.  There is a discernible disingenuousness to Plaintiff's assertion that he failed to read the three emails sent to him the day before, while continuing to interact with Zimmerman up until publication about the article and the quotes, that simply cannot be ignored at this stage of litigation.  Having not plausibly pleaded actual malice, Plaintiff's claims must be dismissed.

### E.  Defendant's Tweets Are Protected Opinions And Not Actionable

Plaintiff breezily asserts in his opposition that the Tweets at issue are "actionable as defamation *per se*."  Pl. Br. 22.  New York law on this point confirms that this is simply wrong.  Mr. Butowsky's messages were riddled with sarcasm, criticism, and opinion. These types of Twitter opinions are not false statements that are actionable in defamation.  *See Jacobus v. Trump*, 51 N.Y.S.3d 330, 336 (N.Y. Sup. Ct. 2017) (holding that "[l]oose, figurative or hyperbolic statements . . . are not actionable" with respect to allegedly defamatory statements made on Twitter), *aff'd*, *Jacobus v. Trump*, 64 N.Y.S.3d 889, 889 (1st Dep't 2017) (holding that "[t]he immediate context [on Twitter] in which the statements were made would signal to the reasonable reader or listener that they were opinion and not fact.").  Mr. Butowsky's Tweets are not actionable.[7]

---

[7] Plaintiff's claim for defamation *per quod* should also be dismissed for his failure to plead special damages with particularity.  Plaintiff insufficiently makes only vague and conclusory allegations about special damages in his Amended Complaint.  *Collins v. Travers Fine Jewels Inc.*, No. 16-CV-03780 (SN), 2017 U.S. Dist. LEXIS 46866, at *6-7 (S.D.N.Y. Mar. 28, 2017) ("Special damages must be fully and accurately stated, with sufficient particularity to identify actual losses.  This particularity requirement is strictly applied, as defamation claims will be dismissed for failure to allege special damages with the requisite degree of specificity.") (internal citation and quotation marks omitted).  Plaintiff has utterly failed to shoulder this high burden.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be granted in its entirety.

                                                  **SPIRO HARRISON**
s/ David B. Harrison
David B. Harrison
Jeffrey A. Shooman
Jason C. Spiro
830 Morris Turnpike – 2nd Floor
Short Hills, NJ 07078
Tel.: 973-232-0881
dharrison@spiroharrison.com
jshooman@spiroharrison.com
jspiro@spiroharrison.com